# STATE OF NORTH CAROLINA

New Hanover County **FILED**

*File No.*

In The General Court Of Justice
☐ District  ☒ Superior Court Division

2022 MAY -4  A 8: 51

NEW HANOVER COUNTY, C.S.C.

BY _____

| | |
|---|---|
| *Name And Address Of Plaintiff 1*<br>Mark Eastham<br>261 Wyndham Cir W<br>New Brighton, MN 55112 | **GENERAL**<br>**CIVIL ACTION COVER SHEET** |
| *Name And Address Of Plaintiff 2*<br>Peter Spark<br>237 Royal Fern Rd.<br>Wilmington, NC 28412 | ☒ INITIAL FILING   ☐ SUBSEQUENT FILING |

*Rule 5(b) of the General Rules of Practice for the Superior and District Courts*

## VERSUS

*Name And Address Of Attorney Or Party, If Not Represented (complete for initial appearance or change of address)*
Thomas Babel
P.O. Box 11320 (28404)
3819 Park Avenue Suite B
Wilmington, NC 28403

*Name And Address Of Defendant 1*
Port City Contracting Services, Inc.
2017 Corporate Drive, Unit 4
Wilmington, NC 28405

*Summons Submitted*
☒ Yes  ☐ No

| *Telephone No.*<br>910-756-4080 | *Cellular Telephone No.*<br>910-508-0359 |
|---|---|
| *NC Attorney Bar No.*<br>35004 | *Attorney Email Address*<br>tsb@dhwlegal.com |

*Name And Address Of Defendant 2*
Robert P. Sharpe
245 Royal Fern Road
Wilmington, NC 28512

☒ Initial Appearance in Case   ☐ Change of Address

| *Name Of Firm*<br>Davis Hartman Wright LLP | *Fax No.*<br>910-756-4080 |
|---|---|

*Summons Submitted*
☒ Yes  ☐ No

*Counsel For*
☒ All Plaintiffs  ☐ All Defendants  ☐ Only: *(list party(ies) represented)*

☐ Jury Demanded In Pleading   ☐ Complex Litigation   ☐ Stipulate to Arbitration

## TYPE OF PLEADING

*(check all that apply)*

☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) *(see Note)*
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNFJ)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) Assess Court Costs
☐ Crossclaim *(list on back)* (CRSS) Assess Court Costs
☐ Dismiss (DISM) *Assess Court Costs*
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☐ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint *(list Third Party Defendants on back)* (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☐ Other *(specify and list each separately)*

NOTE: *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*

(Over)

| CLAIMS FOR RELIEF | | |
|---|---|---|
| ☐ Administrative Appeal (ADMA) | ☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP) | ☐ Product Liability (PROD) |
| ☐ Appointment Of Receiver (APRC) | | ☐ Real Property (RLPR) |
| ☐ Attachment/Garnishment (ATTC) | ☐ Medical Malpractice (MDML) | ☐ Specific Performance (SPPR) |
| ☐ Claim And Delivery (CLMD) | ☐ Minor Settlement (MSTL) | ☐ Other *(specify and list each separately)* |
| ☐ Collection On Account (ACCT) | ☐ Money Owed (MNYO) | |
| ☐ Condemnation (CNDM) | ☐ Negligence - Motor Vehicle (MVNG) | |
| ☐ Contract (CNTR) | ☐ Negligence - Other (NEGO) | |
| ☐ Discovery Scheduling Order (DSCH) | ☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN) | |
| ☐ Injunction (INJU) | ☐ Possession Of Personal Property (POPP) | |

| *Date* | *Signature Of Attorney/Party* |
|---|---|
| | |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☐ Additional Defendant(s)          ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

| |
|---|
| |
| |

*Defendant(s) Against Whom Crossclaim Asserted*

| |
|---|
| |
| |

AOC-CV-751, Side Two, Rev. 3/19
© 2019 Administrative Office of the Courts



STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

FILED

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
2022 MAY -4    FILE NO.: 22-CVS-_____

NEW HANOVER COUNTY, C.S.C.

BY _____

MARK EASTHAM
and PETER SPARK

   Plaintiffs

   v.

PORT CITY CONTRACTING
SERVICES, INC. and ROBERT P.
SHARPE

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

VEIFIED COMPLAINT AND MOTION FOR
TEMPORARY RESTRAINING ORDER,
PRELIMINATY INJUNCTION, AND
EXEDIATED DISCOVERY

  NOW COMES, Plaintiffs, Mark Eastham("Eastham") and Peter Spark ("Spark"),

by and through the undersigned counsel, and complaining of Defendants Port City

Contracting Services, Inc. ("Defendant PCCS") and Robert P. Sharpe ("Sharpe"), state,

aver, and allege as follows:

## PARTIES

  1. Plaintiff Mark Eastham is an adult individual and citizen and resident of Minnesota.

  2. Plaintiff Peter Spark is an individual and is a citizen and resident of New Hanover

County, North Carolina.

  3. Defendant PCCS is a North Carolina corporation with its registered agent and

principal offices in New Hanover County, North Carolina.

  4. Sharpe was the Chief Executive Officer of Defendant PCCS, and is a citizen and

resident of New Hanover County, North Carolina.   Sharpe is a veteran and, as admitted by

Sharpe, has struggled with PTSD and depression related to his military service.

NEW HANOVER COUNTY CLERK OF COURT

R161621 05/04/22 09:05:04

PAYOR: EASTHAM,MARK & SPARK,PETER
PAYEE:
CASE#: 22CVS001507 VCAP:Y
CITA#:

| | |
|---|---|
| 21120 SC-CIVIL FEES | 179.05 |
| 21124 SC-CV LAA FEES | .95 |
| 24681 JUD TECH & FAC | 4.00 |
| 22120 CO FAC FEE S CV | 16.00 |
| TOTAL PAID | 200.00 |
| CO TENDERED | 200.00 |
| CHANGE | .00 |

8588 ID C64JMH

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to N.C. Gen.

Stat. 7A-243 and other applicable bases for jurisdiction.

6. This Court has personal jurisdiction over the Defendants pursuant to N.C. Gen.

Stat. 1-75.4 and other applicable bases for jurisdiction.

7. Venue is proper in this Court pursuant to N.C. Gen. Stat. §§1-79, 1-82, and N.C.

Gen. Stat. §55-14-31, and other applicable bases for venue.

## FACTS

8. Defendant PCCS is in the business of supplying diabetes testing strips and whose

primary customer is the United States Department of Veterans Association.

9. Plaintiffs are shareholders and former officers of Defendant PCCS. Together, the

Plaintiffs are the owners of 40% of Class B shares of Defendant PCCS.   Eastham owns

25% of Class B shares and Spark owns 15% of Class B shares of Defendant PCCS.

10. Defendant Sharpe is a shareholder of Defendant PCCS and is the owner of 100% of

Class A shares of Defendant PCCS, and the owner of approximately 40% of Class B

shares of Defendant PCCS.

11. Pursuant to the Shareholder Agreement of Defendant PCCS only Class A

shareholders have the right to vote during shareholder meetings, and effectively hold all of

the power to run Defendant PCCS.

12. Defendant Sharpe is the majority owner of shares of Defendant PCCS, and as such

owes a fiduciary duty to the minority shareholders of Defendant PCCS, which includes

Plaintiffs.

13. Defendant PCCS was originally formed on February 5, 2019 as a North Carolina limited liability company.

14. Defendant PCCS was converted from a limited liability company to a North Carolina corporation on June 30, 2020.

15. From approximately October 1, 2019 to early January 2021, Plaintiff Eastham was an employee of Defendant PCCS ("Eastham Initial Employment").

16. From approximately August 1, 2019 to December 14, 2021, Spark was an employee of Defendant PCCS.

17. As of the end of Eastham's Initial Employment, Eastham owned 3,194 shares of Defendant PCCS.

18. On June 7, 2021, Eastham and Defendant PCCS entered a Stock Redemption and Release Agreement ("Release Agreement"). A copy of the Release Agreement is attached hereto as Exhibit A and incorporated herein by reference.

19. Pursuant to the terms of the Release Agreement, Defendant PCCS was to pay Eastham $60,000 for the Class B shares he owned in Defendant PCCS.

20. As of the date of this Complaint, Defendant PCCS has paid nothing to Eastham pursuant to the Release Agreement.

21. Later in 2021, Eastham was retained again as an employee of Defendant PCCS, until his employment was terminated on or about December 14, 2021 ("Eastham's Second Employment").

22. Throughout Eastham's employments with Defendant PCCS, Eastham served as Chief Operating Office and President.

23. Throughout Spark's employment with Defendant PCCS, Spark served as Chief Financial Officer and Secretary of the Board of Directors.

24. Because Defendant PCCS was a startup company, it could not afford to pay the agreed upon salaries of key employees until its revenues grew.

25. As a result, certain key employees, including Plaintiffs Eastham and Spark, agreed to defer receipt of their full wages until Defendant PCCS had sufficient financial means to pay their deferred compensation.

26. As of the date of this Complaint, Eastham is owed $72,500.00 in deferred compensation.

27. As of the date of this Complaint, Spark is owed $92,500.00 in deferred compensation.

28. Plaintiff's deferred compensation, along with other key employees, were noted and reflected in Defendant PCCS's corporate and financial records.

29. Defendant PCCS experienced significant revenue and profit growth in 2020 and 2021.

30. On or about December 10, 2021, Defendant PCCS held a meeting with most of its key employees ("December Meeting").

31. At the time of the December Meeting, Eastham and Spark were two of three Directors for Defendant PCCS and members of its compensation committee.

32. At the December Meeting, Sharpe announced that he was unilaterally giving himself a significant increase in salary and an annual $100,000.00 bonus. The actions of Sharpe were to his benefit and to the detriment of the other employees and the other shareholders of Defendant PCCS.

33. Sharpe also used Defendant PCCS funds to purchase a car for his own personal use, which he contended would be part of his compensation, over the objection of the other key employees and members of the compensation committee.

34. At the time of the December Meeting, Defendant PCCS owed approximately $357,500 in deferred wages to Defendant PCCS's key employees.

35. Eastham and Spark both objected to Sharpe's plan to dramatically increase his pay and to issue himself a bonus, given that Defendant PCCS had promised to pay the deferred compensation to key employees when it was financially able.

36. Furthermore, because Sharpe held voting control of Defendant PCCS, the $100,000 bonus Sharpe paid himself could also be deemed to be an improper distribution to him as a shareholder of Defendant PCCS.

37. Eastham and Spark informed Sharpe that Defendant PCCS needed to pay the deferred compensation as it had promised its key employees.

38. Following the December Meeting, and on the same day, Eastham, on behalf of the other minority shareholders, sent an email to Sharpe stating that the deferred compensation should be paid before Defendant PCCS paid additional salary and bonuses to Sharpe.  A copy of the December 10, 2022 email is attached hereto and incorporated herein as Exhibit B.

39. On or about December 14, 2021, Defendant Sharpe informed both Eastham and Spark that they were being terminated from employment and removed as officers and directors of Defendant PCCS.

40. Upon information and belief, both Eastham and Spark were terminated only in retaliation because they demanded that Defendant PCCS pay the deferred compensation and objected to Sharpe paying himself.

41. Following Eastham's termination, Sharpe threatened that, if Eastham took action against Defendant PCCS, then Sharpe would "file a criminal complaint" that "will be federal" against Eastham.

42. Following Spark's, who is a UK national, termination, Sharpe threatened to have him deported and attempted to have a Civil Non-Contact Order issued against Spark.

43. Sharpe also attempted to have Spark arrested for stealing Defendant PCCS property.  After investigating the complaint, the local authorities decided that there was no support for any criminal actions against Spark and dropped the matter.  Upon information and belief, the actions of Sharpe were in furtherance of his desire and threat to have Spark deported.

44. Defendant PCCS never paid either Eastham or Spark their deferred compensation after their termination.

45. On February 4, 2021, by and through counsel, Eastham and Spark made written demand on Defendants PCCS and Sharpe.  A copy of the February 4, 2021 letter is attached hereto and incorporated herein as Exhibit C.

46. Neither Defendants PCCS nor Sharpe responded to Exhibit C and as of the date of this Complaint have not paid the earned and owed deferred compensation.

47. On February 28, 2022, by and through counsel, Eastham made a written demand on Defendant PCCS pursuant to N.C . Gen. Stat. §55-16-02 for the inspection of corporate

records. A copy of the February 28, 2022 letter is attached hereto and incorporated herein as Exhibit D.

48. Defendant PCCS did not respond to the February 28, 2022 letter.

49. Sharpe exercises complete control over Defendant PCCS as its only voting shareholder.

50. In addition, Sharpe ignores corporate formalities by unilaterally acting without Board of Director approval or consideration.

51. Defendant Sharpe ignores the requirements of Defendant PCCS's By-laws by not calling or conducting meetings, obtaining corporate consent for actions and other matters to be shown at trial.

52. In short, Sharpe ignores the corporate formalities of Defendant PCCS, instead using Defendant PCCS's assets as if they were his personal property.

53. Sharpe further uses Defendant PCCS's assets as if they were his own, including using Defendant PCCS's assets for the use by other entities Sharpe has an interest in, without any compensation to Defendant PCCS.

54. For instance, Sharpe used funds of Defendant PCCS to capitalize and purchase inventory for Stone Bay Tactical, LLC, which is another North Carolina limited liability company owned and controlled by Sharpe. Stone Bay Tactical, LLC is a licensed gun dealer and was formed to sell weapons to veterans.

55. For instance, in January 2022, Sharpe traveled to Las Vegas for an industry show related to his other business, Stone Bay Tactical, LLC. During the visit, Sharpe spent over $20,000.00 on personal items and used Defendant PCCS funds to pay the bill.

56. Sharpe also used the warehouse owned by Defendant PCCS to store inventory and other materials of Stone Bay Tactical, LLC and used the employees of Defendant PCCS to do work for Stone Bay Tactical, LLC.  In fact, all the "employees" of Stone Bay Tactical, LLC are technically employees of Defendant PCCS and are paid by PCCS.

57. Sharpe also used Defendant PCCS' warehouse to store inventory and other materials of SRS Supply, LLC, which is another North Carolina limited liability company owned and controlled by Sharpe, and used the employees of Defendant PCCS to work for SRS Supply, LLC.

58. Defendant PCCS was not compensated for the use of its assets by Stone Bay Tactical, LLC or SRS Supply, LLC.

59. Sharpe or Stone Bay Tactical, LLC have converted the assets of Defendant PCCS.

60. Sometime in March 2022, Sharpe left the United States and traveled to the Ukraine.

61. It was the intent of Sharpe to sell body army to the Ukrainian government.

62. Ultimately, Sharpe decided to fight for the Ukrainian military in their defense of the invasion of the Ukraine by Russia.

63. Sharpe used the funds of Defendant PCCS to pay for his travel and other costs while in the Ukraine.

64. Upon information and belief, Sharpe used additional funds of Defendant PCCS to purchase food and other goods for the residents of the Ukraine.

65. When Sharpe was in the Ukraine he also used funds of Defendant PCCS to purchase weapons and other military supplies that he intended to sell or give to the Ukrainian military.

66. Upon information and belief, the weapons that Sharpe purchased with Defendant PCCS funds are currently being stored in a warehouse owned or leased by Defendant PCCS.

67. The weapons purchased by Sharpe with Defendant PCCS funds have no relationship to the business of Defendant PCCS.

68. Upon information and belief, Sharpe has used in excess of $100,000.00 of Defendant PCCS's funds for his personal efforts in the Ukraine.

69. The actions of Sharpe constitute conversion or embezzlement of Defendant PCCS assets.

70. On or about March 30, 2022, Sharpe sent an email to a number of third parties. In this March 30, 2022 email, Sharpe defamed the reputation of both Eastham and Spark publishing that they had "defrauded the company." He also published that one or both were guilty of "embezzlement." A copy of the March 30, 2022 email is attached hereto as Exhibit E and is incorporated by reference.

71. Sharpe has told third-parties that he will do everything in his power to prevent Eastham or Spark from being paid the deferred compensation that they are owed, the amounts owed under the Release Agreement or realizing the value of their shares in Defendant PCCS.

72. Upon information and belief, Sharpe has continued to defame and slander both Eastham and Spark since their termination and will continue to do so without Court intervention.

73. In the March 30, 2022 email, Sharpe also resigned as the CEO of Defendant PCCS to focus his efforts on the war in the Ukraine.

74. Despite his written recognition as the CEO of Defendant PCCS, Sharpe continued to be a signatory on the bank accounts for the company and continued to control debits and withdraw from the company bank account.

75. In addition, since Sharpe's departure from Defendant PCCS, the business of Defendant PCCS has declined. Sharpe has spent zero time conducting the affairs of the company and has terminated many of the remaining key employees.

76. Upon information and belief, while in the Ukraine Sharpe an emotional breakdown and published on social media that he was suicidal. Sharpe also published on social media that he was having suicidal thoughts.

77. Upon information and belief, Sharpe has returned from the Ukraine. However, there are little to no individuals that work at Defendant PCCS, and, consequently, there is little to no supervision of Sharpe's activities as they relate to Defendant PCCS.

78. Upon information and belief, Sharpe either has or intends to put his wife in charge of Defendant PCCS because of his PTSD and depression issues.

79. At this time, Plaintiffs have no records or other information concerning the activities of Defendant PCCS, and Sharpe, and have no understanding of the current financial condition of Defendant PCCS or the current location of the assets of Defendant PCCS. Plaintiffs believe that Sharpe is continuing to use his power over Defendant PCCS to use the assets for his own personal use and if action to stop Sharpe is not taken immediately, they will be irreparably harmed.

## FIRST CLAIM FOR RELIEF
### (Breach of Fiduciary Duty-Sharpe)

80. Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 79 as restated herein.

81. Sharpe is the majority shareholder of Defendant PCCS.

82. Plaintiffs are minority shareholders of Defendant PCCS.

83. Sharpe is the only shareholder that has voting rights and effectively controls Defendant PCCS.

84. As majority shareholder, Sharpe owes a fiduciary duty to Plaintiffs as minority shareholders.

85. The fiduciary duty owed to Plaintiffs by Sharpe includes, among other things, that he will not use his power as the majority shareholder for his benefit and at the determent of Plaintiffs.

86. Sharpe has breached his fiduciary duty by using the funds and assets of Defendant PCCS for his own personal use and gain which is to the determent to not only Defendant PCCS but, more importantly, Plaintiffs.

87. As a direct and proximate result of the actions of Defendant Sharpe, Plaintiffs have been damaged in an amount in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00).

## SECOND CLAIM FOR RELIEF
### (Constructive Fraud-Sharpe)

88. Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 87 as restated herein.

89. Sharpe, as majority shareholder of Defendant PCCS, owed a fiduciary duty to Plaintiffs.

90. Sharpe breached his fiduciary duty by, among other things, taking actions as majority shareholder that only benefited himself personally and to the determent of Plaintiffs.

91. Sharpe personally benefited by his acts and the breach of his fiduciary duty owed to Plaintiffs.

92. As a direct and proximate result of the actions of Sharpe, Plaintiffs have been damaged in an amount in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00).

## THIRD CLAIM FOR RELIEF
### (Production of Corporate Records-PCCS)

93. Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 92 as restated herein.

94. Plaintiffs are shareholders of Defendant PCCS.

95. Pursuant to N.C. Gen. Stat. §55-16-02, Plaintiffs made written demand on Defendant PCCS for the inspection of corporate records as more fully set forth in Exhibit D.

96. As of the date of this Complaint, Defendant PCCS has not responded to the written request for the inspection of corporate records or has produced the records requested.

97. As shareholders of Defendant PCCS, Plaintiffs are entitled to an order directing Defendant PCCS to permit the inspection and copying of each document requested in Exhibit D, that Defendant PCCS pay all costs associated therewith, and that Defendant PCCS pay Plaintiff's reasonable attorney's fees incurred in seeking the Court's involvement, pursuant to NC Gen. Stat. §55-16-04.

## FOURTH CLAIM FOR RELIEF
### (Dissolution and Appointment of a Receiver-PCCS)

98. Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 7 as restated herein.

99. Plaintiffs are shareholders of Defendant PCCS.

100. The assets of Defendant PCCS are currently being liquidated, wasted, and used
by Sharpe for his own personal gain.

101. The assets of Defendant PCCS are being misapplied and wasted by Sharpe.

102. Plaintiffs have no power or control over Defendant PCCS and the actions of
Sharpe.

103. Dissolution and liquidation of Defendant PCCS is necessary for the protection of
the rights and interests of Plaintiffs.

104. Dissolution of Defendant PCCS is required pursuant to N.C. Gen. Stat. §55-14-
30.

105. Pursuant to N.C. Gen. Stat. §§ 55-14-31 and 55-14-32, a receiver should be
appointed to manage Defendant PCCS, conduct an accounting of the operations, past and
present, of Defendant PCCS, to marshal the assets of Defendant PCCS, and to wind up and
liquidate Defendant PCCS.

106. As a direct and proximate result of the actions of Defendant Sharpe, Plaintiffs are
entitled to an order dissolving Defendant PCCS and for an appointment of a receiver that:
(a) will conduct the affairs of Defendant PCCS; (b) will conduct an accounting of
Defendant PCCS; (c) will marshal and liquidate the assets of Defendant PCCS, and (d) will
distribute the proceeds of the liquidation of Defendant PCCS to Plaintiffs.

**FIFTH CLAIM FOR RELIEF**
**(Temporary and Preliminary Restraining Order-Defendants)**

107. Plaintiffs incorporate the allegations and averments set forth in Paragraph
No. 1 through No. 106 as restated herein.

108. As set forth herein, Defendants, and specifically Sharpe, have used and moved assets of Defendant PCCS for Sharpe's own personal use or for use by other entities owned and control by Sharpe.

109. For instance, Sharpe has withdrawn amounts from Defendant PCCS' bank accounts to pay for travel, food and other necessities for his own personal use, and has purchased weapons that have no use or relationship to Defendant PCCS' business.

110. Upon information and belief, Defendants will continue to use and convert Defendant PCCS' assets for their Sharpe's own personal use and will further harm and prevent Plaintiffs' from witnessing the value of their shares in Defendant PCCS.

111. Upon information and belief, Sharpe's struggles with PTSD and depression inhibit his ability to run Defendant PCCS effectively and to the benefit of the shareholders and to make proper decisions on behalf of the Defendant PCCS.

112. Plaintiffs have not made contact with Defendant PCCS or Sharpe prior to filing of this Verified Complaint and Motion because they fear that notice to Sharpe will allow him to convert and hide additional assets of Defendant PCCS and further destroy what value that is left at Defendant PCCS. Based on the prior threats of Sharpe, Plaintiffs are also concern as to how Sharpe will/would react if notice was provided prior to the filing of this motion.

113. Unless a temporary and preliminary injunction is entered in this matter preventing Defendants from using Defendant PCCS' assets for Sharpe's personal use, Plaintiffs will be irreparably harmed and will have no remedy under the law.

114. As set forth herein, Sharpe has continued to defame and slander the reputation of Plaintiffs. Upon information and belief, Sharpe will continue to defame and slander

Eastham and Spark unless there is Court intervention to prohibit him from such damaging conduct.

115. The equities weigh in favor of Plaintiffs as to the entry of a temporary and preliminary injunction and the entry of such would maintain the status quo.

116. As a direct and proximate result of the actions of Defendants, Plaintiffs are entitled to a temporary and preliminary injunction wherein: (1) the bank accounts of Defendant PCCS will be frozen and Sharpe will not have access to any account of Defendant PCCS; (2) the other physical assets of Defendant PCCS will be frozen and will not be disposed of, other than for ordinary business reasons; (3) Sharpe will not have access or control over any asset of Defendant PCCS; (4) any weapons or other products or goods purchased by Sharpe that are not related to the business of Defendant PCCS will be held in an agreed upon location and will not be sold or moved until so ordered by the Court; and (5) Sharpe will be prohibited from publishing defamatory statements about Eastham or Spark.

## SIXTH CLAIM FOR RELIEF
### (Breach of Contract-Sharpe)

117. Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 116 as restated herein.

118. Plaintiffs Eastham & Spark were parties to an oral employment agreement with Defendant PCCS.

119. Defendant PCCS agreed to pay Plaintiffs Eastham & Spark an annual salary.

120. Plaintiffs Eastham and Spark and Defendant PCCS further agreed that monthly wages would be deferred until such time as Defendant PCCS could afford to pay Plaintiffs Eastham and Spark.

121. The parties' agreement as to deferred compensation was documented in Defendant PCCS' compensation committee meeting minutes and notes.

122. As of the date of this Complaint, Eastham is owed $72,500.00 in deferred compensation.

123. As of the date of this Complaint, Spark is owed $92,500.00 in deferred compensation.

124. At the time of Eastham's and Spark's termination, Defendant PCCS had sufficient financial ability to pay the deferred compensation.

125. Defendant PCCS breached its agreement with Eastham and Spark by failing to pay, as and when due, Eastham's and Spark's deferred compensation.

126. As a direct and proximate result of Defendant PCCS's breach of contract, Eastham has been damaged in the sum certain amount of $72,500.00, plus interest accruing at the legal rate from December 10, 2021, and Spark has been damaged in the sum certain amount of $92,500.00, plus interest accruing at the legal rate from December 10, 2021.

## SEVENTH CLAIM FOR RELIEF
### (Breach of Wage and Hour Act-Defendants)

127. Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 126 as restated herein.

128. Eastham and Spark were to be paid wages by Defendant PCCS for the services provided during their employment with Defendant PCCS.

129. Defendant PCCS requested that Eastham and Spark agree to defer payment of some of their compensation until such time as Defendant PCCS had the financial stability to pay Eastham's and Spark's wages.

130. Between October 2019 and June 2020, Defendant PCCS deferred $72,500.00 in Eastham's wages.

131. Between ___ and June, 2020, Defendant PCCS deferred $92,500.00 in Spark's wages.

132. Eastham and Spark made written demand that Defendant PCCS pay Plaintiffs' deferred pay in January of 2021.

133. Defendant PCCS refused to pay Eastham's and Spark's deferred compensation.

134. As of December 10, 2021, Defendant PCCS had the financial ability to pay Eastham's and Spark's, as well as other key employee's, deferred compensation, but failed to do so.

135. Since their termination, Eastham and Spark again made written demand for payment of their deferred compensation, as shown in Exhibit C, but to date Defendant PCCS has refused to make such payment.

136. As alleged above, Sharpe exercised complete control over Defendant PCCS's refusal to pay Plaintiffs' deferred compensation and this is exhibited by the following:

      a.   Sharpe unilaterally decided whether to make payments for deferred compensation;

      b.   When challenged regarding deferred pay, Sharpe terminated Eastham's and Spark's employment and removed them from the Board of Directors;

      c.   Instead of paying deferred pay when Defendant PCCS had the necessary funds, Sharpe instead approved a significant increase in his own wages and a $100,000.00 bonus to himself;

137.  The deferred compensation of Eastham and Spark has been earned and is owed by Defendant PCCS.

138.  As a direct and proximate result of the actions of Defendant PCCS and Sharpe, Eastham and Spark have been damaged in an amount of $72,500.00 and $92,500.00, respectfully, plus liquidated damages, interest and reasonable attorneys' fees pursuant to N.C. Gen. Stat. §95-25-22.

### EIGHTH CLAIM FOR RELIEF
### (Defamation-Sharpe)

139.  Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 138 as restated herein.

140.  Eastham and Spark are private citizens.

141.  Sharpe has knowingly made and published to third-parties in writing defamatory statements about both Eastham and Spark.

142.  The statements made and published by Sharpe were received by third-parties.

143.  The statements made and published by Sharpe constitute defamation *per se*.

144.  The statements made and published by Sharpe were willful and wanton.

145.  As a direct and proximate result of the actions of Sharpe, Eastham and Spark have been damaged in an amount in excess of Twenty-Five Thousand and no/100 Dollars ($25,000.00).

146.  As a direct and proximate result of the willful and wanton actions of Sharpe, punitive damages shall be awarded to Eastham and Spark in an amount to be determined at trial.

### NINTH CLAIM FOR RELIEF
### (Breach of Stock Redemption and Release Agreement-PCCS)

147.  Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 146 as restated herein.

148.  The Stock Redemption and Release Agreement is attached hereto as Exhibit A and is incorporated herein by reference.

149.  Eastham complied with each of his obligations under the Stock Redemption and Release Agreement.

150.  Defendant PCCS breached the Stock Redemption and Release Agreement by failing to make payments as and when due.

151.  As a direct and proximate result of Defendant PCCS's breach of the Stock Redemption and Release Agreement, Eastham has been damaged in amount in excess of $25,000.00, specific amounts to be proven at trial.

### TENTH CLAIM FOR RELIEF
### (Motion for Expediated Discovery)

152.  Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 151 as restated herein.

153.  In order to prepare for the hearing on Plaintiffs' motion for preliminary judgment, Plaintiffs need to conduct limited discovery of Defendant PCCS and Sharpe.

154.  Plaintiffs require limited Interrogatories wherein specific questions will be propounded as to the name, account number, and location of all bank accounts in the name of PCCS, the location of any and all assets, tangible or intangible, of Defendant PCCS, and an accounting of any and all amounts paid to or withdrawn by Sharpe since December 10, 2021, with said Interrogatories being answered within five (5) days of service.

155. Plaintiffs require limited Requests for Production of Documents wherein specific document requests will be propounded as to bank statements in the name of Defendant PCCS from December 10, 2021 to the present, a list of all assets of Defendant PCCS from December 10, 2021 to the present, the location of any and all assets, tangible or intangible, of Defendant PCCS, and accounting or financial records of any and all amounts paid to or withdrawn by Sharpe since December 10, 2021, with said Request for Production of Documents being answered within five (5) days of service.

156. Plaintiffs require a deposition of Defendant PCCS and Sharpe limited to the bank statements in the name of Defendant PCCS from December 10, 2021 to the present, a list of all assets of Defendant PCCS from December 10, 2021 to the present, the location of any and all assets, tangible or intangible, of Defendant PCCS, and accounting or financial records of any and all amounts paid to or withdrawn by Sharpe since December 10, 2021with said depositions taking place within ten (10) days from the entry of a Temporary Restraining Order.

NOW THEREFORE, Plaintiffs pray the Court to enter relief in Plaintiffs' favor, as follows:

1. An Order, that Defendant PCCS provide each document and/or record requested by Plaintiff in Exhibit D;

2. In Plaintiff Eastham's favor for Defendant PCCS's breach of contract in the sum certain amount of $72,500.00, plus interest in accordance with applicable law;

3. In Plaintiff Spark's favor for Defendant PCC's breach of the contract in the sum certain amount of $92,500.00, plus interest in accordance with applicable law;

4. In Plaintiff Eastham's and Spark's favor against Defendant PCCS and Defendant Sharpe for violation of the North Carolina Wage and Hour Act, in an amount to be shown at trial, together with liquidated damages, interest and attorney's fees;

5. In Plaintiff Eastham's favor against Defendant PCCS for breach of the Stock Redemption and Release Agreement, in an amount to be shown at trial, plus interest in accordance with applicable law;

6. In Plaintiffs Eastham's and Spark's favor in an amount in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00) for Defendant Sharpe's publication of defamatory statements;

7. In Plaintiffs Eastham's and Spark's favor for punitive damages;

8. That any judgment entered against Defendant PCCS be likewise entered against Defendant Sharpe under the doctrine of piercing the corporate veil;

9. For a Temporary Restraining Order and Preliminary Injunction be entered wherein: (1) the bank accounts of Defendant PCCS will be frozen and Sharpe will not have access to any account of Defendant PCCS; (2) the other physical assets of Defendant PCCS will be frozen and will not be disposed of, other than for ordinary business reasons; (3) Sharpe will not have access or control over any asset of Defendant PCCS; (4) any weapons or other products or goods purchased by Sharpe that are not related to the business of Defendant PCCS will be held in an agreed upon location and will not be sold or moved until so ordered by the Court; (5) Sharpe is prohibited from publishing defamatory statements about Eastham or Spark.

10. For an Order for expedited discovery to include limited Interrogatories, Request for Production of Documents, and Depositions;

11. That the costs of this action be taxed against the Defendants, including reasonable attorneys' fees as provided for by law;

12. That Plaintiffs have a recover pre and post judgment interest, as allowed by law;

13. For trial by jury on all issues so triable; and

14. For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this the 4th day of May, 2022.

> Davis Hartman Wright, LLP
> P.O. Box 11320 (28404)
> 2819 Park Avenue, Suite B
> Wilmington, NC 28403
> Telephone and Facsimile: (910) 756-4070
>
> By: _____
> Thomas S. Babel
> N.C. State Bar No. 35004
> tsb@dhwlegal.com
> *Counsel for Plaintiffs Mark Eastham and Peter Spark*

NORTH CAROLINA

**VERIFICATION**

NEW HANOVER COUNTY

I, Peter Spark, being first duly sworn, depose and say that I have read the allegations in the Verified Complaint, and the same are true of my own knowledge, except those matters and statements stated upon information and belief, and as to those matters and statements, I believe them to be true.

This the 3rd day of May 2022.

_____
Peter Spark

SWORN TO AND SUBSCRIBED

Before me this the 3rd day of May 2022

_____
Notary Public

Carly Ross Foster
Printed/typed name of Notary Public

My commission expires: 11/12/2023

TEXAS                                                **VERIFICATION**

_Midland_ COUNTY

     I, Mark Eastham, being first duly sworn, depose and say that I have read the allegations in the Verified Complaint, and the same are true of my own knowledge, except those matters and statements stated upon information and belief, and as to those matters and statements, I believe them to be true.

     This the 3rd day of May 2022.

_____
Mark Eastham

SWORN TO AND SUBSCRIBED

Before me this the 3rd day of May 2022

_____
Notary Public

_____
Printed/typed name of Notary Public

My commission expires: _7-15-2022_

CHRISTINA A. ZERTUCHE
My Notary ID # 10508480
Expires July 15, 2022

**EXHIBIT A**

## STOCK REDEMPTION AND RELEASE AGREEMENT

This Stock Redemption and Release Agreement ("Agreement") is dated as of June 7, 2021, and is by and among Port City Contracting Services, Inc., a North Carolina corporation, whose principal place of business is Port City Contracting Services, Inc., 2017 Corporate Drive, Unit 4, Wilmington, North Carolina 28405, and which was formerly Port City Contracting Services, LLC (the "Company") and Mark Eastham, an individual with an address of 261 Wyndham Cir W, New Brighton, MN 55112 ("Eastham"). The Company and Eastham are sometimes referred to herein individually as a "Party" and together as the "Parties."

### RECITALS

**WHEREAS,** Eastham owns 3,194 shares of Class B common stock in the Company (the "Shares");

**WHEREAS,** Eastham has stepped down from his position as President and terminated his employment relationship with the Company, but plans to continue to serve on the Company's Board of Directors and provide consulting services to the Company on an independent contractor basis;

**WHEREAS,** Eastham wishes to sell to the Company, and the Company wishes to purchase and redeem from Eastham, 1,916 of the shares owned by Eastham (the "Shares"), as more fully described and subject to the terms and conditions set forth herein;

**NOW THEREFORE,** in consideration of the premises, and the representations, warranties and mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each Party, the Parties hereto do hereby agree as follows:

### AGREEMENT

1. **Redemption.** Eastham hereby sells, transfers, and assigns to the Company, and the Company hereby redeems and purchases from Eastham, all of Eastham's right, title, and interest in and to the Shares (the "Redemption"), free and clear of any pledge, lien, charge, security interest, mortgage, claim, or other encumbrance (each, an "Encumbrance").

2. **Redemption Price. Following receipt of an executed Stock Assignment Separate from Certificate in the form attached hereto as Schedule 1, the Company shall pay to Eastham Sixty thousand and no/100 Dollars ($60,000.00) for the Shares (the "Redemption Price"). The Redemption Price shall be paid as the Company receives payments for the sale of diabetic test strips at a rate of $1 per box sold and for which payment is received. On or before the [5th] of each month, beginning in [July] 2021, the Company shall determine the number of boxes of test strips for which it received payment during the prior month and pay to Eastham an amount equal to $1 per box until the Redemption Price has been paid in full. The Company shall pay such amounts by [check mailed to the address/wire transfer to the bank account] indicated on Schedule 2, or as Eastham may otherwise direct in writing.**

3. **Effective Date.** The effective date of the Redemption shall be [the date of this Agreement].

**Expiration Date. The expiration date will be one year from the Effective Date. If the Redemption Price has not been paid in full Eastham will retain the difference of shares not purchased and redeemed by Company. If both parties agree then a new stock redemption and release agreement may be negotiated for the remaining balance from this agreement.**

4.    **Further Assurances**. Each Party hereto shall take all further actions and sign and deliver any additional instruments on or after the Closing as a Party hereto deems reasonably necessary to consummate or evidence the transactions contemplated by this Agreement.

5.    **Representations and Warranties**.

(a)    Each Party represents and warrants to the other Party that: (i) such Party has full capacity, power, and authority to enter into this Agreement and the Transaction Documents to which it is a party and to carry out the transactions contemplated under this Agreement and the Transaction Documents to which it is a party; (ii) this Agreement and the Transaction Documents to which it is a party are binding upon such Party and are enforceable against such Party in accordance with their terms; (iii) no consents or approvals are required from any other person or entity for such Party to enter into this Agreement or the Transaction Documents to which it is a party or consummate the transactions contemplated hereby or thereby; and (iv) the execution, delivery and performance by such Party of this Agreement and the other Transaction Documents to which it is a party do not and will not violate any law, rule, regulation, judgment, injunction, order, contract, agreement, or other instrument, arrangement, commitment, obligation, understanding, or restriction of any kind to which such Party is a party.

(b)    Eastham represents and warrants to the Company as follows:

(i)    None of the Shares are pledged, placed in escrow, encumbered, subject to any lien or to any matured, unmatured, or contingent claim.  Except for the rights of the Company under this Agreement, there are no options, agreements, contracts, security interests, or other rights in existence to purchase or acquire the Shares, now or in the future.

(ii)    All of the Shares redeemed by the Company pursuant to this Agreement have been validly issued and are outstanding, fully paid and nonassessable, and are not subject to any liens, restrictions, charges, or other Encumbrances, or to any preemptive rights or rights of first refusal or first offer in favor of any other person.

(iii)    Eastham agrees to waive any and all rights he may have pursuant to the Bylaws or otherwise which concern the purchase and sale of the Shares.

6.    **Survival of Representations and Warranties**.  Each of the Company and Eastham shall be entitled to rely only upon the warranties and representations set forth in this Agreement and all representations, warranties, covenants, and agreements made by the parties in this Agreement shall survive the Closing.   Each of the Company and Eastham expressly warrants and represents that, except for the representations and statements set forth herein, neither Party is relying upon any statement or representation of the other Party to this Agreement or any other person. Each Party is relying on that Party's own judgment and acknowledges that each has been represented and advised by the Party's own attorney in connection with this Agreement.

7.    **Assignment**.  The stock of the Company is not marketable and this Agreement is unique and personal to the Parties hereto.  This Agreement shall not be assigned by any Party without the express prior consent of the other Party, and may be enforced by a suit in equity for specific performance by either of the Parties.

8.    **Entire Agreement**.  This Agreement represents the entire agreement between the Parties with respect to its subject matter and supersedes all prior oral and written representations, agreements, and other communications relating to the subject matter of this Agreement.  This Agreement may be amended, modified, supplemented, superseded, or canceled, and any of the terms, covenants, representations,

warranties, or conditions hereof may be waived, only by a written instrument executed by both of the Parties hereto or, in the case of a waiver, by or on behalf of the Party waiving compliance.

9. **Governing Law**. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of North Carolina.

10. **Binding Effect**. The rights and duties of the Parties hereunder will inure to the benefit of and be binding upon their respective successors and permitted assigns.

11. **Counterparts**. This Agreement may be executed in any number of counterparts, each of which will be an original and all of which together will constitute one and the same instrument. Any signature page delivered electronically will be binding to the same extent as an original signature page.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

PORT CITY CONTRACTING SERVICES, INC.

By: _____ 06/07/21
Name: Robert P. Sharpe
Title: CEO


_____
**MARK EASTHAM**

**SCHEDULE 1**

**STOCK ASSIGNMENT SEPARATE FROM CERTIFICATE**

FOR VALUE RECEIVED, the undersigned (the "Transferor"), hereby sells, assigns, and transfers unto Port City Contracting Services, Inc., a North Carolina corporation (the "Company") all of such Transferor's right, title, and interest in and to _1,916_ shares of Class B common stock of the Company standing in the name of Transferor on the books of the Company and such Transferor does hereby irrevocably constitute and appoint an authorized officer of the Company as his attorney-in-fact to transfer such stock on the books of the Company with full power of substitution in the premises.

Dated: **June 10** _____, 2021

_Mark Eastham_
_____
Mark Eastham

**SCHEDULE 2**

Wiring Instructions for Bank Account Designated by Eastham for Payments

Account Name:              Mark Eastham
Bank:
Bank Address (if needed):
ABA#:
Account Name to Credit:
Account Number to Credit:
Account Address (if needed):

# STOCK REDEMPTION AND RELEASE AGREEMENT

**Final Audit Report**                         2021-06-10

| | |
|---|---|
| Created: | 2021-06-07 |
| By: | Robert Sharpe (robert@pccsmedical.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAXHfmmKANyA3LgEKBUqtaI-kAR_81F__Y |

## "STOCK REDEMPTION AND RELEASE AGREEMENT" History

📄 **Document created by Robert Sharpe (robert@pccsmedical.com)**
2021-06-07 - 6:09:58 PM GMT- IP address: 65.184.131.207

✉ **Document emailed to Mark Eastham (mark.eastham@pccsmedical.com) for signature**
2021-06-07 - 6:10:51 PM GMT

📄 **Email viewed by Mark Eastham (mark.eastham@pccsmedical.com)**
2021-06-08 - 11:00:45 AM GMT- IP address: 174.219.133.30

✍ **Document e-signed by Mark Eastham (mark.eastham@pccsmedical.com)**
Signature Date: 2021-06-10 - 1:11:36 PM GMT - Time Source: server- IP address: 104.48.58.27

✅ **Agreement completed.**
2021-06-10 - 1:11:36 PM GMT

 **Adobe Sign**

**EXHIBIT B**

**From:** Trey Sharpe <trey@pccsmedical.com>
**Sent:** Friday, December 10, 2021 1:14 PM
**To:** Mark Eastham <mark.eastham@pccsmedical.com>
**Subject:** Re: Follow Up

Do you know the amount of profits/money we moved forward as partners when we restructured?

Trey Sharpe

CEO, PCCS Medical

Mobile 910.540.8157

www.pccsmedical.com

───────────────────────────────────────────────────────────────

**From:** Mark Eastham <mark.eastham@pccsmedical.com>
**Sent:** Friday, December 10, 2021 2:01:37 PM
**To:** Trey Sharpe <trey@pccsmedical.com>
**Subject:** Follow Up

Trey,

Thank you for sharing with us your compensation plan going forward. I'm sorry on behalf of the Partners if some of us were taken off guard. I hope that you were not upset. We are very appreciative of what you have done and for your generosity to all of us. You have worked very hard and deserve to be compensated how you feel is appropriate.

Based on our conversation it makes sense that everyone be made whole. I have copied below these amounts that are on the books. These figures were ones that you came up with by looking at everyone's time with the company without pay based on current salaries at that time. These numbers were included in last years financials.

We would like to propose that everyone get their full back pay by the end of the year.  It would be $170K for you and you can see the others below.  Your new compensation plan of 25% new business profit in 2022 makes sense to all of us now that we had time to digest.

If you're in agreement we can get this information to Adrianne.

Again I hope that you understand how appreciative we all are of your efforts.

Thanks

Mark

| | |
|---|---|
| Salaries Payable (A/P) | |
| Salaries Payable - Jay | 8,500.00 |
| Salaries Payable - Mark | 72,500.00 |
| Salaries Payable - Peter | 92,500.00 |
| Salaries Payable - Robert | 170,000.00 |
| Salaries Payable - Ryan | 22,500.00 |

Mark Eastham, R.Ph.

Partner

PCCS Medical

(651) 788-3396

https://pccsmedicalcorp.com/

 

*This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error, please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee, you should not disseminate, distribute or copy this email. Please notify the sender immediately by email if you have received this email by mistake and delete this email from your system. If you are not the intended recipient, you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.*

**EXHIBIT C**



WILMINGTON OFFICE
101 N. 3RD STREET, SUITE 400 (28401)
POST OFFICE BOX 1950
WILMINGTON, NORTH CAROLINA 28402
TELEPHONE (910) 777-6000
FAX (910) 777-6111

BENTON L. TOUPS
ATTORNEY AT LAW
DIRECT DIAL #: (910) 777-6011
DIRECT FAX #: (910) 777-6101
EMAIL: BTOUPS@CSHLAW.COM
WWW.CSHLAW.COM

February 4, 2022

**VIA EMAIL AND U.S. CERTIFIED MAIL**

Robert P. Sharpe
Chief Executive Officer, Port City Contracting Services, Inc.
245 Royal Fern Road
Wilmington, NC 28412
trey@pccsmedical.com

Adrianne B. George
President, Port City Contracting Services, Inc.
275 Bouchard Drive
Waxhaw, NC 28173
Adrianne.George@pccsmedical.com

**RE: Peter Spark / Mark Eastham**

Dear Mr. Sharpe and Ms George:

This firm represents Peter Spark and Mark Eastham (our "Clients"). Our Clients are former employees of Port City Contracting Services, Inc. (the "Company"), and they remain shareholders of the Company. Mr. Spark was employed as the Managing Partner, Finance, and Mr. Eastham was the Company's COO. Our Clients were involuntarily terminated from their positions with the Company on December 14, 2021. We write to address a myriad of concerns regarding our Clients' treatment by the Company and its principal and CEO Robert "Trey" Sharpe.

**Unpaid Wages and Unlawful Retaliation**

As investors in the Company, our Clients allowed the Company to defer wages it owed them in order to provide the Company with sufficient operating capital. This arrangement was openly discussed, and I also understand it to be memorialized in various shareholder meeting minutes. On or about December 10, 2021, a meeting of the Company's Board of Directors/shareholders was called by Mr. Sharpe. During that meeting, Mr. Sharpe announced that he was paying himself a $100,000 bonus as well as changing his own pay structure in a manner that would result in a substantial increase in his compensation. In response, Mr. Eastham and/or Mr. Spark suggested that before Mr. Sharpe increase his own salary and bonus himself, other employees should be paid their back-due wages. Unfortunately, Mr. Sharpe declined to do that and shortly thereafter terminated our Clients' employment with the Company, a step that can only be seen as an act of retaliation for our Clients' request for payment of back-due wages.

Robert P. Sharpe & Adrianne B. George
Page 2
February 4, 2022

As of the date they were terminated, Mr. Spark was owed approximately $92,500 in past due wages, and Mr. Eastham was owed approximately $72,000 in past due wages. The Company's

failure to pay these wages constitutes a violation of the North Carolina Wage and Hour Act and the federal Fair Labor Standards Act (FLSA), both of which provide for liquidated (double) damages, attorneys' fees and personal liability on the part of Mr. Sharpe.

The Company's termination of our Clients in retaliation for addressing their unpaid wages constitutes a violation of the North Carolina Retaliatory Employment Discrimination Act ("REDA"), which provides for treble damages and attorneys' fees. Their termination was also in violation of the anti-retaliation provisions of the FLSA.

**Breach of the June 7, 2021 Stock Redemption and Release Agreement**

Pursuant to a December 22, 2020, Restricted Stock Agreement, Mr. Eastham was granted 3,194 shares of Company stock. The Company and Mr. Eastham entered into a Stock Redemption and Release Agreement, effective June 7, 2021. Per that Agreement, the Company purchased 1,916 shares of Mr. Eastham's stock for $60,000. The purchase price was to be paid in monthly installments of $1 for every box of diabetic test strips the Company sold. Thus far in 2022, the Company has paid Mr. Eastham nothing under Redemption Agreement and is in clear breach of the same.

**Mr. Sharpe's Breach of Fiduciary Duty and Misuse of Company Resources**

Mr. Sharpe has 100% of the voting shares of the Company and exercises complete control over its operations and owes a fiduciary duty to the Company and its shareholders. He has breached that duty.

Not only has Mr. Sharpe misappropriated money to himself in the form of his excessive, unilaterally granted bonus and salary increase, he has also misused Company money and shareholder profits to fund his own unrelated business ventures. While there may be others, one such venture is Stone Bay Tactical, LLC. ("Stone Bay"). With respect to Stone Bay, Mr. Sharpe has: (1) used Company monies and property to capitalize Stone Bay; (2) used Company money to make inventory purchases for Stone Bay; (3) used Company warehouse space to store Stone Bay inventory; and (4) used Company employees to perform labor for Stone Bay.

Our Clients also believe that Mr. Sharpe has used Company resources for personal benefit. For example, our Clients believe Mr. Sharpe used Company funds to purchase a vehicle for his personal use.

Robert P. Sharpe & Adrianne B. George
Page 3
February 4, 2022

Mr. Sharpe's misuse of Company assets for his own benefit, and to the detriment of other shareholders, gives rise to liability on the part of Mr. Sharpe and constitutes grounds for dissolution of the Company.

## Harassment, Discrimination, Malicious Prosecution and Abuse of Process

Particularly with regard to Mr. Spark, Mr. Sharpe has engaged in a pattern of outrageous conduct for which he is liable. Mr. Spark is a citizen of the UK. Mr. Sharpe has consistently threatened to seek to have Mr. Spark deported. Such threats constitute blatant, illegal national origin discrimination.

Recently, Mr. Sharpe sought to have a No-Contact Order for Stalking or Nonconsensual Sexual Conduct issued against Mr. Spark. There were absolutely no grounds for that application. Mr. Sharpe's institution of this action is a thinly veiled effort to try to exert some leverage over Mr. Spark in their dealings related to the Company. As such, it is an abuse of the judicial process and constitutes a malicious prosecution.

## Equity in the Company

Despite the termination of their employment, Mr. Spark and Mr. Eastham remain shareholders of the Company, and Mr. Sharpe owes them duties as such. Should Mr. Sharpe wish for that not to be so, my Clients are willing to sell their shares back to the Company. In the absence of such an arrangement, dissolution may be the only alternative.

I also understand that Mr. Eastham is owed a distribution of $37,202.00 in connection with the Company's conversion from an LLC to a corporation. Mr. Eastham has paid taxes on this sum but has not received it.

## Personal Guarantees

Our Clients are personal guarantors of the Company on one or more contracts the Company has with its vendors. We insist they promptly be removed as such.

## Registered Agent

Mr. Spark is still listed as the Company's Registered Agent. We insist that the Company designate a new Registered Agent.

## Conclusion

At this point, I do not have a specific monetary demand. We are still discussing that with our Clients, and we are still assessing the financial, mental and emotional impact of Mr. Sharpe's

Robert P. Sharpe & Adrianne B. George
Page 4
February 4, 2022

actions.  My objective in writing this letter is to begin a dialogue in hopes of working towards a resolution of these issues without the need to resort to litigation, but that is certainly the next step if discussions are not successful. Towards that end, I ask that you or your attorney contact me regarding the matters discussed herein.

Finally, our Clients demand that Mr. Sharpe, the Company and Stone Bay take immediate steps to preserve any and all evidence relating to these matters. The Company's evidentiary preservation steps should include, but by no means be limited to, immediate measures to preserve any potentially relevant emails, text messages, business records, and financial records.

Please let me hear from you or your representative within 14 days of the date of this letter.

Very truly yours,

*Benton L. Toups*

Benton L. Toups

EXHIBIT D



Samuel B. Potter
sam@hcpplaw.com
(910) 772-1678

February 28, 2022

Port City Contracting Services, Inc.
c/o Robert P Sharpe, CEO
2017 Corporate Drive, Unit 4
Wilmington, NC 28405

Port City Contracting Services, Inc.
c/o Adrianne B. George
2017 Corporate Drive, Unit 4
Wilmington, NC 28405

Re:    Corporate Records Inspection

Dear Mr. Sharpe and Ms. George:

This firm represents Mark Eastham ("Mr. Eastham"), a shareholder of Port City Contracting Services, Inc. (hereafter "PCCS"). Pursuant to NCGC §55-16-02, Mr. Eastham hereby demands to be permitted to inspect and copy, by and through the undersigned, the following:

(1) PCCS's articles of incorporation as currently in effect.

(2) PCCS's bylaws as currently in effect.

(3) All written communications within the past three years to shareholders generally.

(4) Minutes of all meetings of, and records of all actions taken without a meeting by, its shareholders, its board of directors, and board committees established under section G.S. 55-8-25.

(5) A list of the names and business addresses of its current directors and officers.

(6) Records of any final action taken with or without a meeting by the board of directors, or by a committee of the board of directors while acting in place of the board of directors on behalf of the corporation maintained in accordance with G.S. 55-16-01(a).

(7) Accounting records of the corporation, to include a current profit and loss statement for 2022, list of current debts and liabilities, year-end Profit and Loss Statements for 2020 and 2021, a statement of gross revenue expected from all current contracts between PCCS and any third

party, a statement of officer and director salaries (current) and as of November 1, 2021 and a copy of PCCS's tax returns for 2019, 2020, and 2021 (when available).

(8) A record of PCCS's current shareholders, in alphabetical order by class of shares showing the number and class of shares held by each shareholder.

(9) Annual financial statements prepared for the corporation for its last three fiscal years, or each year of its existence if shorter than three years, and any audit or other reports with respect to the financial statements.

Mr. Eastham's purpose for inspecting the referenced documents and records is to assess what decisions of PCCS have been duly authorized by the Board of Directors, who has been elected and is currently serving as officers and directors of PCCS, who are the current shareholders of PCCS and the financial condition of PCCS as it relates to the value of Mr. Eastham's shares. These documents can be made available electronically, delivered to the undersigned's office or for inspection in person at the corporate office for PCCS. The documents must be made available within 5 business days of receipt of this letter.

Please feel free to reach out to me to arrange a time and procedure for inspection. Please take note that a failure to allow inspection of the requested documents will result in immediate legal action and pursuit of all available remedies under North Carolina law.

Respectfully,

HODGES COXE & POTTER, LLP

Samuel B. Potter

ORIGIN ID:ILMA   (910) 772-1678
SAMUEL B POTTER
HODGES COXE & POTTER, LLP
330 MILITARY CUTOFF ROAD
A2
WILMINGTON, NC 28405
UNITED STATES US

SHIP DATE: 28FEB22
ACTWGT: 1.00 LB
CAD: 108607418/INET4460

BILL SENDER

TO  PORT CITY CONTRACTING SERVICES, INC
    ATTN : ADRIANNE B. GEORGE
    2017 CORPORATE DRIVE
    UNIT 4
    WILMINGTON NC 28405
    (910) 772-1678
    INV                REF 226269  LETTER REQ RECORDS
    PO                 DEPT




**FedEx** Express

TUE - 01 MAR 4:30P
**STANDARD OVERNIGHT**

TRK#
0201   7761 6463 4333

**22 ILMA**            28405
            NC-US   **RDU**



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

EXHIBIT E

**From:** Trey Sharpe <sharpetrey4@gmail.com>
**Date:** March 20, 2022 at 1:49:59 PM CDT
**To:** david@broadsword-defense.com

**Subject: Ukraine**

Friends and family,

Why am I here in Ukraine? Duty brought me here. Love made me stay.

Love. It is all around me here. You can feel the love among the troops and citizens. As I write this, Russian and Belarusian soldiers are preparing to attack. Yet today I brought a daughter to see her father for the first time since before the war started. He trusted me to get her back to Poland safely. The love I witnessed between them was heartbreaking yet beautiful. Tomorrow I will hopefully return with tourniquets to help prepare my unit for combat. I am honored to have a tiny spot with this group of heroes. I am honored to have my Marine brother, David Danel, work with and stand beside me. He pushes and inspires me to give my best.

As a veteran, I believe I have earned the right to speak bluntly and these words are my own. Further, I am resigning as CEO of PCCS Medical to focus my efforts volunteering with the Ukrainian Army during this time.

As a disabled veteran I built a business, which helped me with my PTSD and associated depression. In this journey I brought on two corporate executives, Peter Sparks and Mark Eastham, that subsequently defrauded the company. I learned they had plans to steal company business. I learned they hid "backpay" from me as well. When one partner realized he was being fired, he immediately went to Verizon, removed phones and computers from the company account, and illegally transferred them into his own name...the literal definition of theft.  These actions have hurt the company and

brought back my PTSD and depression.

I filed a report with the The Sheriff's and the county District Attorney. They decided to not pursue the case despite clear evidence of company theft, and attempted embezzlement. I was told the case did not rise to the level of importance for a criminal case. In my eyes this decision told me I wasn't important enough, my community service didn't matter, and my service to my country didn't matter. I've been lost since this happened.

This experience only reinforces the lessons I know to be true; people in power will always find an excuse to do what they want. This is how Putin excuses killing innocent women and children. I'm tired of lies, power plays, and I'm tired of being delicate about it.

I came to Ukraine angry and hurting. The kindness and love I have received here has reminded me I matter. Knowing I have someone watching my back, like my partner and Marine Raider David Danel...it has been life changing. My teammates have worked hard to support this mission. My family has been more supportive than I ever imagined. I love you all.

I believe in a free and peaceful Ukraine. I believe you support and fight for what is right. My heart still hurts, at times I'm scared...but love keeps me moving forward.

Semper Fidelis,

Trey Sharpe

# STATE OF NORTH CAROLINA

New Hanover _____ County FILED

File No. _____

In The General Court Of Justice

*Name And Address Of Plaintiff*
Mark Eastham
261 Wyndham Cir W
New Brighton, MN 55112

2022 MAY -4 A 8: 53

NEW HANOVER COUNTY C.S.C.

**VERSUS**

BY _____

*Name And Address Of Defendant*
Robert P. Sharpe
245 Royal Fern Road
Wilmington, NC 28512

## SERVICEMEMBERS CIVIL RELIEF ACT DECLARATION

G.S. Ch. 127B, Art. 4; 50 U.S.C. 3901 to 4043

**NOTE:** *Though this form may be used in a Chapter 45 Foreclosure action, it is not a substitute for the certification that may be required by G.S. 45-21.12A.*

### DECLARATION

I, the undersigned Declarant, under penalty of perjury declare the following to be true:

1. As of the current date: *(check one of the following)*
   - ☐ a. I have personal knowledge that the defendant named above is in military service.*
   - ☒ b. I have personal knowledge that the defendant named above is **not** in military service.*
   - ☐ c. I am unable to determine whether the defendant named above is in military service.*

2. As of the current date, I ☐ have ☐ have not   received a copy of a military order from the defendant named above relating to State active duty as a member of the North Carolina National Guard or service similar to State active duty as a member of the National Guard of another state. *See* G.S. 127B-27 and G.S. 127B-28(b).

3. I ☐ used ☒ did not use   the Servicemembers Civil Relief Act Website (https://scra.dmdc.osd.mil/) to determine the defendant's federal military service.
   - ☐ The results from my use of that website are attached.
   **(NOTE:** *The Servicemembers Civil Relief Act Website is a website maintained by the Department of Defense (DoD). If DoD security certificates are not installed on your computer, you may experience security alerts from your internet browser when you attempt to access the website. Members of the North Carolina National Guard under an order of the Governor of this State and members of the National Guard of another state under an order of the governor of that state will **not** appear in the SCRA Website database.)*

4. The following facts support my statement as to the defendant's military service: *(State how you know the defendant is or is not in the military. Be specific.)*

   Plaintiff has personal knowledge that Defendant is a veteran, retired from military service.

*****NOTE:** *The term "military service" includes the following: active duty service as a member of the United States Army, Navy, Air Force, Marine Corps, or Coast Guard; service as a member of the National Guard under a call to active service authorized by the President or the Secretary of Defense for a period of more than 30 consecutive days for purposes of responding to a national emergency; active service as a commissioned officer of the Public Health Service or of the National Oceanic and Atmospheric Administration; any period of service during which a servicemember is absent from duty on account of sickness, wounds, leave, or other lawful cause. 50 U.S.C. 3911(2). The term "military service" also includes the following: State active duty as a member of the North Carolina National Guard under an order of the Governor pursuant to Chapter 127A of the General Statutes, for a period of more than 30 consecutive days; service as a member of the National Guard of another state who resides in North Carolina and is under an order of the governor of that state that is similar to State active duty, for a period of more than 30 consecutive days. G.S. 127B-27(3) and G.S. 127B-27(4).*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

| Date | Signature Of Declarant | Name Of Declarant (type or print) |
|------|------------------------|-----------------------------------|
| 05/04/2022 | | Thomas Babel |

**NOTE TO COURT:** *Do not proceed to enter judgment in a non-criminal case in which the defendant has not made an appearance until a Servicemembers Civil Relief Act affidavit or declaration (whether on this form or not) has been filed, and if it appears that the defendant is in military service, do not proceed to enter judgment until such time that you have appointed an attorney to represent him or her.*

(Over)

AOC-G-250, Rev. 5/21
© 2021 Administrative Office of the Courts

480813

## STATE OF NORTH CAROLINA

New Hanover _____ County

File No.

In The General Court Of Justice
☐ District   ☒ Superior Court Division

| Name Of Plaintiff | |
|---|---|
| Mark Eastham | |
| Address | |
| 261 Wyndham Cir W | |
| City, State, Zip | |
| New Brighton, MN 55112 | |

**CIVIL SUMMONS**

☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

### VERSUS

G.S. 1A-1, Rules 3 and 4

| Name Of Defendant(s) | |
|---|---|
| Port City Contracting Services, Inc. | |
| Robert P. Sharpe | |

| Date Original Summons Issued |
|---|
| 05/04/2022 |
| Date(s) Subsequent Summons(es) Issued |

### To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Port City Contracting Services, Inc. | Robert P. Sharpe |
| 2017 Corporate Drive, Unit 4 | 245 Royal Fern Road |
| Wilmington, NC 28405 | Wilmington, NC 28512 |

**IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles! Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| Thomas Babel, Davis Hartman Wright LLP | 5.4.22 | 8:51 ☒AM ☐PM |
| P.O. Box 11320 (28404) | Signature | |
| 3819 Park Avenue, Suite B | | |
| Wilmington, NC 28403 | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |

| | Date Of Endorsement | Time |
|---|---|---|
| ☐ ENDORSEMENT (ASSESS FEE) | | ☐ AM ☐ PM |
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Signature | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration and, so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

| | RE | OF SERVICE | |
|---|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☑ PM | Name Of Defendant |
|---|---|---|---|
| 5/6/2022 | 1440 | | Port City Contracting Services, Inc |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☑ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (If corporation, give title of person copies left with)
Robert Paul Sharpe RA
300 Princess St.
Wilmington NC 28401

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (If corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | EDWARD J. McMAHON, SHERIFF |
| Date Received | Name Of Sheriff (type or print) |
| 5/4/2022 | By _____ Deputy |
| Date Of Return | County Of Sheriff |
| 5/6/2022 | New Hanover County, N.C. |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER    FILED

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.: 22-CVS-001507

2022 MAY -6 A 11: 24

MARK EASTHAM
and PETER SPARK
                    )
                    )
          Plaintiffs )
                    )
                    )
     v.             )
                    )
PORT CITY CONTRACTING )
SERVICES, INC. and ROBERT P. )
SHARPE              )
          Defendants. )

NOTICE OF FILING CASH BOND

NOW COMES, Plaintiffs Mark Eastham and Peter Spark and pursuant to the Temporary

Restraining Order entered in this matter on May 4, 2022, hereby submits and files with the New

Hanover County Clerk of Court a cash bond of Five Hundred and No/100 Dollars ($500.00) to

be held by the Clerk of Court until so ordered by the Court.

RESPECTFULLY SUBMITTED, this the 6th day of May, 2022.

Davis Hartman Wright, LLP
P.O. Box 11320 (28404)
2819 Park Avenue, Suite B
Wilmington, NC 28403
Telephone and Facsimile: (910) 756-4070

By:_____
Thomas S. Babel
N.C. State Bar No. 35004
tsb@dhwlegal.com
*Counsel for Plaintiffs Mark Eastham and*
*Peter Spark*

NEW HANOVER COUNTY CLERK OF COURT

T198229 05/06/22 11:29:01

PAYOR: EASTHAM & SPARK
PAYEE: CASH BOND HOLD
CASE#: 22CVS001507 VCAP:N
CITA#:

| | |
|---|---|
| 26210 CASH BONDS | 500.00 |
| TOTAL PAID | 500.00 |
| CO TENDERED | 500.00 |
| CHANGE | .00 |

8602 ID C64JMH

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served a copy of the foregoing NOTICE OF FILING CASH BOND by the following means:

☑ by causing to be delivered to the party(ies) via regular U.S. Mail to the mail address indicated below:

Robert P. Sharpe
245 Royal Fern Road
Wilmington, NC 28412

Port City Contracting Services, Inc.
C/O Robert P. Sharpe
2017 Corporate Drive, Unit 4
Wilmington, NC 28405

Port City Contracting Services, Inc.
C/O Robert P. Sharpe
237 Royal Fern Road
Wilmington, NC 28412

This the 6th day of May, 2022.

Thomas Babel
DAVIS HARMAN WRIGHT LLP
*Counsel for Plaintiffs*

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.: 22-CVS-001507

MARK EASTHAM
and PETER SPARK
    Plaintiffs

    v.

PORT CITY CONTRACTING
SERVICES, INC. and ROBERT P.
SHARPE
    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

CONSENT ORDER EXTENDING
TEMPORARY RESTRAINING ORDER

*FILED*

*2022 MAY 02  A 11: 36*

*NEW HANOVER CNTY C.S.C.*

*BY*

THIS MATTER came before this Court on Plaintiffs' and Defendants request to extend the Temporary Restraining Order that was entered by the Court on May 4, 2022, and the Court based on the Consent of the parties FINDS AND ORDERS that the Temporary Restraining Order is hereby extended to June 6, 2022, when at such time the hearing on Plaintiffs' Motion for Preliminary Injunction shall be heard.

SO ORDERED, this the ⎵2 day of May 2022.

_____
Superior Court Judge Presiding
R. Kent Harrell

CONSENTED TO:

Thomas S. Babel
N.C. State Bar No. 35004
tsb@dhwlegal.com
Davis Hartman Wright, LLP
P.O. Box 11320 (28404)
2819 Park Avenue, Suite B
Wilmington, NC 28403
Telephone: (910) 756-4070
*Counsel for Plaintiffs Mark Eastham and
Peter Spark*

Addison T. Palanza
N.C. State Bar No. 50918
Addison@atlanticcoastlaw.com
Atlantic Coast Law
314 Walnut Street, Suite 100
Wilmington, NC 28401
Telephone: (910) 769-6884
*Counsel for Defendant Port City Contracting Services, Inc.*

2 CVS 1507

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

FILED
CLERK OF SUPERIOR COURT
NEW HANOVER COUNTY

MAY - 4 2022

at 12:45 am/pm
By _____ Dep/Asst CSC

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.: 22-CVS-_____

MARK EASTHAM
and PETER SPARK

                    Plaintiffs

            v.

PORT CITY CONTRACTING
SERVICES, INC. and ROBERT P.
SHARPE

                    Defendants.

)
)
)
)
)
)
)
)
)
)

TEMPORARY RESTRAINING ORDER
AND
EXPEDITED DISCOVERY ORDER

THIS MATTER came before this Court on May 4, 2022, on Plaintiffs' Motion for

Temporary Restraining Order and Expedited Discovery. Based on the Verified Complaint, and

other materials provided to the Court, and the arguments of counsel, the Court FINDS AND

ORDERS THE FOLLOWING:

### FINDINGS OF FACT

1. Mark Eastham is an adult individual and citizen and resident of Minnesota.

2. Peter Spark is an individual and is a citizen and resident of New Hanover County, North

Carolina.

3. Defendant PCCS is a North Carolina corporation with its registered agent and principal

offices in New Hanover County, North Carolina.

4. Sharpe was the Chief Executive Officer of Defendant PCCS and is a citizen and resident

of New Hanover County, North Carolina.

5. Sharpe is a veteran and, as admitted by Sharpe, has struggled with PTSD and depression

related to his military service.

6. Defendant PCCS is in the business of supplying diabetes testing strips and whose primary customer is the United States Department of Veterans Association.

7. Plaintiffs are shareholders and former officers of Defendant PCCS. Together, the Plaintiffs are the owners of 40% of Class B shares of Defendant PCCS. Eastham owns 25% of Class B shares and Spark owns 15% of Class B shares of Defendant PCCS.

8. Sharpe is a shareholder of Defendant PCCS and is the owner of 100% of Class A shares of Defendant PCCS, and the owner of approximately 40% of Class B shares of Defendant PCCS.

9. Pursuant to the Shareholder Agreement of Defendant PCCS only Class A shareholders have the right to vote during shareholder meetings, and effectively hold all of the power to run Defendant PCCS.

10. Sharpe is the majority owner of shares of Defendant PCCS, and as such owes a fiduciary duty to the minority shareholders of Defendant PCCS, which includes Plaintiffs.

11. Throughout Eastham's employment with Defendant PCCS, Eastham served as Chief Operating Office and President.

12. Throughout Spark's employment with Defendant PCCS, Spark served as Chief Financial Officer and Secretary of the Board of Directors.

13. Because Defendant PCCS was a startup company, it could not afford to pay the agreed upon salaries of key employees until its revenues grew.

14. As a result, certain key employees, including Plaintiffs Eastham and Spark, agreed to defer receipt of their full wages until Defendant PCCS had sufficient financial means to pay their deferred compensation.

15. Defendant PCCS experienced significant revenue and profit growth in 2020 and 2021.

16. On or about December 10, 2021, Defendant PCCS held a meeting with most of its key employees ("December Meeting").

17. At the time of the December Meeting, Eastham and Spark were two of three Directors for Defendant PCCS and members of its compensation committee.

18. At the December Meeting, Sharpe announced that he was unilaterally giving himself a significant increase in salary and an annual $100,000.00 bonus.

19. Sharpe also used Defendant PCCS funds to purchase a car for his own personal use over the objection of the other key employees and members of the compensation committee.

20. Eastham and Spark both objected to Sharpe's plan to dramatically increase his pay and to issue himself a bonus, given that Defendant PCCS had promised to pay the deferred compensation to key employees when it was financially able.

21. Eastham and Spark informed Sharpe that Defendant PCCS needed to pay the deferred compensation as it had promised its key employees.

22. Following the December Meeting, Eastham, on behalf of the other minority shareholders, sent an email to Sharpe stating that the deferred compensation should be paid before Defendant PCCS paid additional salary and bonuses to Sharpe.

23. On or about December 14, 2021, Sharpe informed both Eastham and Spark that they were being terminated from employment and removed as officers and directors of Defendant PCCS.

24. Following Eastham's termination, Sharpe threatened that, if Eastham took action against Defendant PCCS, then Sharpe would "file a criminal complaint" that "will be federal" against Eastham.

25. Following Spark's, who is a UK national, termination, Sharpe threatened to have him deported and attempted to have a Civil Non-Contact Order issued against Spark. The Order was never entered.

26. Sharpe also attempted to have Spark arrested for stealing Defendant PCCS property. After investigating the complaint, the local authorities decided that there was no support for any criminal actions against Spark and dropped the matter. Upon information and belief, the actions of Sharpe were in furtherance of his desire and threat to have Spark deported.

27. Sharpe exercises complete control over Defendant PCCS as its only voting shareholder.

28. Sharpe used funds of Defendant PCCS to capitalize and purchase inventory for Stone Bay Tactical, LLC, which is another North Carolina limited liability company owned and controlled by Sharpe.

29. Sharpe also used the warehouse owned by Defendant PCCS to store inventory and other materials of Stone Bay Tactical, LLC and used the employees of Defendant PCCS to do work for Stone Bay Tactical, LLC.

30. Sharpe also used Defendant PCCS' warehouse to store inventory and other materials of SRS Supply, LLC, which is another North Carolina limited liability company owned and controlled by Sharpe and used the employees of Defendant PCCS to work for SRS Supply, LLC.

31. Sharpe traveled to Las Vegas on behalf of Stone Bay Tactical, LLC and used Defendant PCCS funds to pay for over $20,000.00 in personal costs.

32. Sharpe or Stone Bay Tactical, LLC have converted the assets of Defendant PCCS.

33. Sometime in March 2022, Sharpe left the United States and traveled to the Ukraine.

34. Initially, Sharpe intended to sell body armor to the Ukraine government but ultimately decided to fight for the Ukrainian military in their defense of the invasion of the Ukraine by Russia.

35. Sharpe used the funds of Defendant PCCS to pay for his travel and other costs while in the Ukraine.

36. When Sharpe was in the Ukraine, he also used funds of Defendant PCCS to purchase weapons and other military supplies that he intended to sell or give to the Ukrainian military.

37. The weapons that Sharpe purchased with Defendant PCCS funds are currently being stored in a warehouse owned or leased by Defendant PCCS.

38. The weapons purchased by Sharpe with Defendant PCCS funds have no relationship to the business of Defendant PCCS.

39. Upon information and belief, Sharpe has used in excess of $100,000.00 of Defendant PCCS's funds for his personal efforts in the Ukraine.

40. In the March 30, 2022 email, Sharpe also resigned as the CEO of Defendant PCCS to focus his efforts on the war in the Ukraine.

41. Despite his written recognition as the CEO of Defendant PCCS, Sharpe continued to be a signatory on the bank accounts for the company and continued to control debits and withdraw from the company bank account.

42. There are few individuals that work at Defendant PCCS, and, consequently, there is little to no supervision of Sharpe's activities as they relate to Defendant PCCS.

43. On February 28, 2022, by and through counsel, Eastham made a written demand on Defendant PCCS pursuant to N.C. Gen. Stat. §55-16-02 for the inspection of corporate records.

44. Defendant PCCS did not respond to the February 28, 2022 demand for inspection of the corporate records.

45. Plaintiffs have no records or other information concerning the activities of Defendant PCCS, and Sharpe, and have no understanding of the current financial condition of Defendant PCCS or the current location of the assets of Defendant PCCS.

46. Defendants have failed to pay Plaintiffs the deferred compensation.

## CONCLUSION OF LAW

47. This Court has subject matter jurisdiction over this action pursuant to N.C. Gen. Stat. §7A-243 and other applicable bases for jurisdiction.

48. This Court has personal jurisdiction over the Defendants pursuant to N.C. Gen. Stat. §1-75.4 and other applicable bases for jurisdiction.

49. Venue is proper in this Court pursuant to N.C. Gen. Stat. §§1-79, 1-82, and N.C. Gen. Stat. §55-14-31, and other applicable bases for venue.

50. Temporary and preliminary relief may be issued by the Court: "(1) if a plaintiff is able to show likelihood of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation." *Redlee/SCS, Inc. v. Pieper*, 153 N.C. App. 421, 423, 571 S.E.2d 8, 11 (2002) (quoting *A.E.P. Industries v. McClure*, 308 N.C. 393, 401, 302 S.E.2d 754, 759-60 (1983); *see also* Rule 65(b) of the North Carolina Rules of Civil Procedure.

51. Plaintiffs have established through the verified pleadings, and attached and incorporated exhibits, and other materials provided during the hearing, that they have a likelihood of success on the merits of its claims brought against Defendants.

52. Plaintiffs have established through the verified pleadings, and attached and incorporated exhibits, and other materials provided during the hearing, that they will suffer irreparable harm if the temporary injunction is not granted by this Court.

53. Plaintiffs have established through the verified pleadings, and attached and incorporated exhibits, and other materials provided during the hearing, that a temporary injunction in this action is necessary for the protection of Plaintiffs' rights and to maintain the status quo until a hearing Plaintiffs' Motion for Preliminary Injunction.

54. Written certification contained in the Verified Pleadings provides the good faith basis for entering of a temporary restraining order without notice to Defendants.

55. Plaintiffs have established good cause for limited discovery on an expedited basis in order to prepare for the hearing on Plaintiffs' Motion for Preliminary Injunction.

56. This Court has considered the necessity of a bond under Rule 65 of the North Carolina Rules of Civil Procedure and finds that a nominal bond will suffice to protect Defendants.

BASED ON THE FINDINGS OF FACT AND CONCLUSIONS OF LAW, the arguments of counsel, the Court hereby grants Plaintiffs' Motion and ORDERS as follows:

57. Other than for business reasons, the bank accounts of Defendant PCCS will be frozen and Sharpe will not have access to any account of Defendant PCCS;

58. The other physical assets of Defendant PCCS will be frozen and will not be disposed of, other than for ordinary business reasons;

59. Sharpe will not have access or control over any asset of Defendant PCCS;

60. Any weapons or other products or goods purchased by Sharpe that are not related to the business of Defendant PCCS will be held in an identified location and will not be sold or moved until so ordered by the Court;

61. Within forty-eight (48) hours of this Order, Defendants will provide Plaintiffs with the location of the weapons or other goods referenced in paragraph 59;

62. Sharpe is prohibited from publishing defamatory statements about Eastham or Spark;

63. Within five (5) days of this Order, Defendants shall Answer Interrogatories that seek the name, account number, and location of all bank accounts in the name of PCCS, the location of any and all assets, tangible or intangible, of Defendant PCCS, and an accounting of any and all amounts paid to or withdrawn by Sharpe since December 10, 2021;

64. Within five (5) days of this Order, Defendants shall produce documents related to the bank statements in the name of Defendant PCCS from December 10, 2021 to the present, a list of all assets of Defendant PCCS from December 10, 2021 to the present, the location of any and all assets, tangible or intangible, of Defendant PCCS, and accounting or financial records of any and all amounts paid to or withdrawn by Sharpe since December 10, 2021;

65. Within ten (10) days from the date of this Order, Defendants shall sit for a deposition wherein information related to the Interrogatory Answers and documents produced will be elicited and information related to bank statements in the name of Defendant PCCS from December 10, 2021 to the present, all assets of Defendant PCCS from December 10, 2021 to the present, the location of any and all assets, tangible or intangible, of Defendant PCCS, and accounting or financial records of any and all amounts paid to or withdrawn by Sharpe since December 10, 2021 will be elicited.

66. Within five (5) days from the date of this Order, Plaintiffs shall deposit with the New Hanover County Clerk of Court a bond, which may be paid with cash, in the amount of Five Hundred and No/100 Dollars ($500.00);

67. This Temporary Restraining Order may be shared with any financial institution or other third-party necessary to effectuate the restrictions set forth herein; and

68. The Parties shall return to the Court ten (10) days from the date of this Order, unless extended by the Parties, to hear Plaintiffs' Motion for Preliminary Injunction.

Return date : 10am on May 16, 2022 (Tue)

SO ORDERED, this the 4 day of May 2022.

_____

Superior Court Judge Presiding

STATE OF NORTH CAROLINA F I L E D     IN THE GENERAL COURT OF JUSTICE
                                       SUPERIOR COURT DIVISION
COUNTY OF NEW HANOVER JUL 22 ₱ 1: 15   FILE NO.: 22-CVS-001507

| | | |
|---|---|---|
| MARK EASTHAM | NEW HANOVER CO., C.S.C. | ) |
| And PETER SPARK, | | ) |
| | BY_____ | ) |
| Plaintiffs, | | ) |
| | | ) |
| vs. | | ) |
| | | ) |
| PORT CITY CONTRACTING | | ) |
| SERVICES, INC., ROBERT P. SHARPE, | | ) |
| STONE BAY TACTICAL, LLC, and SRS | | ) |
| SUPPLY, LLC, | | ) |
| | | ) |
| Defendants. | | ) |
| | | ) |

                                       ANSWER AND COUNTERCLAIMS

**NOW COME** Defendants Port City Contracting Services, Inc. and Robert P.

Sharpe, by and through undersigned counsel, and Answer the Complaint as follows:

## FIRST AFFIRMATIVE DEFENSE
(Failure to State a Claim—Rule (12)(b)(6))

The Plaintiffs' claims should be dismissed on the grounds that they fail to state

claims for which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
(Failure to Mitigate Damages)

The Plaintiffs' contract-based claims are barred on the grounds that they failed

to mitigate their damages.

A TRUE COPY
CLERK OF SUPERIOR COURT
NEW HANOVER COUNTY
BY: *Charlotte A. Ramey*
Deputy Clerk of Superior Court

REISS & NUTT, PLLC
1221 Floral Parkway, Suite 104 - Wilmington, North Carolina 28403

-2-

### THIRD AFFIRMATIVE DEFENSE
(Breach of Contract)

The Plaintiffs' contract-based claims are barred because the Plaintiffs first breached their contractual obligations, relieving the Defendants of any obligation to perform.

### FOURTH AFFIRMATIVE DEFENSE
(Unclean Hands)

The Plaintiffs' claims for equitable relief are barred by to their own inequitable conduct.

### FIFTH AFFIRMATIVE DEFENSE
(Not Employees/Exemptions)

The Plaintiffs' Wage and Hour Act claims are barred on the grounds that the Plaintiffs were not employees and/or were exempt from the Act at all relevant times.

### SIXTH AFFIRMATIVE DEFENSE
(Good Faith)

The Plaintiffs' Wage and Hour Act claims are barred in part on the grounds that the Defendants had a good faith belief that the Plaintiffs were exempt from the Act.

### SEVENTH AFFIRMATIVE DEFENSE
(Exempt Employees)

The Plaintiffs' claims are barred by the applicable statutes of limitations for each claim.

## EIGHTH AFFIRMATIVE DEFENSE
(Truth)

The Plaintiff's defamation claim is barred on the grounds that the statements alleged to be defamatory were truthful.

## NINTH AFFIRMATIVE DEFENSE
(Waiver, Estoppel, and/or Accord and Satisfaction)

The Plaintiffs' claims arising from alleged failure to pay "back pay" are barred by the doctrines of waiver and estoppel in that they offered their services in exchange for equity in the company at a later date and received that equity.

## TENTH AFFIRMATIVE DEFENSE
(Indemnification)

Sharpe is entitled to indemnification by the company for defense of this action and any monetary award that might result.

## ELEVENTH AFFIRMATIVE DEFENSE
(Setoff)

To the extent that the Plaintiffs are awarded payment for unpaid services, said amounts must be offset by the value of shares in PCCS that they received as compensation for those services.

## TWELFTH AFFIRMATIVE DEFENSE
(Business Judgment Rule)

The Plaintiffs' claims are barred in whole or part by the business judgment rule.

## PARTIES

1.    Admitted.

2.    Admitted that Peter Spark is a resident of New Hanover County, North Carolina.  It is denied that Spark is a citizen of New Hanover County, North Carolina.

3.    Admitted.

4.    Admitted.

5.    Admitted as to Stone Bay Tactical, LLC.

6.    Admitted as to SRS Supply, LLC.

7.    Admitted.

## JURISDICTION AND VENUE

8.    Admitted.

9.    Admitted.

10.    Admitted.

## FACTS

11.    Admitted that one of the business activities conducted by Defendant PCCS is supplying diabetes testing strips, for which its primary customer is the U.S. Department of Veterans Affairs.  Except as expressly admitted, denied.

12.    Admitted.

13.    Admitted.

14.    The allegations in Paragraph 14 reference a written document and legal instrument, which is the best evidence of its contents and therefore no response is

required.  To the extent the allegations in Paragraph 14 are inconsistent with the referenced instrument, they are denied.

15.     Admitted that Sharpe is the largest shareholder of Class B stock in PCCS and is the majority shareholder of Class A stock.  Admitted that PCCS shareholders include the Plaintiffs and that they are minority shareholders.  The remainder of the allegations in Paragraph 15 are legal conclusions to which no response is required; however, to the extent a response is required, they are denied.

16.     Admitted.

17.     Admitted.

18.     Admitted.

19.     Admitted.

20.     Admitted.

21.     Admitted.

22.     The allegations in Paragraph 22 reference a written document and legal instrument, which is the best evidence of its contents and therefore no response is required.  To the extent the allegations in Paragraph 22 are inconsistent with the referenced instrument, they are denied.

23.     Admitted that Sharpe agreed in September of 2021 that PCCS should make a 50% payment of the Stock Redemption and Release Agreement to Spark but that Spark failed to conduct that transaction in the course of his job responsibilities and authority as Chief Financial Officer, and that Eastham made no effort to compel that transaction.  Except as expressly admitted, denied.

24.     It is admitted that Eastham was terminated on or about December 14, 2021.  Except as expressly admitted, denied.

25.     Admitted.

26.     Admitted.

27.     Admitted.

28.     Denied.

29.     Denied.

30.     Denied.

31.     Admitted that the Plaintiffs added deferred compensation to PCCS's financial records in late 2020 for the purpose of valuation and later to be converted to equity, but the Plaintiffs maintained those amounts on the books without authorization of the Defendants after issuance of new shares.  Except as expressly admitted, denied.

32.     Admitted.

33.     Admitted.

34.     Admitted.

35.     It is admitted that Sharpe proposed a bonus of $100,000 pursuant to his and PCCS's existing policy of paying a commission on employee-generated revenues and, in fact, was less than the amount the commission other employees would expect to receive from the amount of revenues generated by Sharpe.  It is admitted that commissions encourage employees to generate revenues for PCCS and therefore benefit them and the company.  Except as expressly admitted, denied.

36.     It is admitted that PCCS leased a car for Sharpe's use as an officer and employee.  Except as expressly admitted, denied.

37.     Denied.

38.     It is admitted that the Plaintiffs initially objected to the commission but that Eastham later agreed to its appropriateness.   It is denied that deferred compensation was owed or promised to be paid from revenues.  Except as expressly admitted, denied.

39.     Denied.

40.     It is admitted that the Plaintiffs requested payment of purported deferred compensation.  It is expressly denied that deferred compensation was promised to be paid from operating revenues of PCCS.  Except as expressly admitted, denied.

41.     Admitted that an email was sent on the referenced date.  This paragraph references a written document that is the best evidence of its contents.  To the extent the allegations in Paragraph 41 are inconsistent with the referenced document, they are denied.

42.     Admitted.

43.     Denied.

44.     Denied that Sharpe made any threats.   Admitted that Sharpe reasonably believes that Eastham violated federal law.  Except as expressly admitted, denied.

-8-

45.     Denied that Sharpe made any threats.  Admitted that embezzlement or theft could be grounds for deportation.  Except as expressly admitted, denied.

46.     Admitted that Sharpe lodged a criminal complaint against Spark for embezzlement from PCCS.  Except as expressly admitted, denied.

47.     Admitted that the Plaintiffs were not owed deferred compensation from PCCS's operating revenues and therefore were not paid such compensation.  Except as expressly admitted, denied.

48.     Admitted the referenced correspondence was sent to the Defendants on or about the referenced date.  Except as expressly admitted, denied.

49.     Admitted that the Plaintiffs were not owed deferred compensation from PCCS's operating revenues and therefore were not paid such compensation.  Admitted that the Defendants did not respond to Exhibit C.  Except as expressly admitted, denied.

50.     Admitted.

51.     Denied.

52.     It is admitted that Sharpe is the only voting shareholder.  It is denied that he exercises complete control over PCCS.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Admitted that Sharpe traveled to Las Vegas for an industry show as a representative of PCCS d/b/a Stone Bay Tactical. Except as expressly admitted, denied.

60.     Admitted that "Stone Bay Tactical" is an assumed name for PCCS and therefore all use of the warehouse to store inventory and other materials of "Stone Bay Tactical" was in fact use by PCCS. Similarly admitted, and for the same reasons, all work by PCCS employees for "Stone Bay Tactical" was for PCCS. Except as expressly admitted, denied.

61.     Denied.

62.     Denied as to Stone Bay Tactical, LLC. Except as expressly admitted, denied.

63.     Admitted that prior to January of 2022, SRS Supply, LLC used the warehouse to store inventory, the sale of which generated income for PCCS. Except as expressly admitted, denied.

64.     Admitted that PCCS employees were paid by SRS for their work for SRS. Admitted that some SRS employees also were employed and paid by PCCS.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Admitted.

69.     Admitted that Sharpe traveled to Ukraine for business purposes on behalf of PCCS, including the potential sale of military supplies. Except as expressly admitted, denied.

70.     Admitted.

71.     Admitted that PCCS paid business-related expenses and that Sharpe paid expenses associated with his personal mission in Ukraine. Except as expressly admitted, denied.

72.     Denied.

73.     Denied.

74.     Admitted that weapons owned by PCCS are stored in the warehouse leased by PCCS consistent with PCCS d/b/a Stone Bay Tactical's Federal Firearms Licenses ("FFLs").

75.     Denied.

76.     Denied.

77.     Denied.

78.     Admitted that Sharpe sent a draft email to a confidante, whom he trusted not to disclose said email. The allegations in Paragraph 78 reference a written document, which is the best evidence of its contents. Except as expressly admitted, denied.

79.     Denied.

80.     Denied.

81.     The allegations in Paragraph 81 reference a written document, which is the best evidence of its contents. To the extent that the allegations are inconsistent with the document, they are denied.

82.     Admitted that Sharpe remained a signatory on the bank accounts of PCCS and continued to control debits and withdraw from the company bank account for business purposes. Except as expressly admitted, denied.

83.     Admitted that PCCS has terminated employees for cause. Except as expressly admitted, denied.

84.     Admitted that the conduct of the Plaintiffs caused Sharpe significant emotional distress which exacerbated his PTSD while he was fighting a war. Except as expressly admitted, denied.

85.     Admitted that Sharpe has returned from Ukraine. Except as expressly admitted, denied.

86.     Denied.

87.     Admitted that Exhibit F was sent and that it is the best evidence of its contents. To the extent that the allegations in Paragraph 87 are inconsistent with the referenced document, they are denied.

88.     Admitted.

89.     Denied.

90.     The Defendants lack information sufficient to admit or deny the allegations in Paragraph 90 and therefore denies them.

## FIRST CLAIM FOR RELIEF
(Breach of Fiduciary Duty—Sharpe)

91.     The Defendant reasserts and incorporates by reference his answers in the previous paragraphs as if fully set forth.

92.     Admitted that Sharpe is the largest shareholder of Class B stock and is the sole shareholder of Class A stock in PCCS.

93.     Admitted.

94.     Admitted.

95.     Admitted that Sharpe is not an attorney. The allegations in Paragraph 95 consist of legal conclusions to which no response is required. To the extent a response is required, denied.

96.     Admitted that Sharpe is not an attorney. The allegations in Paragraph 96 consist of legal conclusions to which no response is required. To the extent a response is required, denied.

97.     Denied.

98.     Denied.

## SECOND CLAIM FOR RELIEF
(Constructive Fraud—Sharpe)

99.     The Defendant reasserts and incorporates by reference his answers in the previous paragraphs as if fully set forth.

100.    Admitted that Sharpe is not an attorney. The allegations in Paragraph 100 consist of legal conclusions to which no response is required. To the extent a response is required, denied.

101.    Denied.

102.    Denied.

103.    Denied.

## THIRD CLAIM FOR RELIEF
(Production of Corporate Records—PCCS)

104.    The Defendant reasserts and incorporates by reference his answers in the previous paragraphs as if fully set forth.

105.    Admitted.

106.    Admitted.

107.    Denied upon information and belief that as of the date of the Complaint Defendant PCCS had not responded. Admitted that since the filing of the Complaint, PCCS again responded by providing the requested records and therefore this claim is moot.

108.    Denied.

## FOURTH CLAIM FOR RELIEF
(Dissolution and Appointment of Receiver—PCCS)

109.    The Defendant reasserts and incorporates by reference his answers in the previous paragraphs as if fully set forth.

110.    Admitted.

111.    Denied.

112.    Denied.

113.    Admitted that in accordance with federal regulations, a service-disabled veteran-owned business ("SDVOB") must be controlled by a service-disabled veteran

to do business under the government's SDVOB program, and that neither Plaintiff is a service-disabled veteran.  Admitted that the Plaintiffs do not have control over PCCS or Sharpe.  Except as expressly admitted, denied.

 114. Denied.

 115. Denied.

 116. Denied.

 117. Denied.

## FIFTH CLAIM FOR RELIEF
(Preliminary Restraining Order—Defendants)

 118. The Defendants reassert and incorporate by reference the answers in the previous paragraphs as if fully set forth.

 119. Admitted that some PCCS assets have been used by Defendants for the benefit of PCCS and/or for compensation to PCCS.  Except as expressly admitted, denied.

 120. Denied.

 121. Denied.

 122. Admitted that Sharpe struggles with PTSD and depression because of his service.  Admitted that the SDVOB program is specifically designed to prefer government contracting with veterans disabled by service to their country and it is only because of that service, and Sharpe's resulting PTSD, that PCCS has been able to do business benefiting its shareholders, including the Plaintiffs. Except as expressly admitted, denied.

 123. Denied.

124.   Denied.

125.   Denied.

126.   Denied.

## SIXTH CLAIM FOR RELIEF
### (Breach of Contract—Sharpe)

127.   The Defendant reasserts and incorporates by reference the answers in the previous paragraphs as if fully set forth.

128.   Admitted.

129.   Admitted.

130.   Admitted that the Plaintiffs and other executives, including Sharpe, agreed not to receive compensation during PCCS's formative period until they could be issued equity shares.  Admitted that following the initial formative period, when revenues stabilized, the Plaintiffs and others were hired as employees and paid wages.  Admitted that as agreed, the Plaintiffs received equity shares, which they accepted.  Except as expressly admitted, denied.

131.   Admitted.

132.   Denied.

133.   Denied.

134.   Denied.

135.   Denied.

136.   Denied.

## SEVENTH CLAIM FOR RELIEF
(Breach of Wage and Hour Act—Defendants)

137.    The Defendants reassert and incorporate by reference the answers in the previous paragraphs as if fully set forth.

138.    Admitted the Plaintiffs were salaried employees beginning in or about June of 2020.  Except as expressly admitted, denied.

139.    Denied.

140.    Admitted that Eastham was not employed by or paid a salary during the referenced period as an investment in PCCS from October 2019 until May of 2020 and was then a 20% interest holder.  Except as expressly admitted, denied.

141.    Admitted that Spark was not employed by or paid during the referenced period as an investment in PCCS from October 2019 until May of 2020.  Except as expressly admitted, denied.

142.    The allegations set forth in Paragraph 142 reference a written document that is the best evidence of its contents.  To the extent the allegations in Paragraph 142 are inconsistent with the referenced document, they are denied.

143.    Admitted that PCCS did not owe deferred compensation from operating revenues.  Except as expressly admitted, denied.

144.    Denied.

145.    Admitted that PCCS declined a second demand for cash payments that was contrary to prior agreement of the parties.  Except as expressly admitted, denied.

146.    Admitted that Sharpe in consultation with other PCCS officers rendered PCCS's decision not to make cash payment of purported deferred compensation and:

    a. Denied;

    b. Admitted the Plaintiffs were terminated for reasons unrelated to the deferred payment requests.  Except as expressly admitted, denied;

    c. Admitted that Sharpe proposed an earned commission, which the Plaintiffs agreed he deserved.  Except as expressly admitted, denied.

147.  Admitted that the Plaintiffs received equity shares in 2020 as compensation for their invested time and effort from 2019 until June of 2020.  Except as expressly admitted, denied.

148.  Denied.

## EIGHTH CLAIM FOR RELIEF
(Defamation—Sharpe)

149.  The Defendant reasserts and incorporates by reference the answers in the previous paragraphs as if fully set forth.

150.  Admitted that Eastham is a private citizen of the United States.  Admitted that Spark is a private citizen of a foreign country.  Except as expressly admitted, denied.

151.  Denied.

152.  Admitted that the referenced draft correspondence was sent to the person referenced on the document and was not for distribution.  To the extent the question calls for privileged matters, Sharpe invokes that privilege.  Except as expressly admitted, denied.

153.  The allegations in Paragraph 153 constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

-18-

154.   The allegations in Paragraph 154 constitute legal conclusions to which no response is required.  To the extent a response is required, denied.

155.   Denied.

156.   Denied.

## NINTH CLAIM FOR RELIEF
(Breach of Stock Redemption and Release Agreement—PCCS)

157.   The Defendant reasserts and incorporates by reference the answers in the previous paragraphs as if fully set forth.

158.   Admitted.

159.   Denied.

160.   Admitted that payment was offered by Spark, approved by Sharpe, and refused by Eastham.  Except as expressly admitted, denied.

161.   Denied.

## TENTH CLAIM FOR RELIEF
(N.C. Gen. Stat. §§ 55-7-42—Sharpe)

162.   The Defendant reasserts and incorporates by reference the answers in the previous paragraphs as if fully set forth.

163.   Admitted.

164.   The allegations set forth in Paragraph 164 reference a written document that is the best evidence of its contents.  To the extent the allegations in Paragraph 164 are inconsistent with the referenced document, they are denied.

165.   Admitted.

166.   The factual allegations contained in Paragraph 166 are denied.  The allegations in Paragraph 166 contain legal conclusions to which no response is required.  To the extent a response to legal conclusions is required, denied.

167.   Denied.

168.   Denied.

169.   Denied.

## ELEVENTH CLAIM FOR RELIEF
(Fraudulent Transfer—Defendants)

170.   The Defendants reassert and incorporate by reference the answers in the previous paragraphs as if fully set forth.

171.   Admitted that the Plaintiffs are investors in PCCS.  Except as expressly admitted, denied.

172.   Denied.

173.   Denied.

174.   Denied.

175.   Denied.

176.   Denied.

177.   Denied.

178.   Denied.

179.   Denied.

## TWELFTH CLAIM FOR RELIEF
### (Pre-Judgment Attachment—Defendants)

180.    The Defendants reassert and incorporate by reference the answers in
the previous paragraphs as if fully set forth.

181.    Denied.

182.    Denied.

183.    Admitted to the extent that assets of PCCS have been delivered.

184.    Denied.

185.    Denied.

## COUNTERCLAIMS

**NOW COME** Defendants/Counterclaim Plaintiffs Port City Contracting
Services, Inc., and Robert P. Sharpe, complaining of the Plaintiffs/Counterclaim
Defendants as follows:

## FACTS

1.    As of the filing of the Complaint, PCCS was a Service-Disabled Veteran
Owned Business ("SDVOB") within the meaning of a program offered by the United
States.    As a SDVOB, PCCS received preferential treatment in government
contracting and procurement processes.

2.    Sharpe is a service-disabled veteran by reason of post-traumatic stress
disorder ("PTSD") caused by his military service.

3.    To qualify as a SDVOB, a business must be majority owned and
controlled by one or more service-disabled veterans.

4.     As Chief Financial Officer, Spark was responsible for keeping the books of PCCS, ensuring that payments to creditors were timely made, ensuring payroll was properly administered, and ensuring that officers and employees were compensated as agreed by the officers of PCCS. Spark is not a service-disabled veteran.

5.     As Chief Operating Officer and President of PCCS, Eastham was responsible for day-to-day operations, including tasks he specifically agreed to oversee or handle directly. Eastham is not a service-disabled veteran.

6.     In December of 2020, Eastham, Spark, and Sharpe agreed to recognize the taxable value of new equity shares issued to them that month. For accounting and tax purposes, Spark recorded those equity values as "Manual Check" entries in the company's ledgers for amounts corresponding to those assigned as values to each shareholder's newly issued stock as follows:

a.   Sharpe, no new shares issued;

b.   Eastham, 1,204 shares issued at a value per share of $15.19 for a total book value of $18,280.04;

c.   Spark, 1,916 shares issued at a value per share of $15.19 for a total book value of $29,100;

d.   Jay Graves, 1,405 shares issued at a value per share of $15.19 for a total book value of $21,340;

e.   Ryan Albert, 1,150 shares issued at a value per share of $15.19 for a total book value of $17,460.

-22-

7.    The shareholders had agreed that issued stock would compensate them for any invested work they had performed during the company's formative period, when it was unable to hire employees.

8.    On December 31, 2020, Spark made manual check entries in all the above-cited amounts but also made an actual payment to Eastham in the amount of $21,940.17, which he categorized as "Misc. pay."

9.    The Plaintiffs knew at all times that a threshold requirement for a business to qualify as a SDVOB by the United States Department of Veterans Affairs is that a service-disabled veteran must maintain not only equitable majority ownership but control over the company.

10.   The Plaintiffs knew at all times that one measure of "control" used by the United States is whether a service-disabled veteran owner is the highest compensated employee in the company.

11.   By Spark giving, and Eastham receiving, a payment of $21,940.17 without Sharpe's knowledge, they increased Eastham's income for 2020 above Sharpe's income in violation of SDVOB regulations.

12.   PCCS, therefore, was presumptively disqualified to do business as a SDVOB, which is its predominant business function. The surreptitious payment opens PCCS to liability to the United States and may disqualify it from receiving contracts as a SDVOB.

13.     Whether or not the payment was legitimate, Spark and Eastham had a duty to inform the company that Sharpe's compensation for 2020 must be increased to ensure compliance with SDVOB regulations, but they did not do so.

14.     The Defendants are informed and believe, and therefore allege, that the Plaintiffs conspired to use their positions of trust and confidence as officers of PCCS to cause it to issue unauthorized payment to Eastham and damage PCCS.

15.     Their misapplication of PCCS funds on December 31, 2020, and omission to PCCS also was designed to ensure Sharpe would not easily discover the payment because, as the Plaintiffs well knew, PCCS would use a different payroll processing company beginning January 1, 2021.  PCCS's pre-2021 payroll records would become inaccessible to Sharpe without elevated efforts he would only take if provoked by suspicion that his trusted partners in charge of the books, records, and operations of the company had misapplied company funds and/or failed to disclose the federal regulatory violation it caused.

16.     Sharpe did not have reason to suspect wrongdoing on the part of the Plaintiffs until winter of 2021.

17.     Sharpe, who had delegated the routine financial and taxation aspects of PCCS to Spark, did not inspect financial records pertaining to individual employee payments unless prompted by Spark or some other circumstance requiring his attention as CEO.

18.     In or about December of 2021, Sharpe reviewed internal corporate communications and discovered Eastham and Spark had been operating against him

in many respects, and against the interests of PCCS. He made it clear to both of them that their conduct was unacceptable and then terminated them as employees on December 14, 2021.

19.     Spark contacted PCCS's telecommunications service provider, Verizon, and transferred business lines and payment plans for company property to himself on the day of his termination.

20.     Spark had been issued two phones, two iPad tablets, and a laptop, all of which were owned by PCCS under payment plans with Verizon.   After his termination, Spark kept the company's property.

21.     Data constituting business opportunities, plans, and contacts developed by Eastham, Spark, and Sharpe concerning PCCS's entry into pharmaceutical distribution was stored on those devices. The data did not exist on any other PCCS-owned devices or storage services under its control once Spark converted PCCS's equipment.

22.     Spark's conversion of the devices to his own use, and to the exclusion of PCCS's ownership rights, thus also constituted misappropriation of PCCS's proprietary information.

23.     A SDVOB must periodically apply for re-certification of its status, which PCCS was required to do in May of 2022.

24.     A threshold requirement for recertification is the execution of a form by each owner of the SDVOB affirming his or her ownership interest and status as a

service-disabled veteran or not.  The SDVOB cannot submit an application to the United States for recertification without the required signatures.

25.     The United States' requirement that each equity owner in a business that intends to operate as a SDVOB execute an affirmation of the type required by the United States creates a special relationship of trust and confidence between all shareholders and between each shareholder and the company.  Where any owner could cripple the company's ability to function as intended by all shareholders by refusing to execute a statement accurately reflecting his or her ownership interest in that company, the shareholders and the company have entrusted each other with exercising duties of good faith, fair dealing, and loyalty, and thus created fiduciary relationships among them.

26.     Additionally, consistent with the principle that fiduciary relationships may be created by contract, the relationships between shareholders and the company are contractual in nature.  A party to a contract has a duty to exercise any discretion in performance of that contract with good faith.

27.     The Defendants asked Spark and Eastham to execute accurate affirmations of their ownership interests in PCCS in the form required by the United States in May and June of 2022, but acting in concert they refused.

28.     By refusing to execute VA Form 877 accurately showing the existing shareholder interests in PCCS, the Plaintiffs breached their fiduciary obligations to other shareholders and PCCS.

29.     The Plaintiffs' refusal to execute VA Form 877 accurately showing the existing shareholder interests in PCCS was in bad faith and therefore breached their contractual duties.

30.     As a result of the Plaintiffs' breaches of duty, PCCS lost its certification as a SDVOB, which was a lucrative line of business for the company.

31.     Although the December 31, 2021, payment to Eastham created a presumption that PCCS was disqualified from recertification, the United States provides grounds for qualification even when the service-disabled veteran is not the highest compensated employee.  The Plaintiffs' refusal to execute VA Form 877 prevented PCCS from obtaining recertification under an exception despite the effect of the payment to Eastham.

32.     The Defendants are informed and believe, and therefore allege, that evidence of breach of fiduciary and contractual duties on the part of employees and officers in making and accepting the payment would permit PCCS to qualify as a SDVOB.

33.     The Plaintiffs' refusal to execute Form 877, however, constitutes a willful and intentional breach of their duties to other shareholders and PCCS.

34.     As set forth herein, the Plaintiffs agreed to do unlawful acts or to perform lawful acts unlawfully, which caused injury to PCCS and Sharpe; therefore, by virtue of their civil conspiracy, the Plaintiffs are jointly and severally liable.

## FIRST COUNTERCLAIM
(Breach of Fiduciary Duties)

35.     The Defendants reassert and incorporate by reference the allegations in the previous paragraphs as if fully set forth.

36.     As corporate officers, Eastham and Spark were *de jure* fiduciaries of PCCS.

37.     Additionally, Eastham and Spark owed fiduciary duties to PCCS and the other shareholders due to their special relationship of trust and confidence.

38.     Because of the unique requirements established by the United States for SDVOBs, such a company, here PCCS, and its shareholders necessarily trusted each other to take the steps necessary to ensure the company's continued qualification to do business as a SDVOB. Without such a special relationship, the promise of continued operation as a SDVOB would be illusory; therefore, the shareholders and PCCS were in a *de facto* fiduciary relationship.

39.     The December 31, 2020, payment to Eastham caused PCCS to violate the terms of the SDVOB Program and therefore was at the time taken known or should have been known or believed by the Plaintiffs to be clearly in conflict with the best interests of the corporation.

40.     Making and accepting that payment breached the Plaintiffs' fiduciary duties to PCCS.

41.     The Plaintiffs also were asked to execute a truthful statement of their ownership interests in PCCS, which they refused to do, knowing that refusal was contrary to the interests of PCCS.

42.    Filing that statement, VA Form 877, was a prerequisite for PCCS to be re-certified as a SDVOB and was a required element of its application.

43.    Without a fully executed Form 877, PCCS could not apply to continue doing business as a SDVOB.

44.    Were PCCS able to apply, it would have sought, and likely received, certification despite the misapplication of funds that presumptively disqualified it.

45.    The Plaintiffs' breach of fiduciary duties to PCCS and Sharpe, who as a shareholder was owed *de facto* fiduciary duties set forth herein, caused PCCS to lose millions of dollars in government contracts that it would have been awarded as part of its ongoing business relationships with government agencies, and Sharpe lost employment income from the company's resulting failure.

46.    As a direct and proximate result of the Plaintiffs' breach of fiduciary duties, PCCS and Sharpe have suffered direct and consequential damages in an amount exceeding twenty-five thousand dollars ($25,000).

47.    The Plaintiffs' breach of fiduciary duties was willful and wanton and in reckless disregard of the rights of PCCS and Sharpe, warranting punitive damages in an amount to be determined by the jury.

## SECOND COUNTERCLAIM
(Breach of Contract)

48.    The Defendants reassert and incorporate by reference the allegations in the previous paragraphs as if fully set forth.

49.    Sharpe, PCCS, and the Plaintiffs were in a contractual relationship.

50.     The Plaintiffs owed a duty to Sharpe and PCCS as a shareholder to act in good faith when exercising discretion in their performance of the contract.

51.     The Plaintiffs' refusal to execute Form 877 was in bad faith in a willful effort to further injure Sharpe and PCCS.

52.     The Plaintiffs' breach of contract caused PCCS to lose millions of dollars in government contracts that it would have been awarded as part of its ongoing business relationships with government agencies.

53.     The Plaintiffs' breach of contract caused Sharpe to lose his investment in the company and employment income.

54.     Sharpe therefore suffered injury separate and distinct from the injuries sustained by PCCS.

55.     As a direct and proximate result of the Plaintiffs' breach of contract, PCCS and Sharpe have suffered direct and consequential damages in an amount exceeding twenty-five thousand dollars ($25,000).

<div align="center">

### THIRD COUNTERCLAIM
(Conversion—Spark)

</div>

56.     The Defendants reassert and incorporate by reference the allegations in the previous paragraphs as if fully set forth.

57.     On the day of his termination from PCCS, Spark without authorization changed the account information on hardware owned by PCCS and did not return the property to PCCS.

58.     Spark has exercised ownership of the property belonging to PCCS.

59.    Subject to its payment obligations, PCCS owned the phones, tablets and computer on which its irreplaceable and proprietary data was stored.

60.    The Defendants are informed and believe, and therefore allege, that Spark exercised a right of ownership over PCCS's property to deprive PCCS of the data contained therein and to further injure its business.

61.    As a direct and proximate result of Spark's conversion, PCCS has suffered direct and consequential damages in an amount exceeding twenty-five thousand dollars ($25,000).

## FOURTH COUNTERCLAIM
(*In the Alternative*—Unjust Enrichment)

62.    The Defendants reassert and incorporate by reference the allegations in the previous paragraphs as if fully set forth.

63.    Eastham was enriched by his receipt of funds from PCCS that were not earned or owed.

64.    Spark was unjustly enriched by his retention of PCCS property, including its valuable and proprietary data.

65.    PCCS did not confer such benefits on the Plaintiffs officiously or without expectation of compensation. Their enrichment was unjust under the circumstances.

66.    As a direct and proximate result of the Plaintiffs' breach of fiduciary duties, PCCS has suffered direct and consequential damages in an amount exceeding twenty-five thousand dollars ($25,000).

WHERFORE, the Defendants pray as follows:

1.    That the Plaintiffs have and recover nothing of these Defendants;

2.    That PCCS has and recovers compensatory and consequential damages from the Plaintiffs, jointly and severally, in an amount exceeding twenty-five thousand dollars ($25,000);

3.    That Sharpe has and recovers compensatory and consequential damages from the Plaintiffs, jointly and severally, in an amount exceeding twenty-five thousand dollars ($25,000);

4.    That in the alternative to damages, PCCS receive restitution from the Defendants;

5.    That the Defendants have and recover from the Plaintiffs, jointly and severally, punitive damages in an amount to be determined by the jury;

6.    That the Defendants be awarded attorney's fees, jointly and severally, as provided by law;

7.    That costs be taxed against the Plaintiffs, jointly and severally; and

8.    For trial by jury on all issues so triable.

-32-

Respectfully submitted this the 22nd day of July 2022.

REISS & NUTT, PLLC
*Attorneys for Defendants*

By:

W. Cory Reiss
N.C. State Bar No. 41549
Email: wcreiss@reissnutt.com
Kyle J. Nutt
N.C. State Bar No. 43469
Email: kjnutt@reissnutt.com
1221 Floral Parkway, Suite 104
Wilmington, NC 28403
Telephone: (910) 420-4674
Facsimile: (910) 420-4637

-33-

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that the foregoing document was duly served on the following persons, pursuant to Rule 5 of the North Carolina Rules of Civil Procedure by depositing the same in a postage-paid, properly addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service:

Thomas Babel
Davis Hartman Wright, LLP
P.O. Box 11320 (28404)
Wilmington, NC 28403
Fax: (910) 756-4080
tsb@dwlegal.com
*Attorneys for Plaintiffs*

This the 22nd day of July 2022.

REISS & NUTT, PLLC
*Attorneys for Defendants*

By:

W. Cory Reiss



STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

MARK EASTHAM
and PETER SPARK
        Plaintiffs

v.

PORT CITY CONTRACTING
SERVICES, INC., ROBERT P.
SHARPE, STONE BAY TACTICAL,
LLC, and SRS SUPPLY, LLC
        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.: 22-CVS-001507

FIRST AMENDED VEIFIED COMPLAINT
AND MOTION FOR PRELIMINATY
INJUNCTION, AND PRE-JUDGMENT
ATTACHMENT

NOW COMES, Plaintiffs, Mark Eastham("Eastham") and Peter Spark ("Spark"), by and through the undersigned counsel, pursuant to Rule 15 of the North Carolina Rules of Civil Procedure, and complaining of Defendants Port City Contracting Services, Inc. ("Defendant PCCS"), Robert P. Sharpe ("Sharpe"), Stone Bay Tactical, LLC ("Stone Bay"), and SRS Supply, LLC ("SRS Supply") state, aver, and allege as follows:

## PARTIES

1. Plaintiff Mark Eastham is an adult individual and citizen and resident of Minnesota.

2. Plaintiff Peter Spark is an individual and is a citizen and resident of New Hanover County, North Carolina.

3. Defendant PCCS is a North Carolina corporation with its registered agent and principal place of business and offices in New Hanover County, North Carolina.

4. Sharpe was the Chief Executive Officer of Defendant PCCS and is a citizen and resident of New Hanover County, North Carolina. Sharpe is a veteran and, as admitted by Sharpe, has struggled with PTSD and depression related to his military service.

5.  Defendant Stone Bay is a North Carolina limited liability company with its registered agent and principal place of business and offices in New Hanover County, North Carolina.

6.  Defendant SRS Supply is a North Carolina limited liability company with its registered agent and principal place of business and offices in New Hanover County, North Carolina.

7.  PCCS, Stone Bay, and SRS have the same principal place of business and office. PCCS and Stone Bay have the same registered agent.

## JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction over this action pursuant to N.C. Gen. Stat. §7A-243, N.C. Gen. Stat. §55-7-40, and other applicable bases for jurisdiction.

9.  This Court has personal jurisdiction over the Defendants pursuant to N.C. Gen. Stat. §1-75.4 and other applicable bases for jurisdiction.

10. Venue is proper in this Court pursuant to N.C. Gen. Stat. §§1-79, 1-82, N.C. Gen. Stat. §55-7-42, and §55-14-31, and other applicable bases for venue.

## FACTS

11. Defendant PCCS is in the business of supplying diabetes testing strips and whose primary customer is the United States Department of Veterans Association.

12. Plaintiffs are shareholders and former officers of Defendant PCCS. Together, the Plaintiffs are the owners of 40% of Class B shares of Defendant PCCS.  Eastham owns 25% of Class B shares and Spark owns 15% of Class B shares of Defendant PCCS.

13. Defendant Sharpe is a shareholder of Defendant PCCS and is the owner of 100% of Class A shares of Defendant PCCS, and the owner of approximately 40% of Class B shares of Defendant PCCS.

14. Pursuant to the Shareholder Agreement of Defendant PCCS only Class A shareholders have the right to vote during shareholder meetings, and effectively hold all the power to run Defendant PCCS.

15. Defendant Sharpe is the majority owner of shares of Defendant PCCS, and as such owes a fiduciary duty to the minority shareholders of Defendant PCCS, which includes Plaintiffs.

16. Defendant PCCS was originally formed on February 5, 2019, as a North Carolina limited liability company.

17. Defendant PCCS was converted from a limited liability company to a North Carolina corporation on June 30, 2020.

18. From approximately October 1, 2019 to early January 2021, Plaintiff Eastham was an employee of Defendant PCCS ("Eastham Initial Employment").

19. From approximately August 1, 2019 to December 14, 2021, Spark was an employee of Defendant PCCS.

20. As of the end of Eastham's Initial Employment, Eastham owned 3,194 shares of Defendant PCCS.

21. On June 7, 2021, Eastham and Defendant PCCS entered a Stock Redemption and Release Agreement ("Release Agreement"). A copy of the Release Agreement is attached hereto as Exhibit A and incorporated herein by reference.

22. Pursuant to the terms of the Release Agreement, Defendant PCCS was to pay Eastham $60,000 for the Class B shares he owned in Defendant PCCS.

23. As of the date of this Complaint, Defendant PCCS has paid nothing to Eastham pursuant to the Release Agreement.

24. Later in 2021, Eastham was retained again as an employee of Defendant PCCS, until his employment was terminated on or about December 14, 2021 ("Eastham's Second Employment").

25. Throughout Eastham's employments with Defendant PCCS, Eastham served as Chief Operating Office and President.

26. Throughout Spark's employment with Defendant PCCS, Spark served as Chief Financial Officer and Secretary of the Board of Directors.

27. Because Defendant PCCS was a startup company, it could not afford to pay the agreed upon salaries of key employees until its revenues grew.

28. As a result, certain key employees, including Plaintiffs Eastham and Spark, agreed to defer receipt of their full wages until Defendant PCCS had sufficient financial means to pay their deferred compensation.

29. As of the date of this Complaint, Eastham is owed $72,500.00 in deferred compensation.

30. As of the date of this Complaint, Spark is owed $92,500.00 in deferred compensation.

31. Plaintiff's deferred compensation, along with other key employees, were noted and reflected in Defendant PCCS's corporate and financial records.

32. Defendant PCCS experienced significant revenue and profit growth in 2020 and 2021.

33. On or about December 10, 2021, Defendant PCCS held a meeting with most of its key employees ("December Meeting").

34. At the time of the December Meeting, Eastham and Spark were two of three Directors for Defendant PCCS and members of its compensation committee.

35. At the December Meeting, Sharpe announced that he was unilaterally giving himself a significant increase in salary and an annual $100,000.00 bonus. The actions of Sharpe were to his benefit and to the detriment of the other employees and the other shareholders of Defendant PCCS.

36. Sharpe also used Defendant PCCS funds to purchase a car for his own personal use, which he contended would be part of his compensation, over the objection of the other key employees and members of the compensation committee.

37. At the time of the December Meeting, Defendant PCCS owed approximately $357,500 in deferred wages to Defendant PCCS's key employees.

38. Eastham and Spark both objected to Sharpe's plan to dramatically increase his pay and to issue himself a bonus, given that Defendant PCCS had promised to pay the deferred compensation to key employees when it was financially able.

39. Furthermore, because Sharpe held voting control of Defendant PCCS, the $100,000 bonus Sharpe paid himself could also be deemed to be an improper distribution to him as a shareholder of Defendant PCCS.

40. Eastham and Spark informed Sharpe that Defendant PCCS needed to pay the deferred compensation as it had promised its key employees.

41. Following the December Meeting, and on the same day, Eastham, on behalf of the other minority shareholders, sent an email to Sharpe stating that the deferred compensation should be paid before Defendant PCCS paid additional salary and bonuses to Sharpe. A copy of the December 10, 2021 email is attached hereto and incorporated herein as Exhibit B.

42. On or about December 14, 2021, Defendant Sharpe informed both Eastham and Spark that they were being terminated from employment and removed as officers and directors of Defendant PCCS.

43. Upon information and belief, both Eastham and Spark were terminated only in retaliation because they demanded that Defendant PCCS pay the deferred compensation and objected to Sharpe paying himself.

44. Following Eastham's termination, Sharpe threatened that, if Eastham took action against Defendant PCCS, then Sharpe would "file a criminal complaint" that "will be federal" against Eastham.

45. Following Spark's, who is a UK national, termination, Sharpe threatened to have him deported.

46. Sharpe also attempted to have Spark arrested for stealing Defendant PCCS property. After investigating the complaint, the local authorities decided that there was no support for any criminal actions against Spark and dropped the matter. Upon information and belief, the actions of Sharpe were in furtherance of his desire and threat to have Spark deported.

47. Defendant PCCS never paid either Eastham or Spark their deferred compensation after their termination.

48. On February 4, 2022, by and through counsel, Eastham and Spark made written demand on Defendants PCCS and Sharpe. A copy of the February 4, 2022 letter is attached hereto and incorporated herein as Exhibit C.

49. Neither Defendants PCCS nor Sharpe responded to Exhibit C and as of the date of this Complaint have not paid the earned and owed deferred compensation.

50. On February 28, 2022, by and through counsel, Eastham made a written demand on Defendant PCCS pursuant to N.C. Gen. Stat. §55-16-02 for the inspection of corporate records. A copy of the February 28, 2022 letter is attached hereto and incorporated herein as Exhibit D.

51. Defendant PCCS did not respond to the February 28, 2022 letter.

52. Sharpe exercises complete control over Defendant PCCS as its only voting shareholder.

53. In addition, Sharpe ignores corporate formalities by unilaterally acting without Board of Director approval or consideration.

54. Defendant Sharpe ignores the requirements of Defendant PCCS's By-laws by not calling or conducting meetings, obtaining corporate consent for actions and other matters to be shown at trial.

55. In short, Sharpe ignores the corporate formalities of Defendant PCCS, instead using Defendant PCCS's assets as if they were his personal property.

56. Sharpe further uses Defendant PCCS's assets as if they were his own, including using Defendant PCCS's assets for the use by other entities Sharpe has an interest in, without any compensation to Defendant PCCS.

57. Sharpe used funds of Defendant PCCS to capitalize and purchase inventory for Stone Bay Tactical.

58. Upon information and belief, Sharpe is the majority member and manager of Stone Bay Tactical. Stone Bay Tactical is a licensed gun dealer and was formed to sell weapons to veterans.

59. For instance, in January 2022, Sharpe traveled to Las Vegas for an industry show related to his other business, Stone Bay Tactical. During the visit, Sharpe spent over $20,000.00 on personal items and used Defendant PCCS funds to pay the bill.

60. Sharpe also used the warehouse owned by Defendant PCCS, which is located at 2017 Corporate Drive, Unit 4, Wilmington, NC 28405, to store inventory and other materials of Stone Bay Tactical and used the employees of Defendant PCCS to do work for Stone Bay Tactical. In fact, all the "employees" of Stone Bay Tactical are technically employees of Defendant PCCS and are paid by PCCS.

61. Sharpe also used PCCS funds to capitalize SRS Supply.

62. Upon information and belief, Sharpe is the majority member and manager of Stone Bay Tactical.

63. Sharpe also used Defendant PCCS' warehouse, which is located at 2017 Corporate Drive, Unit 4, Wilmington, NC 28405, to store inventory and other materials of SRS Supply. Sharpe is the majority member and manager of SRS Supply.

64. Sharpe used the employees of Defendant PCCS to work for SRS Supply. In fact, all of the "employees" of SRS are technically employees of Defendant PCCS and are paid by PCCS.

65. Defendant PCCS was not compensated or provided reasonably equivalent value in exchange for the use of its assets by Stone Bay Tactical or SRS Supply.

66. Sharpe, Stone Bay Tactical, and SRS Supply have converted the assets of Defendant PCCS.

67. The actions of Sharpe, Stone Bay Tactical, and SRS Supply was an attempt to defraud the creditors of PCCS and/or Sharpe.

68. Sometime in March 2022, Sharpe left the United States and traveled to the Ukraine.

69. It was the intent of Sharpe to sell body army to the Ukrainian government.

70. Ultimately, Sharpe decided to fight for the Ukrainian military in their defense of the invasion of the Ukraine by Russia.

71. Sharpe used the funds of Defendant PCCS to pay for his travel and other costs while in the Ukraine.

72. Upon information and belief, Sharpe used additional funds of Defendant PCCS to purchase food and other goods for the residents of the Ukraine.

73. When Sharpe was in the Ukraine, he also used funds of Defendant PCCS to purchase weapons and other military supplies that he intended to sell or give to the Ukrainian military.

74. Upon information and belief, the weapons that Sharpe purchased with Defendant PCCS funds are currently being stored in a warehouse owned or leased by Defendant PCCS.

75. The weapons purchased by Sharpe with Defendant PCCS funds have no relationship to the business of Defendant PCCS.

76. Upon information and belief, Sharpe has used in excess of $100,000.00 of Defendant PCCS's funds for his personal efforts in the Ukraine.

77. The actions of Sharpe constitute conversion or embezzlement of Defendant PCCS assets.

78. On or about March 20, 2022, Sharpe sent an email to a number of third parties. In this March 20, 2022 email, Sharpe defamed the reputation of both Eastham and Spark publishing that they had "defrauded the company." He also published that one or both were guilty of "embezzlement." A copy of the March 20, 2022 email is attached hereto as Exhibit E and is incorporated by reference.

79. Sharpe has told third parties that he will do everything in his power to prevent Eastham or Spark from being paid the deferred compensation that they are owed, the amounts owed under the Release Agreement or realizing the value of their shares in Defendant PCCS.

80. Upon information and belief, Sharpe has continued to defame and slander both Eastham and Spark since their termination and will continue to do so without Court intervention.

81. In the March 20, 2022 email, Sharpe also resigned as the CEO of Defendant PCCS to focus his efforts on the war in the Ukraine.

82. Despite his written recognition as the CEO of Defendant PCCS, Sharpe continued to be a signatory on the bank accounts for the company and continued to control debits and withdraw from the company bank account.

83. In addition, since Sharpe's departure from Defendant PCCS, the business of Defendant PCCS has declined. Sharpe has spent zero time conducting the affairs of the company and has terminated many of the remaining key employees.

84. Upon information and belief, while in the Ukraine Sharpe an emotional breakdown and published on social media that he was suicidal. Sharpe also published on social media that he was having suicidal thoughts.

85. Sharpe has returned from the Ukraine. However, upon his return there were little to no individuals that worked at Defendant PCCS. To date, there is little to no supervision of Sharpe's activities as they relate to Defendant PCCS.

86. Upon information and belief, Sharpe either has or intends to put his wife in charge of Defendant PCCS because of his PTSD and depression issues.

87. On May 4, 2022, Plaintiffs, through counsel, sent PCCS a demand letter pursuant to N.C. Gen. Stat. §55-7-42 wherein Plaintiffs demanded that PCCS investigate and bring claims against Sharpe. A copy of the letter is attached hereto and incorporated herein as Exhibit F.

88. On May 17, 2022, PCCS, through counsel, responded to Plaintiffs' demand letter and refused to investigate or bring claims against Sharpe.

89. Since the filing of this action, Sharpe has conveyed shares in PCCS in attempt to dilute the interests of Plaintiffs.

90. At this time, Plaintiffs have no records or other information concerning the activities of Defendant PCCS, and Sharpe, and have no understanding of the current financial condition of Defendant PCCS or the current location of the assets of Defendant PCCS. Plaintiffs believe that Sharpe is continuing to use his power over Defendant PCCS

to use the assets for his own personal use and if action to stop Sharpe is not taken
immediately, they will be irreparably harmed.

## FIRST CLAIM FOR RELIEF
### (Breach of Fiduciary Duty-Sharpe)

91. Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1
through No. 90 as restated herein.

92. Sharpe is the majority shareholder of Defendant PCCS.

93. Plaintiffs are minority shareholders of Defendant PCCS.

94. Sharpe is the only shareholder that has voting rights and effectively controls
Defendant PCCS.

95. As majority shareholder, Sharpe owes a fiduciary duty to Plaintiffs as minority
shareholders.

96. The fiduciary duty owed to Plaintiffs by Sharpe includes, among other things, that
he will not use his power as the majority shareholder for his benefit and at the determent
of Plaintiffs.

97. Sharpe has breached his fiduciary duty by using the funds and assets of Defendant
PCCS for his own personal use and gain which is to the determent to not only Defendant
PCCS but, more importantly, Plaintiffs.

98. As a direct and proximate result of the actions of Defendant Sharpe, Plaintiffs have
been damaged in an amount in excess of Twenty-Five Thousand and No/100 Dollars
($25,000.00).

**SECOND CLAIM FOR RELIEF**
**(Constructive Fraud-Sharpe)**

99. Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1
through No. 98 as restated herein.

100. Sharpe, as majority shareholder of Defendant PCCS, owed a fiduciary duty to
Plaintiffs.

101. Sharpe breached his fiduciary duty by, among other things, taking actions as
majority shareholder that only benefited himself personally and to the determent of
Plaintiffs.

102. Sharpe personally benefited by his acts and the breach of his fiduciary duty owed
to Plaintiffs.

103. As a direct and proximate result of the actions of Sharpe, Plaintiffs have been
damaged in an amount in excess of Twenty-Five Thousand and No/100 Dollars
($25,000.00).

**THIRD CLAIM FOR RELIEF**
**(Production of Corporate Records-PCCS)**

104. Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1
through No. 103 as restated herein.

105. Plaintiffs are shareholders of Defendant PCCS.

106. Pursuant to N.C. Gen. Stat. §55-16-02, Plaintiffs made written demand on
Defendant PCCS for the inspection of corporate records as more fully set forth in Exhibit
D.

107. As of the date of this Complaint, Defendant PCCS has not responded to the written request for the inspection of corporate records or has produced the records requested.

108. As shareholders of Defendant PCCS, Plaintiffs are entitled to an order directing Defendant PCCS to permit the inspection and copying of each document requested in Exhibit D, that Defendant PCCS pay all costs associated therewith, and that Defendant PCCS pay Plaintiff's reasonable attorney's fees incurred in seeking the Court's involvement, pursuant to NC Gen. Stat. §55-16-04.

## FOURTH CLAIM FOR RELIEF
### (Dissolution and Appointment of a Receiver-PCCS)

109. Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 108 as restated herein.

110. Plaintiffs are shareholders of Defendant PCCS.

111. The assets of Defendant PCCS are currently being liquidated, wasted, and used by Sharpe for his own personal gain.

112. The assets of Defendant PCCS are being misapplied and wasted by Sharpe.

113. Plaintiffs have no power or control over Defendant PCCS and the actions of Sharpe.

114. Dissolution and liquidation of Defendant PCCS is necessary for the protection of the rights and interests of Plaintiffs.

115. Dissolution of Defendant PCCS is required pursuant to N.C. Gen. Stat. §55-14-30.

116. Pursuant to N.C. Gen. Stat. §§ 55-14-31 and 55-14-32, a receiver should be appointed to manage Defendant PCCS, conduct an accounting of the operations, past and

present, of Defendant PCCS, to marshal the assets of Defendant PCCS, and to wind up and liquidate Defendant PCCS.

117.  As a direct and proximate result of the actions of Defendant Sharpe, Plaintiffs are entitled to an order dissolving Defendant PCCS and for an appointment of a receiver that: (a) will conduct the affairs of Defendant PCCS; (b) will conduct an accounting of Defendant PCCS; (c) will marshal and liquidate the assets of Defendant PCCS, and (d) will distribute the proceeds of the liquidation of Defendant PCCS to Plaintiffs.

## FIFTH CLAIM FOR RELIEF
### (Preliminary Restraining Order-Defendants)

118.  Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 117 as restated herein.

119.  As set forth herein, Defendants, and specifically Sharpe, have used and moved assets of Defendant PCCS for Sharpe's own personal use or for use by other entities owned and control by Sharpe.

120.  For instance, Sharpe has withdrawn amounts from Defendant PCCS' bank accounts to pay for travel, food and other necessities for his own personal use, and has purchased weapons that have no use or relationship to Defendant PCCS' business.

121.  Upon information and belief, Defendants will continue to use and convert Defendant PCCS' assets for their Sharpe's own personal use and will further harm and prevent Plaintiffs' from witnessing the value of their shares in Defendant PCCS.

122.  Upon information and belief, Sharpe's struggles with PTSD and depression inhibit his ability to run Defendant PCCS effectively and to the benefit of the shareholders and to make proper decisions on behalf of the Defendant PCCS.

123. Unless a temporary and preliminary injunction is entered in this matter preventing Defendants from using Defendant PCCS' assets for Sharpe's personal use, Plaintiffs will be irreparably harmed and will have no remedy under the law.

124. As set forth herein, Sharpe has continued to defame and slander the reputation of Plaintiffs. Upon information and belief, Sharpe will continue to defame and slander Eastham and Spark unless there is Court intervention to prohibit him from such damaging conduct.

125. The equities weigh in favor of Plaintiffs as to the entry of a temporary and preliminary injunction and the entry of such would maintain the status quo.

126. As a direct and proximate result of the actions of Defendants, Plaintiffs are entitled to a temporary and preliminary injunction wherein: (1) the bank accounts of Defendant PCCS will be frozen and Sharpe will not have access to any account of Defendant PCCS; (2) the other physical assets of Defendant PCCS will be frozen and will not be disposed of, other than for ordinary business reasons; (3) Sharpe will not have access or control over any asset of Defendant PCCS; (4) any weapons or other products or goods purchased by Sharpe that are not related to the business of Defendant PCCS will be held in an agreed upon location and will not be sold or moved until so ordered by the Court; and (5) Sharpe will be prohibited from publishing defamatory statements about Eastham or Spark.

## SIXTH CLAIM FOR RELIEF
### (Breach of Contract-Sharpe)

127. Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 127 as restated herein.

128. Plaintiffs Eastham & Spark were parties to an oral employment agreement with Defendant PCCS.

129. Defendant PCCS agreed to pay Plaintiffs Eastham & Spark an annual salary.

130. Plaintiffs Eastham and Spark and Defendant PCCS further agreed that monthly wages would be deferred until such time as Defendant PCCS could afford to pay Plaintiffs Eastham and Spark.

131. The parties' agreement as to deferred compensation was documented in Defendant PCCS' compensation committee meeting minutes and notes.

132. As of the date of this Complaint, Eastham is owed $72,500.00 in deferred compensation.

133. As of the date of this Complaint, Spark is owed $92,500.00 in deferred compensation.

134. At the time of Eastham's and Spark's termination, Defendant PCCS had sufficient financial ability to pay the deferred compensation.

135. Defendant PCCS breached its agreement with Eastham and Spark by failing to pay, as and when due, Eastham's and Spark's deferred compensation.

136. As a direct and proximate result of Defendant PCCS's breach of contract, Eastham has been damaged in the sum certain amount of $72,500.00, plus interest accruing at the legal rate from December 10, 2021, and Spark has been damaged in the sum certain amount of $92,500.00, plus interest accruing at the legal rate from December 10, 2021.

## SEVENTH CLAIM FOR RELIEF
### (Breach of Wage and Hour Act-Defendants)

137. Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 137 as restated herein.

138. Eastham and Spark were to be paid wages by Defendant PCCS for the services provided during their employment with Defendant PCCS.

139. Defendant PCCS requested that Eastham and Spark agree to defer payment of some of their compensation until such time as Defendant PCCS had the financial stability to pay Eastham's and Spark's wages.

140. Between October 2019 and June 2020, Defendant PCCS deferred $72,500.00 in Eastham's wages.

141. Between August 2019 and June 2020, Defendant PCCS deferred $92,500.00 in Spark's wages.

142. Eastham and Spark made written demand that Defendant PCCS pay Plaintiffs' deferred pay in January of 2021.

143. Defendant PCCS refused to pay Eastham's and Spark's deferred compensation.

144. As of December 10, 2021, Defendant PCCS had the financial ability to pay Eastham's and Spark's, as well as other key employee's, deferred compensation, but failed to do so.

145. Since their termination, Eastham and Spark again made written demand for payment of their deferred compensation, as shown in Exhibit C, but to date Defendant PCCS has refused to make such payment.

146. As alleged above, Sharpe exercised complete control over Defendant PCCS's refusal to pay Plaintiffs' deferred compensation and this is exhibited by the following:

    a.  Sharpe unilaterally decided whether to make payments for deferred compensation;

      b.  When challenged regarding deferred pay, Sharpe terminated Eastham's and Spark's employment and removed them from the Board of Directors;

      c.  Instead of paying deferred pay when Defendant PCCS had the necessary funds, Sharpe instead approved a significant increase in his own wages and a $100,000.00 bonus to himself;

147.  The deferred compensation of Eastham and Spark has been earned and is owed by Defendant PCCS.

148.  As a direct and proximate result of the actions of Defendant PCCS and Sharpe, Eastham and Spark have been damaged in an amount of $72,500.00 and $92,500.00, respectfully, plus liquidated damages, interest and reasonable attorneys' fees pursuant to N.C. Gen. Stat. §95-25-22.

## EIGHTH CLAIM FOR RELIEF
### (Defamation-Sharpe)

149.  Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 149 as restated herein.

150.  Eastham and Spark are private citizens.

151.  Sharpe has knowingly made and published to third parties in writing defamatory statements about both Eastham and Spark.

152.  The statements made and published by Sharpe were received by third parties.

153.  The statements made and published by Sharpe constitute defamation *per se*.

154.  The statements made and published by Sharpe were willful and wanton.

155.  As a direct and proximate result of the actions of Sharpe, Eastham and Spark have been damaged in an amount in excess of Twenty-Five Thousand and no/100 Dollars ($25,000.00).

156. As a direct and proximate result of the willful and wanton actions of Sharpe, punitive damages shall be awarded to Eastham and Spark in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF
### (Breach of Stock Redemption and Release Agreement-PCCS)

157. Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 157 as restated herein.

158. The Stock Redemption and Release Agreement is attached hereto as Exhibit A and is incorporated herein by reference.

159. Eastham complied with each of his obligations under the Stock Redemption and Release Agreement.

160. Defendant PCCS breached the Stock Redemption and Release Agreement by failing to make payments as and when due.

161. As a direct and proximate result of Defendant PCCS's breach of the Stock Redemption and Release Agreement, Eastham has been damaged in amount in excess of $25,000.00, specific amounts to be proven at trial.

## TENTH CLAIM FOR RELIEF
### (N.C. Gen. Stat. §55-7-42-Sharpe)

162. Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 162 as restated herein.

163. Plaintiffs are, and were at the time the actions complained of herein, shareholders of PCCS.

164. On May 4, 2022, Plaintiffs made demand on PCCS to investigate the actions of Sharpe and to bring, among other claims, breach of fiduciary duty claims against Sharpe.

165. On May 17, 2022, PCCS responded to Plaintiffs' demands and stated that "claims of Breach of Fiduciary Duty against Mr. Sharpe are unfounded."

166. Pursuant to N.C. §55-7-42, Plaintiffs, as shareholders of PCCS, have standing to bring derivative claims of PCCS against Sharpe for his conversion of PCCS assets both for personal use and for the use by Stone Bay and SRS, his failure to meet his obligations as CEO and as an officer of PCCS, his dereliction of duty as the CEO and as an officer of PCCS, and for taking the other actions set forth herein.

167. Plaintiffs fairly and adequately represent the interests of PCCS in enforcing the rights of PCCS.

168. As a direct and proximate result of Sharpe's breach of his fiduciary duty, PCCS, through the derivative claims of Plaintiffs, have been damaged in amount in excess of $25,000.00, specific amounts to be proven at trial.

169. Pursuant to N.C. Gen. Stat. 5§5-7-46, Plaintiffs reasonable expenses, including attorneys' fees, should be awarded to Plaintiffs because the derivative claims brought herein, substantially benefit the corporation.

### ELEVENTH CLAIM FOR RELIEF
### (Fraudulent Transfer-Defendants)

170. Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 170 as restated herein.

171. Plaintiffs are and were creditors of PCCS.

172. PCCS and Sharpe transferred assets of PCCS to Sharpe, Stone Bay, and SRS.

173. PCCS did not receive reasonable equivalent value in exchange for the assets transferred to Sharpe, Stone Bay, and SRS.

174.  Plaintiffs' claims against PCCS, and its obligation to pay PCCS, arose before the transfers were made to Sharpe, Stone Bay, and SRS.

175.  The transfers were made to an insider, were concealed, and were substantially all of PCCS' assets.

176.  As a result of the transfers, PCCS was and is insolvent.

177.  The transfers were intended to hinder, delay, and defraud Plaintiffs.

178.  As a direct and proximate result of the actions of PCCS, the assets transferred to Sharpe, Stone Bay, and SRS shall be voided, the assets shall be returned to PCCS, and an order of attachment shall be entered thereby freezing the assets of PCCS currently held by Sharpe, Stone Bay, and SRS.

179.  Plaintiffs further request the appointment of a receiver to take charge of the assets transferred from PCCS that are currently in the possession of Sharpe, Stone Bay, and SRS.

### TWELVE CLAIM FOR RELIEF
### (Pre-Judgment Attachment-Defendants)

180.  Plaintiffs incorporate the allegations and averments set forth in Paragraph No. 1 through No. 180 as restated herein.

181.  PCCS has transferred assets to Sharpe, Stone Bay, and SRS., including, but not limited to, $120,400.00 of weapons.

182.  The transfer of the assets to Sharpe, Stone Bay, and SRS was intended to defraud Plaintiffs, who are creditors of PCCS.

183.  The assets are currently within the state of North Carolina.

184.  As a direct and proximate result of the actions of PCCS, Plaintiffs shall have an order of attachment pursuant to N.C. Gen. Stat. §1-440, *et seq.*, entered by the Court wherein the assets of Stone Bay and SRS, including but not limited to the $120,400.00 in

weapons, are attached and held to secure the payment of claims of Plaintiffs set forth herein.

185.   As a direct and proximate result of the actions of PCCS, Plaintiffs shall have an order of attachment pursuant to N.C. Gen. Stat. §1-440, *et seq.*, entered by the Court wherein the assets of PCCS that were transferred to Sharpe are attached and held to secure the payment of claims of Plaintiffs set forth herein.

NOW THEREFORE, Plaintiffs pray the Court to enter relief in Plaintiffs' favor, as follows:

1.   An Order, that Defendant PCCS provide each document and/or record requested by Plaintiff in Exhibit D;

2.   In Plaintiff Eastham's favor for Defendant PCCS's breach of contract in the sum certain amount of $72,500.00, plus interest in accordance with applicable law;

3.   In Plaintiff Spark's favor for Defendant PCC's breach of the contract in the sum certain amount of $92,500.00, plus interest in accordance with applicable law;

4.   In Plaintiff Eastham's and Spark's favor against Defendant PCCS and Defendant Sharpe for violation of the North Carolina Wage and Hour Act, in an amount to be shown at trial, together with liquidated damages, interest and attorney's fees;

5.   In Plaintiff Eastham's favor against Defendant PCCS for breach of the Stock Redemption and Release Agreement, in an amount to be shown at trial, plus interest in accordance with applicable law;

6. In Plaintiffs Eastham's and Spark's favor in an amount in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00) for Defendant Sharpe's publication of defamatory statements;

7. In Plaintiffs Eastham's and Spark's favor for punitive damages;

8. That any judgment entered against Defendant PCCS be likewise entered against Defendant Sharpe under the doctrine of piercing the corporate veil;

9. For a Preliminary Injunction be entered wherein: (1) the bank accounts of Defendant PCCS will be frozen and Sharpe will not have access to any account of Defendant PCCS; (2) the other physical assets of Defendant PCCS will be frozen and will not be disposed of, other than for ordinary business reasons; (3) Sharpe will not have access or control over any asset of Defendant PCCS; (4) any weapons or other products or goods purchased by Sharpe that are not related to the business of Defendant PCCS will be held in an agreed upon location and will not be sold or moved until so ordered by the Court; (5) Sharpe is prohibited from publishing defamatory statements about Eastham or Spark.

10. For an Order voiding the transfer of any and all assets of PCCS to Sharpe, Stone Bay, or SRS, for attachment of said assets, and for the appointment of a receiver;

11. For an Order of attachment wherein the assets of Stone Bay and SRS are held for securing the payment of a judgment herein;

12. That the costs of this action be taxed against the Defendants, including reasonable attorneys' fees as provided for by law;

13. That Plaintiffs have a recover pre and post judgment interest, as allowed by law;

14. For trial by jury on all issues so triable; and

15. For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this the 22ⁿᵈ day of June, 2022.

Davis Hartman Wright, LLP
P.O. Box 11320 (28404)
2819 Park Avenue, Suite B
Wilmington, NC 28403
Telephone and Facsimile: (910) 756-4070

By: _____

Thomas S. Babel
N.C. State Bar No. 35004
tsb@dhwlegal.com
*Counsel for Plaintiffs Mark Eastham and Peter Spark*

**VERIFICATION**

NORTH CAROLINA

New Hanover _____ COUNTY


      I, Peter Spark, being first duly sworn, depose and say that I have read the allegations in the First Amended Complaint and Motion for Preliminary Injunction, and Pre-judgement Attachment, and the same are true of my own knowledge, except those matters and statements stated upon information and belief, and as to those matters and statements, I believe them to be true.

      This the 21st day of June, 2022.

_____
          Peter Spark



SWORN TO AND SUBSCRIBED

Before me this the 21st day of June 2022

_____
Notary Public

Carly Ross Foster _____
Printed/typed name of Notary Public

My commission expires: 11/12/2023 _____

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing **FIRST AMENDED VEIFIED COMPLAINT AND MOTION FOR PRELIMINAY INJUNCTION, AND PRE-JUDGMENT ATTACHMENT** by the following means:

☐ By placing a copy, contained in a first-class, postage-paid wrapper, into a depository under the exclusive custody of the United States Postal Service, addressed to the parties as indicated below:

☐ by causing to be delivered to the following party(ies) via telefacsimile to the number indicated below:

☑ by causing to be delivered to the party(ies) via electronic mail to the electronic mail address indicated below:
wcreiss@reissnutt.com

This the 22nd day of June, 2022.

Thomas S. Babel
*Counsel for Defendants Mark Eastham and Peter Spark*

**Exhibit A**

## STOCK REDEMPTION AND RELEASE AGREEMENT

This Stock Redemption and Release Agreement ("Agreement") is dated as of June 7, 2021, and is by and among Port City Contracting Services, Inc., a North Carolina corporation, whose principal place of business is Port City Contracting Services, Inc., 2017 Corporate Drive, Unit 4, Wilmington, North Carolina 28405, and which was formerly Port City Contracting Services, LLC (the "Company") and Mark Eastham, an individual with an address of 261 Wyndham Cir W, New Brighton, MN 55112 ("Eastham"). The Company and Eastham are sometimes referred to herein individually as a "Party" and together as the "Parties."

### RECITALS

**WHEREAS**, Eastham owns 3,194 shares of Class B common stock in the Company (the "Shares");

**WHEREAS**, Eastham has stepped down from his position as President and terminated his employment relationship with the Company, but plans to continue to serve on the Company's Board of Directors and provide consulting services to the Company on an independent contractor basis;

**WHEREAS**, Eastham wishes to sell to the Company, and the Company wishes to purchase and redeem from Eastham, 1,916 of the shares owned by Eastham (the "Shares"), as more fully described and subject to the terms and conditions set forth herein;

**NOW THEREFORE**, in consideration of the premises, and the representations, warranties and mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each Party, the Parties hereto do hereby agree as follows:

### AGREEMENT

1.    **Redemption.** Eastham hereby sells, transfers, and assigns to the Company, and the Company hereby redeems and purchases from Eastham, all of Eastham's right, title, and interest in and to the Shares (the "Redemption"), free and clear of any pledge, lien, charge, security interest, mortgage, claim, or other encumbrance (each, an "Encumbrance").

2.    **Redemption Price. Following receipt of an executed Stock Assignment Separate from Certificate in the form attached hereto as Schedule 1, the Company shall pay to Eastham Sixty thousand and no/100 Dollars ($60,000.00) for the Shares (the "Redemption Price"). The Redemption Price shall be paid as the Company receives payments for the sale of diabetic test strips at a rate of $1 per box sold and for which payment is received. On or before the [5th] of each month, beginning in [July] 2021, the Company shall determine the number of boxes of test strips for which it received payment during the prior month and pay to Eastham an amount equal to $1 per box until the Redemption Price has been paid in full. The Company shall pay such amounts by [check mailed to the address/wire transfer to the bank account] indicated on Schedule 2, or as Eastham may otherwise direct in writing.**

3.    **Effective Date.** The effective date of the Redemption shall be [the date of this Agreement].

**Expiration Date.** The expiration date will be one year from the Effective Date. If the Redemption Price has not been paid in full Eastham will retain the difference of shares not purchased and redeemed by Company. If both parties agree then a new stock redemption and release agreement may be negotiated for the remaining balance from this agreement.

4.    **Further Assurances.** Each Party hereto shall take all further actions and sign and deliver any additional instruments on or after the Closing as a Party hereto deems reasonably necessary to consummate or evidence the transactions contemplated by this Agreement.

5.    **Representations and Warranties.**

(a)    Each Party represents and warrants to the other Party that: (i) such Party has full capacity, power, and authority to enter into this Agreement and the Transaction Documents to which it is a party and to carry out the transactions contemplated under this Agreement and the Transaction Documents to which it is a party; (ii) this Agreement and the Transaction Documents to which it is a party are binding upon such Party and are enforceable against such Party in accordance with their terms; (iii) no consents or approvals are required from any other person or entity for such Party to enter into this Agreement or the Transaction Documents to which it is a party or consummate the transactions contemplated hereby or thereby; and (iv) the execution, delivery and performance by such Party of this Agreement and the other Transaction Documents to which it is a party do not and will not violate any law, rule, regulation, judgment, injunction, order, contract, agreement, or other instrument, arrangement, commitment, obligation, understanding, or restriction of any kind to which such Party is a party.

(b)    Eastham represents and warrants to the Company as follows:

(i)    None of the Shares are pledged, placed in escrow, encumbered, subject to any lien or to any matured, unmatured, or contingent claim.  Except for the rights of the Company under this Agreement, there are no options, agreements, contracts, security interests, or other rights in existence to purchase or acquire the Shares, now or in the future.

(ii)    All of the Shares redeemed by the Company pursuant to this Agreement have been validly issued and are outstanding, fully paid and nonassessable, and are not subject to any liens, restrictions, charges, or other Encumbrances, or to any preemptive rights or rights of first refusal or first offer in favor of any other person.

(iii)    Eastham agrees to waive any and all rights he may have pursuant to the Bylaws or otherwise which concern the purchase and sale of the Shares.

6.    **Survival of Representations and Warranties.**  Each of the Company and Eastham shall be entitled to rely only upon the warranties and representations set forth in this Agreement and all representations, warranties, covenants, and agreements made by the parties in this Agreement shall survive the Closing.   Each of the Company and Eastham expressly warrants and represents that, except for the representations and statements set forth herein, neither Party is relying upon any statement or representation of the other Party to this Agreement or any other person. Each Party is relying on that Party's own judgment and acknowledges that each has been represented and advised by the Party's own attorney in connection with this Agreement.

7.    **Assignment.**  The stock of the Company is not marketable and this Agreement is unique and personal to the Parties hereto.  This Agreement shall not be assigned by any Party without the express prior consent of the other Party, and may be enforced by a suit in equity for specific performance by either of the Parties.

8.    **Entire Agreement.**  This Agreement represents the entire agreement between the Parties with respect to its subject matter and supersedes all prior oral and written representations, agreements, and other communications relating to the subject matter of this Agreement.  This Agreement may be amended, modified, supplemented, superseded, or canceled, and any of the terms, covenants, representations,

warranties, or conditions hereof may be waived, only by a written instrument executed by both of the Parties hereto or, in the case of a waiver, by or on behalf of the Party waiving compliance.

      9.     **Governing Law.**  This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of North Carolina.

      10.     **Binding Effect.**  The rights and duties of the Parties hereunder will inure to the benefit of and be binding upon their respective successors and permitted assigns.

      11.     **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which will be an original and all of which together will constitute one and the same instrument.  Any signature page delivered electronically will be binding to the same extent as an original signature page.

      IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**PORT CITY CONTRACTING SERVICES, INC.**

By: _____    06/07/21
Name:    Robert P. Sharpe
Title:    CEO

_____
**MARK EASTHAM**

**SCHEDULE 1**

**STOCK ASSIGNMENT SEPARATE FROM CERTIFICATE**

FOR VALUE RECEIVED, the undersigned (the "Transferor"), hereby sells, assigns, and transfers unto Port City Contracting Services, Inc., a North Carolina corporation (the "Company") all of such Transferor's right, title, and interest in and to ___100___ shares of Class B common stock of the Company standing in the name of Transferor on the books of the Company and such Transferor does hereby irrevocably constitute and appoint an authorized officer of the Company as his attorney-in-fact to transfer such stock on the books of the Company with full power of substitution in the premises.

Dated: __June 10_____, 2021

_____
Mark Eastham

**SCHEDULE 2**

Wiring Instructions for Bank Account Designated by Eastham for Payments

Account Name:                  Mark Eastham
Bank:
Bank Address (if needed):
ABA#:
Account Name to Credit:
Account Number to Credit:
Account Address (if needed):

# STOCK REDEMPTION AND RELEASE AGREEMENT

**Final Audit Report**                                    2021-06-10

| | |
|---|---|
| Created: | 2021-06-07 |
| By: | Robert Sharpe (robert@pccsmedical.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAXHfmmKANyA3LgEKBUqtsl-kAR_81F__Y |

## "STOCK REDEMPTION AND RELEASE AGREEMENT" History

📄 Document created by Robert Sharpe (robert@pccsmedical.com)
   2021-06-07 - 6:09:58 PM GMT- IP address: 65.184.131.207

📧 Document emailed to Mark Eastham (mark.eastham@pccsmedical.com) for signature
   2021-06-07 - 6:10:51 PM GMT

📧 Email viewed by Mark Eastham (mark.eastham@pccsmedical.com)
   2021-06-08 - 11:00:45 AM GMT- IP address: 174.219.133.30

✍️ Document e-signed by Mark Eastham (mark.eastham@pccsmedical.com)
   Signature Date: 2021-06-10 - 1:11:36 PM GMT - Time Source: server- IP address: 104.48.58.27

✔️ Agreement completed.
   2021-06-10 - 1:11:36 PM GMT

🅰️ **Adobe Sign**

**Exhibit B**

**From:** Trey Sharpe <trey@pccsmedical.com>
**Sent:** Friday, December 10, 2021 1:14 PM
**To:** Mark Eastham <mark.eastham@pccsmedical.com>
**Subject:** Re: Follow Up

Do you know the amount of profits/money we moved forward as partners when we restructured?

Trey Sharpe

CEO, PCCS Medical

Mobile 910.540.8157

www.pccsmedical.com

**From:** Mark Eastham <mark.eastham@pccsmedical.com>
**Sent:** Friday, December 10, 2021 2:01:37 PM
**To:** Trey Sharpe <trey@pccsmedical.com>
**Subject:** Follow Up

Trey,

Thank you for sharing with us your compensation plan going forward. I'm sorry on behalf of the Partners if some of us were taken off guard. I hope that you were not upset. We are very appreciative of what you have done and for your generosity to all of us. You have worked very hard and deserve to be compensated how you feel is appropriate.

Based on our conversation it makes sense that everyone be made whole. I have copied below these amounts that are on the books. These figures were ones that you came up with by looking at everyone's time with the company without pay based on current salaries at that time. These numbers were included in last years financials.

We would like to propose that everyone get their full back pay by the end of the year.  It would be $170K for you and you can see the others below.  Your new compensation plan of 25% new business profit in 2022 makes sense to all of us now that we had time to digest.

If you're in agreement we can get this information to Adrianne.

Again I hope that you understand how appreciative we all are of your efforts.

Thanks

Mark

Salaries Payable (A/P)

| | |
|---|---|
| Salaries Payable - Jay | 8,500.00 |
| Salaries Payable - Mark | 72,500.00 |
| Salaries Payable - Peter | 92,500.00 |
| Salaries Payable - Robert | 170,000.00 |
| Salaries Payable - Ryan | 22,500.00 |

Mark Eastham, R.Ph.

Partner

PCCS Medical

(651) 788-3396

https://pccsmedicalcorp.com/



This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error, please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee, you should not disseminate, distribute or copy this email. Please notify the sender immediately by email if you have received this email by mistake and delete this email from your system. If you are not the intended recipient, you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

**Exhibit C**

WILMINGTON OFFICE
101 N. 3RD STREET, SUITE 400 (28401)
POST OFFICE BOX 1950
WILMINGTON, NORTH CAROLINA 28402
TELEPHONE (910) 777-6000
FAX (910) 777-6111


CRANFILL SUMNER LLP

BENTON L. TOUPS
ATTORNEY AT LAW
DIRECT DIAL #: (910) 777-6011
DIRECT FAX #: (910) 777-6101
EMAIL: BTOUPS@CSHLAW.COM
WWW.CSHLAW.COM

February 4, 2022

**VIA EMAIL AND U.S. CERTIFIED MAIL**

Robert P. Sharpe
Chief Executive Officer, Port City Contracting Services, Inc.
245 Royal Fern Road
Wilmington, NC 28412
trey@pccsmedical.com

Adrianne B. George
President, Port City Contracting Services, Inc.
275 Bouchard Drive
Waxhaw, NC 28173
Adrianne.George@pccsmedical.com

**RE: Peter Spark / Mark Eastham**

Dear Mr. Sharpe and Ms George:

This firm represents Peter Spark and Mark Eastham (our "Clients"). Our Clients are former employees of Port City Contracting Services, Inc. (the "Company"), and they remain shareholders of the Company. Mr. Spark was employed as the Managing Partner, Finance, and Mr. Eastham was the Company's COO. Our Clients were involuntarily terminated from their positions with the Company on December 14, 2021. We write to address a myriad of concerns regarding our Clients' treatment by the Company and its principal and CEO Robert "Trey" Sharpe.

**<u>Unpaid Wages and Unlawful Retaliation</u>**

As investors in the Company, our Clients allowed the Company to defer wages it owed them in order to provide the Company with sufficient operating capital. This arrangement was openly discussed, and I also understand it to be memorialized in various shareholder meeting minutes. On or about December 10, 2021, a meeting of the Company's Board of Directors/shareholders was called by Mr. Sharpe. During that meeting, Mr. Sharpe announced that he was paying himself a $100,000 bonus as well as changing his own pay structure in a manner that would result in a substantial increase in his compensation. In response, Mr. Eastham and/or Mr. Spark suggested that before Mr. Sharpe increase his own salary and bonus himself, other employees should be paid their back-due wages. Unfortunately, Mr. Sharpe declined to do that and shortly thereafter terminated our Clients' employment with the Company, a step that can only be seen as an act of retaliation for our Clients' request for payment of back-due wages.

Robert P. Sharpe & Adrianne B. George
Page 2
February 4, 2022

As of the date they were terminated, Mr. Spark was owed approximately $92,500 in past due wages, and Mr. Eastham was owed approximately $72,000 in past due wages. The Company's

failure to pay these wages constitutes a violation of the North Carolina Wage and Hour Act and the federal Fair Labor Standards Act (FLSA), both of which provide for liquidated (double) damages, attorneys' fees and personal liability on the part of Mr. Sharpe.

The Company's termination of our Clients in retaliation for addressing their unpaid wages constitutes a violation of the North Carolina Retaliatory Employment Discrimination Act ("REDA"), which provides for treble damages and attorneys' fees. Their termination was also in violation of the anti-retaliation provisions of the FLSA.

## Breach of the June 7, 2021 Stock Redemption and Release Agreement

Pursuant to a December 22, 2020, Restricted Stock Agreement, Mr. Eastham was granted 3,194 shares of Company stock. The Company and Mr. Eastham entered into a Stock Redemption and Release Agreement, effective June 7, 2021. Per that Agreement, the Company purchased 1,916 shares of Mr. Eastham's stock for $60,000. The purchase price was to be paid in monthly installments of $1 for every box of diabetic test strips the Company sold. Thus far in 2022, the Company has paid Mr. Eastham nothing under Redemption Agreement and is in clear breach of the same.

## Mr. Sharpe's Breach of Fiduciary Duty and Misuse of Company Resources

Mr. Sharpe has 100% of the voting shares of the Company and exercises complete control over its operations and owes a fiduciary duty to the Company and its shareholders. He has breached that duty.

Not only has Mr. Sharpe misappropriated money to himself in the form of his excessive, unilaterally granted bonus and salary increase, he has also misused Company money and shareholder profits to fund his own unrelated business ventures. While there may be others, one such venture is Stone Bay Tactical, LLC. ("Stone Bay"). With respect to Stone Bay, Mr. Sharpe has: (1) used Company monies and property to capitalize Stone Bay; (2) used Company money to make inventory purchases for Stone Bay; (3) used Company warehouse space to store Stone Bay inventory; and (4) used Company employees to perform labor for Stone Bay.

Our Clients also believe that Mr. Sharpe has used Company resources for personal benefit. For example, our Clients believe Mr. Sharpe used Company funds to purchase a vehicle for his personal use.

Robert P. Sharpe & Adrianne B. George
Page 3
February 4, 2022

Mr. Sharpe's misuse of Company assets for his own benefit, and to the detriment of other shareholders, gives rise to liability on the part of Mr. Sharpe and constitutes grounds for dissolution of the Company.

## Harassment, Discrimination, Malicious Prosecution and Abuse of Process

Particularly with regard to Mr. Spark, Mr. Sharpe has engaged in a pattern of outrageous conduct for which he is liable. Mr. Spark is a citizen of the UK. Mr. Sharpe has consistently threatened to seek to have Mr. Spark deported. Such threats constitute blatant, illegal national origin discrimination.

Recently, Mr. Sharpe sought to have a No-Contact Order for Stalking or Nonconsensual Sexual Conduct issued against Mr. Spark. There were absolutely no grounds for that application. Mr. Sharpe's institution of this action is a thinly veiled effort to try to exert some leverage over Mr. Spark in their dealings related to the Company. As such, it is an abuse of the judicial process and constitutes a malicious prosecution.

## Equity in the Company

Despite the termination of their employment, Mr. Spark and Mr. Eastham remain shareholders of the Company, and Mr. Sharpe owes them duties as such. Should Mr. Sharpe wish for that not to be so, my Clients are willing to sell their shares back to the Company. In the absence of such an arrangement, dissolution may be the only alternative.

I also understand that Mr. Eastham is owed a distribution of $37,202.00 in connection with the Company's conversion from an LLC to a corporation. Mr. Eastham has paid taxes on this sum but has not received it.

## Personal Guarantees

Our Clients are personal guarantors of the Company on one or more contracts the Company has with its vendors. We insist they promptly be removed as such.

## Registered Agent

Mr. Spark is still listed as the Company's Registered Agent. We insist that the Company designate a new Registered Agent.

## Conclusion

At this point, I do not have a specific monetary demand. We are still discussing that with our Clients, and we are still assessing the financial, mental and emotional impact of Mr. Sharpe's

4874-0977-4602, v. 1

Robert P. Sharpe & Adrianne B. George
Page 4
February 4, 2022

actions. My objective in writing this letter is to begin a dialogue in hopes of working towards a resolution of these issues without the need to resort to litigation, but that is certainly the next step if discussions are not successful. Towards that end, I ask that you or your attorney contact me regarding the matters discussed herein.

Finally, our Clients demand that Mr. Sharpe, the Company and Stone Bay take immediate steps to preserve any and all evidence relating to these matters. The Company's evidentiary preservation steps should include, but by no means be limited to, immediate measures to preserve any potentially relevant emails, text messages, business records, and financial records.

Please let me hear from you or your representative within 14 days of the date of this letter.

Very truly yours,

*Benton L. Toups*

Benton L. Toups

4874-0977-4602, v. 1

**Exhibit D**



Samuel B. Potter
sam@hcpplaw.com
(910) 772-1678

February 28, 2022

Port City Contracting Services, Inc.
c/o Robert P Sharpe, CEO
2017 Corporate Drive, Unit 4
Wilmington, NC 28405

Port City Contracting Services, Inc.
c/o Adrianne B. George
2017 Corporate Drive, Unit 4
Wilmington, NC 28405

Re:     Corporate Records Inspection

Dear Mr. Sharpe and Ms. George:

This firm represents Mark Eastham ("Mr. Eastham"), a shareholder of Port City Contracting Services, Inc. (hereafter "PCCS"). Pursuant to NCGC §55-16-02, Mr. Eastham hereby demands to be permitted to inspect and copy, by and through the undersigned, the following:

(1) PCCS's articles of incorporation as currently in effect.

(2) PCCS's bylaws as currently in effect.

(3) All written communications within the past three years to shareholders generally.

(4) Minutes of all meetings of, and records of all actions taken without a meeting by, its shareholders, its board of directors, and board committees established under section G.S. 55-8-25.

(5) A list of the names and business addresses of its current directors and officers.

(6) Records of any final action taken with or without a meeting by the board of directors, or by a committee of the board of directors while acting in place of the board of directors on behalf of the corporation maintained in accordance with G.S. 55-16-01(a).

(7) Accounting records of the corporation, to include a current profit and loss statement for 2022, list of current debts and liabilities, year-end Profit and Loss Statements for 2020 and 2021, a statement of gross revenue expected from all current contracts between PCCS and any third

party, a statement of officer and director salaries (current) and as of November 1, 2021 and a copy of PCCS's tax returns for 2019, 2020, and 2021 (when available).

(8) A record of PCCS's current shareholders, in alphabetical order by class of shares showing the number and class of shares held by each shareholder.

(9) Annual financial statements prepared for the corporation for its last three fiscal years, or each year of its existence if shorter than three years, and any audit or other reports with respect to the financial statements.

Mr. Eastham's purpose for inspecting the referenced documents and records is to assess what decisions of PCCS have been duly authorized by the Board of Directors, who has been elected and is currently serving as officers and directors of PCCS. who are the current shareholders of PCCS and the financial condition of PCCS as it relates to the value of Mr. Eastham's shares. These documents can be made available electronically, delivered to the undersigned's office or for inspection in person at the corporate office for PCCS. The documents must be made available within 5 business days of receipt of this letter.

Please feel free to reach out to me to arrange a time and procedure for inspection. Please take note that a failure to allow inspection of the requested documents will result in immediate legal action and pursuit of all available remedies under North Carolina law.

Respectfully,
HODGES COXE & POTTER, LLP

Samuel B. Potter



**After printing this label:**

1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**Exhibit E**

**From:** Trey Sharpe <sharpetrev4@gmail.com>
**Date:** March 20, 2022 at 1:49:59 PM CDT
**To:** david@broadsword-defense.com

Page 2 of 5

**Subject: Ukraine**

Friends and family,

Why am I here in Ukraine? Duty brought me here. Love made me stay.

Love. It is all around me here. You can feel the love among the troops and citizens. As I write this, Russian and Belarusian soldiers are preparing to attack. Yet today I brought a daughter to see her father for the first time since before the war started. He trusted me to get her back to Poland safely. The love I witnessed between them was heartbreaking yet beautiful. Tomorrow I will hopefully return with tourniquets to help prepare my unit for combat. I am honored to have a tiny spot with this group of heroes. I am honored to have my Marine brother, David Danel, work with and stand beside me. He pushes and inspires me to give my best.

As a veteran, I believe I have earned the right to speak bluntly and these words are my own. Further, I am resigning as CEO of PCCS Medical to focus my efforts volunteering with the Ukrainian Army during this time.

As a disabled veteran I built a business, which helped me with my PTSD and associated depression. In this journey I brought on two corporate executives, Peter Sparks and Mark Eastham, that subsequently defrauded the company. I learned they had plans to steal company business. I learned they hid "backpay" from me as well. When one partner realized he was being fired, he immediately went to Verizon, removed phones and computers from the company account, and illegally transferred them into his own name...the literal definition of theft. These actions have hurt the company and

brought back my PTSD and depression.

I filed a report with the The Sheriff's and the county District Attorney. They decided to not pursue the case despite clear evidence of company theft, and attempted embezzlement. I was told the case did not rise to the level of importance for a criminal case. In my eyes this decision told me I wasn't important enough, my community service didn't matter, and my service to my country didn't matter. I've been lost since this happened.

This experience only reinforces the lessons I know to be true; people in power will always find an excuse to do what they want. This is how Putin excuses killing innocent women and children. I'm tired of lies, power plays, and I'm tired of being delicate about it.

I came to Ukraine angry and hurting. The kindness and love I have received here has reminded me I matter. Knowing I have someone watching my back, like my partner and Marine Raider David Danel...it has been life changing. My teammates have worked hard to support this mission. My family has been more supportive than I ever imagined. I love you all.

I believe in a free and peaceful Ukraine. I believe you support and fight for what is right. My heart still hurts, at times I'm scared...but love keeps me moving forward.

Semper Fidelis,

Trey Sharpe

**Exhibit F**

# DAVIS HARTMAN WRIGHT LLP

### ATTORNEYS AT LAW

ASHEVILLE          NEW BERN          RALEIGH          WILMINGTON

MICHAEL SCOTT DAVIS
MARK SPENCE HARTMAN
I. CLARK WRIGHT, JR.
SHANNON ("MISSY") S. SPAINHOUR
JOHN C. BIRCHER III
THOMAS S. BABEL
EDWIN J. TISDALE
GREGORY M. KATZMAN
SAMUEL B. POTTER
JAIMEE BULLOCK MOSLEY
MARY BOYD BAREFOOT
RACHEL M. BENGE
JOHN A.J. WARD (RETIRED)

P.O. BOX 11320 (28404)
3819 PARK AVE. (28403)
WILMINGTON, N.C.

PHONE 252-514-2828
DIRECT 910-756-4070
CELL 910-508-0359
FAX 910-756-4070

EMAIL TSB@DHWLEGAL.COM

May 4, 2022

Via Email and Regular U.S. Mail

Port City Contracting Services, Inc.
C/O Addison T. Palanza
Counsel for Port City Contracting Services, Inc..
314 Walnut Street, Suite 100
Wilmington, NC 28401

Re: *Eastham, et al. v. Port City Contracting Services, Inc., et al* (Case No. 22 CVS 001507

Dear Addison:

As you are aware, we represent Mark Eastham and Peter Spark. Both Mr. Eastham and Mr. Spark are owners and holders of Class B shares of Port City Contracting Services, Inc. ("PCCS") and, combined, hold forty percent (40%) of the outstanding Class B Shares.

Pursuant to N.C. Gen. Stat. §55-7-42, we hereby make demand on PCCS to investigate and bring an action against Robert P. Sharpe for, among other things, breaching his fiduciary duty to PCCS as an officer and director and for using and taking assets of PCCS for his personal use or the use of other entities owned and controlled by Mr. Sharpe

For instance, in March- April 2022, Mr. Sharpe withdrew funds from the PCCS bank account to fund the purchase of weapons and materials that he intended to sell to the Ukrainian government on behalf of Stone Bay Tactical, LLC. These purchases and intended sale had nothing to do with the operations and business of PCCS. Furthermore, Mr. Sharpe used additional funds of PCCS to fund his travel and stay in the Ukraine when Mr. Sharpe decided to stay and fight on behalf of Ukraine. To date, we believe that

the funds taken by Mr. Sharpe are in excess of One Hundred Thousand and No/100 Dollars ($100,000.00).

Mr. Sharpe also used PCCS funds to fund the start-up of Stone Bay Tactical, LLC. He used PCCS funds to purchase inventory, used PCCS facilities to store said inventory, and used the employees of PCCS to operate Stone Bay Tactical, LLC. He also used up to Twenty Thousand and No/100 Dollars ($20,000.00) of PCCS funds to pay for a trip to Las Vegas that was taken for Stone Bay Tactical, LLC.

Mr. Sharpe took similar actions on behalf of another entity he owns: SRS Supply, LLC. Mr. Sharpe used PCCS funds to purchase inventory and other goods for SRS Supply, LLC, used PCCS' facilities to store SRS Supply, LLC inventory and other supplies, and used PCCS employees to operate SRS Supply, LLC.

Lastly, Mr. Sharpe unilaterally decided not to pay the outstanding and required compensation owed to both Mr. Eastham and Mr. Spark when their employment was terminated. This decision has exposed PCCS to a Wage and Hour action by both individuals and has exposed the company to liquidated damages pursuant to N.C. Gen. Stat. §95-25.22.

We respectfully demand that the actions of Mr. Sharpe set forth herein be investigated by PCCS immediately. If PCCS does not take the action set forth herein, Mr. Eastham and Mr. Spark will bring a derivative claim on behalf of PCCS. Within ten (10) days from the date of this letter, please provide us with written notification that either the demanded investigation has been initiated or an action has been brought against Mr. Sharpe for his transgressions.

Sincerely,

Thomas S Babel

**STATE OF NORTH CAROLINA**

New Hanover _____ County

File No.

22-CVS - 001507

In The General Court Of Justice
☐ District  ☒ Superior Court Division

Name Of Plaintiff
Mark Eastham

Address
261 Wyndham Cir W

City, State, Zip
New Brighton, MN 55112

**CIVIL SUMMONS**

☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

**VERSUS**

Name Of Defendant(s)
Port City Contracting Services, Inc.
Robert P. Sharpe

Stone Bay Tactical, LLC, SRS Supply, LLC

G.S. 1A-1, Rules 3 and 4

Date Original Summons Issued
06/21/2022

Date(s) Subsequent Summons(es) Issued

**To Each Of The Defendant(s) Named Below:**

Name And Address Of Defendant 1
SRS Supply, LLC
245 Royal Fern Road
Wilmington, NC 28412

Name And Address Of Defendant 2

**IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out!
You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as
possible, and, if needed, speak with someone who reads English and can translate these papers!
¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales.
¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible
acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos
documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)
Thomas Babel, Davis Hartman Wright LLP
P.O. Box 11320 (28404)
3819 Park Avenue, Suite B
Wilmington, NC 28403

Date Issued

Time
10:10 ☒ AM ☐ PM

Signature

☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

☐ ENDORSEMENT (ASSESS FEE)
This Summons was originally issued on the date indicated
above and returned not served. At the request of the plaintiff,
the time within which this Summons must be served is
extended sixty (60) days.

Date Of Endorsement

Time
☐ AM  ☐ PM

Signature

☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

| RETURN OF SERVICE | |
|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM  ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM  ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

**STATE OF NORTH CAROLINA**

New Hanover _____ County

File No.
22-CVS-00150

In The General Court Of Justice
☐ District   ☒ Superior Court Division

*Name Of Plaintiff*
Mark Eastham

*Address*
261 Wyndham Cir W

*City, State, Zip*
New Brighton, MN 55112

**CIVIL SUMMONS** Cm

☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

**VERSUS**

G.S. 1A-1, Rules 3 and 4

*Name Of Defendant(s)*
Port City Contracting Services, Inc.
Robert P. Sharpe

Stone Bay Tactical, LLC, SRS Supply, LLC

*Date Original Summons Issued*
06/21/2022

*Date(s) Subsequent Summons(es) Issued*

**To Each Of The Defendant(s) Named Below:**

*Name And Address Of Defendant 1*
Stone Bay Tactical, LLC
2017 Corporate Drive, Unit 4
Wilmington, NC 28405

*Name And Address Of Defendant 2*

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out!** You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!** Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

*Name And Address Of Plaintiff's Attorney (If none, Address Of Plaintiff)*
Thomas Babel, Davis Hartman Wright LLP
P.O. Box 11320 (28404)
3819 Park Avenue, Suite B
Wilmington, NC 28403

*Date Issued*

*Time* 10:10  ☒ AM  ☐ PM

*Signature*

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

☐ **ENDORSEMENT (ASSESS FEE)**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

*Date Of Endorsement*

*Time*  ☐ AM  ☐ PM

*Signature*

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** *Many counties have* **MANDATORY ARBITRATION** *programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

| | | RETURN OF SERVICE | |
|---|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| *Date Served* | *Time Served* | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| *Date Served* | *Time Served* | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| *Service Fee Paid*<br>$ | *Signature Of Deputy Sheriff Making Return* |
|---|---|
| *Date Received* | *Name Of Sheriff (type or print)* |
| *Date Of Return* | *County Of Sheriff* |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

New Hanover _____ County

File No. _____

In The General Court Of Justice
☐ District   ☒ Superior Court Division

Name Of Plaintiff
Mark Eastham

Address
261 Wyndham Cir W

City, State, Zip
New Brighton, MN 55112

## CIVIL SUMMONS
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

**VERSUS**

Name Of Defendant(s)
Port City Contracting Services, Inc.
Robert P. Sharpe

Date Original Summons Issued
05/04/2022

Date(s) Subsequent Summons(es) Issued

G.S. 1A-1, Rules 3 and 4

To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Port City Contracting Services, Inc.<br>2017 Corporate Drive, Unit 4<br>Wilmington, NC 28405 | Robert P. Sharpe<br>245 Royal Fern Road<br>Wilmington, NC 28512 |

**IMPORTANT!** You have been sued! These papers are legal documents, DO NOT throw these papers out!
You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE!** ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales.
**¡NO TIRE estos papeles!**
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| Thomas Babel, Davis Hartman Wright LLP<br>P.O. Box 11320 (28404)<br>3819 Park Avenue, Suite B<br>Wilmington, NC 28403 | 5-4-22 | 8 '51   ☒ AM  ☐ PM |
| | Signature | |
| | _Sandra Hemka_ | |
| | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time |
|---|---|---|
| | | ☐ AM  ☐ PM |
| | Signature | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in contr[...]000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandator[...], if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

| | RETURN OF SERVICE | |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

**DEFENDANT 1**

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| 6-22-2022 | 10 15 | hc ☐ AM ☐ PM | Robert P. Sharpe |

☑ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

Robert P. Sharpe
245 Royal Fern Rd., Wilmington, NC

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

**DEFENDANT 2**

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| | | ☐ AM ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | EDWARD J. McMAHON, SHERIFF |
| Date Received | Name Of Sheriff (type or print) |
| 5-04. 2022 | By _____ Moore _____ Deputy |
| Date Of Return | County Of Sheriff |
| 6-22-2022 | New Hanover County, N.C. |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts



STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

FILED

2022 JUL 14 P 2: 00

NEW HANOVER CO., C.S.C.

BY_____

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.: 22-CVS-001507

MARK EASTHAM
and PETER SPARK

Plaintiffs

v.

PORT CITY CONTRACTING
SERVICES, INC., ROBERT P.
SHARPE, STONE BAY TACTICAL,
LLC, and SRS SUPPLY, LLC
Defendants.

)
)
)
)
)
)
)

**AFFIDAVIT OF SERVICE ON
STONE BAY TACTICAL, LLC BY
CERTIFIED U.S. MAIL, RETURN
RECEIPT REQUESTED**

The undersigned, after being first duly sworn, deposes and says:

1.    That he is counsel for Plaintiffs in the above-entitled action.

2.    On June 24, 2022, a copy of the Summons and Complaint was deposited in the United States Mail for mailing by certified mail, return receipt requested to the following address:

> Stone Bay Tactical, LLC
> 2017 Corporate Drive, Unit 4
> Wilmington, NC 28405

3.    That such Summons and Complaint were received by Defendant Stone Bay Tactical, LLC on June 24, 2022, as evidenced by the Certified Mail Receipt attached hereto as Exhibit A.

RESPECTFULLY SUBMITTED, this the _____ day of July 2022.

Davis Hartman Wright PLLC
P.O. Box 11320 (28404)
3819 Park Ave, Suite B
Wilmington, NC 28403
Telephone and Facsimile: (910) 756-4070

By: _____
      Thomas S. Babel
      N.C. State Bar No. 35004
      tsb@dhwlegal.com
      *Counsel for Mark Eastham and Peter Spark*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing **AFFIDAVIT OF SERVICE ON STONE BAY TACTICAL, LLC BY CERTIFIED U.S. MAIL, RETURN RECEIPT REQUESTED** by the following means:

☑ By placing a copy, contained in a first-class, postage-paid wrapper, into a depository under the exclusive custody of the United States Postal Service, addressed to the parties as indicated below:

Stone Bay Tactical, LLC                    SRS Supply, LLC
2017 Corporate Drive, Unit 4          245 Royal Fern Road
Wilmington, NC 28405                    Wilmington, NC 28412

☐ by causing to be delivered to the following party(ies) via telefacsimile to the number indicated below:

☑ by causing to be delivered to the party(ies) via electronic mail to the electronic mail address indicated below:
        **wcreiss@reissnutt.com**

This the 14 day of July 2022.

_____
Thomas S. Babel
*Counsel for Defendants Mark Eastham and Peter Spark*

Exhibit A

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Stone Bay Tactical, LLC
2017 Corporate Dr. Unit 4
Wilmington, NC 28405

9590 9402 7220 1284 0063 98

2. Article Number (Transfer from service label)
7021 1970 0002 1248 7582

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
ANDREW LAYTON

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

# USPS Tracking®

FAQs >

## Track Another Package  +

Get the free Informed Delivery® feature to receive
automated notifications on your packages

**Learn More**

(https://reg.usps.com/xsell?
app=U· psTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/st

**Tracking Number:** 70211970000212487582

Remove ✕

Your item was delivered to an individual at the address at 1:42 pm on June 24, 2022 in
WILMINGTON, NC 28405.

USPS Tracking Plus® Available ⌄

## ⊘ Delivered, Left with Individual

June 24, 2022 at 1:42 pm
WILMINGTON, NC 28405

Get Updates ⌄

| | |
|---|---|
| **Text & Email Updates** | ⌄ |
| **Tracking History** | ⌄ |
| **USPS Tracking Plus®** | ⌄ |
| **Product Information** | ⌄ |

See Less ⌃

Feedback

# STATE OF NORTH CAROLINA

File No.
22-CVS-001507

New Hanover _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

Name Of Plaintiff
Mark Eastham

Address
261 Wyndham Cir W

City, State, Zip
New Brighton, MN 55112

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

*FEDEX*

G.S. 1A-1, Rules 3 and 4

### VERSUS

Name Of Defendant(s)
Port City Contracting Services, Inc.
Robert P. Sharpe

Stone Bay Tactical, LLC, SRS Supply, LLC

Date Original Summons Issued
06/21/2022

Date(s) Subsequent Summons(es) Issued
07/14/2022

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| SRS Supply, LLC<br>c/o Robert Sharpe<br>245 Royal Fern Road<br>Wilmington, NC 28412 | |

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out!
You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales.
¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| Thomas Babel, Davis Hartman Wright LLP<br>P.O. Box 11320 (28404)<br>3819 Park Avenue, Suite B<br>Wilmington, NC 28403 | 7·14·22 | 2:05   ☐ AM  ☑ PM |

Signature

☑ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | ☐ AM  ☐ PM |

Signature

☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** *Many counties have* **MANDATORY ARBITRATION** *programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

| | **RETURN OF SERVICE** | |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts



STATE OF NORTH CAROLINA **FILED**

COUNTY OF NEW HANOVER
2022 JUL 20 P 2: 02

NEW HANOVER CO., C.S.C.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.: 22-CVS-001507

MARK EASTHAM
and PETER SPARK

       Plaintiffs

       v.

PORT CITY CONTRACTING
SERVICES, INC., ROBERT P.
SHARPE, STONE BAY TACTICAL,
LLC, and SRS SUPPLY, LLC
       Defendants.

**AFFIDAVIT OF SERVICE ON SRS
SUPPLY, LLC BY DESIGNATED
DELIVERY SERVICE, DELIVERY
RECEIPT REQUESTED**

The undersigned, after being first duly sworn, deposes and says:

1.    That he is counsel for Plaintiffs in the above-entitled action.

2.    On July 14, 2022, a copy of the Summons and Complaint was deposited with UPS, a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2), to be served, delivering to the addressee, delivery receipt requested to the following address:

    SRS Supply, LLC
    c/o Robert Sharpe
    245 Royal Fern Road
    Wilmington, NC 28412

3.    That such Summons and Complaint were delivered to Defendant SRS Supply, LLC on July 15, 2022, as evidenced by the delivery receipt, "Proof of Delivery" attached hereto as Exhibit A.

RESPECTFULLY SUBMITTED, this the 20th day of July 2022.

Davis Hartman Wright PLLC
P.O. Box 11320 (28404)
3819 Park Ave, Suite B
Wilmington, NC 28403
Telephone and Facsimile: (910) 756-4070

By:    _____
Thomas S. Babel
N.C. State Bar No. 35004
tsb@dhwlegal.com
*Counsel for Mark Eastham and Peter Spark*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing **AFFIDAVIT OF SERVICE ON STONE BAY TACTICAL, LLC BY CERTIFIED U.S. MAIL, RETURN RECEIPT REQUESTED** by the following means:

    ☑ By placing a copy, contained in a first-class, postage-paid wrapper, into a depository under the exclusive custody of the United States Postal Service, addressed to the parties as indicated below:

| | |
|---|---|
| Stone Bay Tactical, LLC | SRS Supply, LLC |
| 2017 Corporate Drive, Unit 4 | 245 Royal Fern Road |
| Wilmington, NC 28405 | Wilmington, NC 28412 |

    ☐ by causing to be delivered to the following party(ies) via telefacsimile to the number indicated below:

    ☑ by causing to be delivered to the party(ies) via electronic mail to the electronic mail address indicated below:
        wcreiss@reissnutt.com

This the 20ᵗʰ day of July 2022.

Thomas S. Babel
*Counsel for Defendants Mark Eastham and Peter Spark*

**Exhibit A**

# Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

**Tracking Number**

1Z8FV9930302273174

**Weight**

0.60 LBS

**Service**

UPS Ground

**Shipped / Billed On**

07/14/2022

**Delivered On**

07/15/2022 7:25 P.M.

**Delivered To**

WILMINGTON, NC, US

**Received By**

DRIVER RELEASE

**Left At**

Front Door

Thank you for giving us this opportunity to serve you. Details are only available for shipments delivered within the last 120 days. Please print for your records if you require this information after 120 days.

Sincerely,

UPS

Tracking results provided by UPS: 07/18/2022 4:31 P.M. EST

STATE OF NORTH CAROLINA     **F I L E D**   IN THE GENERAL COURT OF JUSTICE

CLERK OF SUPERIOR COURT SUPERIOR COURT DIVISION

COUNTY OF NEW HANOVER NEW HANOVER COUNTY    FILE NO.: 22-CVS-001507

JUN − 9 2022

| | |
|---|---|
| MARK EASTHAM and PETER SPARK | ) |
| Plaintiffs at 10:4? am/pm By Dep/Asst CSC | ) |
| | ) |
| v. | ) CONSENT ORDER EXTENDING |
| | ) TEMPORARY RESTRAINING ORDER |
| PORT CITY CONTRACTING SERVICES, INC. and ROBERT P. SHARPE | ) |
| Defendants. | ) |

THIS MATTER came before this Court on Plaintiffs' and Defendants request to extend the Temporary Restraining Order that was entered by the Court on May 4, 2022, and which was further extended by Consent on May 12, 2022, and the Court based on the Consent of the parties FINDS AND ORDERS that the Temporary Restraining Order is hereby extended to July 5, 2022, when at such time the hearing on Plaintiffs' Motion for Preliminary Injunction shall be heard.

SO ORDERED, this the ___ day of June 2022.

_____
Charles H. Henry
Superior Court Judge Presiding

CONSENTED TO:

Thomas S. Babel
N.C. State Bar No. 35004
tsb@dhwlegal.com
Davis Hartman Wright, LLP
P.O. Box 11320 (28404)
2819 Park Avenue, Suite B
Wilmington, NC 28403
Telephone: (910) 756-4070
*Counsel for Plaintiffs Mark Eastham and*
*Peter Spark*


Addison T. Palanza
N.C. State Bar No. 5098
Addison@atlanticcoastlaw.com
Atlantic Coast Law
314 Walnut Street, Suite 100
Wilmington, NC 28401
Telephone: (910) 769-6884
*Counsel for Defendant Port City Contracting Services, Inc.*

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE

F I L E D   SUPERIOR COURT DIVISION

COUNTY OF NEW HANOVER     22-CVS-1507

2022 JUN 23  A 11: 15

MARK EASTHAM, and PETER SPARK,    )

NEW HANOVER CO., C.S.C.

                 )

       Plaintiffs,   )

BY_____

                 )     **ORDER GRANTING**

   vs.                       )    **ENLARGEMENT OF TIME TO**

                 )     **ANSWER OR OTHERWISE**

PORT CITY CONTRACTING    )     **RESPOND TO COMPLAINT**

SERVICES, INC., and ROBERT P.   )

SHARPE,                   )

                 )

       Defendants.   )

_____ )

THIS MATTER coming on before the undersigned Clerk of Superior Court for New Hanover County, or one of their Assistants, upon Motion of Defendants Port City Contracting Services, Inc., and Robert P. Sharpe (hereinafter "Defendants") for an extension of time within which they may serve their Answer or otherwise respond to Plaintiffs' Complaint pursuant to Rule 6(b) of the North Carolina Rules of Civil Procedure, and it appearing to the Court, for good cause shown, that Defendants should have additional time to serve their Answer or otherwise respond to Plaintiffs' Complaint.

~~w~~ Tuesday 5th

NOW, THEREFORE, IT IS ORDERED that Defendants shall have to and including ~~Wednesday, July 6,~~ 2022, within which to serve their Answer or otherwise respond to the Plaintiffs' Complaint.

SO ORDERED, this the 23 day of June , 2022.

☐ Clerk of Superior Court

☒ Assistant Clerk of Superior Court

New Hanover County, North Carolina



STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
                    F I L E D        SUPERIOR COURT DIVISION
COUNTY OF NEW HANOVER CLERK OF SUPERIOR COURT
                    NEW HANOVER COUNTY FILE NO.:  22-CVS-001507

MARK EASTHAM                        JUL) – 7 2022
and PETER SPARK                         )
                    Plaintiffs   at _____  am/pm
                              By _____ Dep/Asst CSC
                                        )
            v.                          )        CONSENT ORDER EXTENDING
                                        )        TEMPORARY RESTRAINING ORDER
PORT CITY CONTRACTING                   )
SERVICES, INC.  ROBERT P.               )
SHARPE. STONE BAY TACTICAL,             )
LLC, AND SRS SUPPLY, LLC                )

            Defendants.

        THIS MATTER came before this Court on Plaintiffs' and Defendants request to extend

the Temporary Restraining Order that was entered by the Court on May 4, 2022, and which was

further extended by Consent on May 12, 2022 and on June 9, 2022, and the Court based on the

Consent of the parties FINDS AND ORDERS that the Temporary Restraining Order is hereby

extended to August 4, 2022, when at such time the hearing on Plaintiffs' Motion for Preliminary

Injunction shall be heard.

        SO ORDERED, this the 7 day of July 2022.

                                    _____
                                    R. Kent Harrell
                                    Superior Court Judge Presiding

CONSENTED TO:

_____

Thomas S. Babel
N.C. State Bar No. 35004
tsb@dhwlegal.com
Davis Hartman Wright, LLP
P.O. Box 11320 (28404)
2819 Park Avenue, Suite B
Wilmington, NC 28403
Telephone: (910) 756-4070
*Counsel for Plaintiffs Mark Eastham and
Peter Spark*

_____

W. Cory Reiss
N.C. State Bar No. 41549
wcreiss@ressnutt.com
Reiss & Nutt, PLLC
1221 Floral Parkway, Suite 104
Wilmington, NC 28403
Telephone: (910) 420-4674
*Counsel for Defendant Port City Contracting Services, Inc. and Robert P. Sharpe*

STATE OF NORTH CAROLINA FILED    IN THE GENERAL COURT OF JUSTICE
                                     SUPERIOR COURT DIVISION
COUNTY OF NEW HANOVER            FILE NO.: 22-CVS-001507

2022 JUL 27 ⊃ 3: 44

MARK EASTHAM                )
and PETER SPARK     NEW HANOVER COUNTY, C.S.C. )
           Plaintiffs, )
By _____ )
                      )
                      )      ORDER GRANTING IN PART AND
           v.               )          DENYING IN PART
                      )      MOTION FOR PREJUDGMENT
PORT CITY CONTRACTING        )           ATTACHMENT
SERVICES, INC. ROBERT P.        )
SHARPE. STONE BAY TACTICAL,    )
LLC, AND SRS SUPPLY, LLC      )

                 Defendants.

THIS MATTER came before this Court during the July 7, 2022 session on Plaintiffs'

Motion for Prejudgment Attachment. Based on the Verified Complaint, the Affidavits, and other

materials submitted to the Court, and the arguments of counsel, the Court FINDS AND

ORDERS THE FOLLOWING:

## FINDINGS OF FACT

1. Thomas S. Babel of Davis Hartman Wright, LLP was present on behalf of Plaintiffs.

2. Cory Reiss of Reiss & Nutt, PLLC was present on behalf of Defendants Port City

Contracting Services, Inc. ("PCCS") and Robert P. Sharpe ("Sharpe").

3. Stone Bay Tactical, LLC and SRS Supply, LLC were not represented by counsel at the

hearing. SRS Supply, LLC had not been served with the Amended Complaint naming it as a

Defendant or the Notice of Hearing for this matter at the time of the hearing. Stone Bay Tactical,

LLC was served with the Amended Complaint naming it as a Defendant and Notice of Hearing

for this matter on June 29, 2022 but had not filed a response or appearance as of the time of the

hearing.

4.  Plaintiffs, Mark Eastham and Peter Spark, have filed claims against Defendant PCCS for

unpaid deferred compensation in the amounts of $72,500.00 for Mark Eastham and $92,500.00

for Peter Spark (herein collectively the "Deferred Compensation Claim"), which PCCS had not

answered at the time of this hearing, and the time for answering the Amended Complaint had not

expired.

5.  Defendant Sharpe is the majority shareholder of PCCS.

6.  On or about May 4, 2022, a Temporary Restraining and Expedited Discovery Order

("TRO") was entered in this action ex parte.

7.  Pursuant to the TRO, PCCS disclosed that it had three accounts in its name at First

National Bank.

8.  As of June 27, 2022, the PCCS accounts at First National Bank have a zero or negative

balance.

9.  On Jun13, 2022, PCCS, in another action and as part of a levy order, disclosed that it had

opened a new bank account in its name at First Citizen's Bank.

## CONCLUSIONS OF LAW

10. This Court has subject matter jurisdiction over this action pursuant to N.C. Gen. Stat.

§7A-243 and N.C. Gen. Stat. §1-440.5.

11. This Court has personal jurisdiction over the Defendants pursuant to N.C. Gen. Stat. §1-

75.4.

12. The verified complaint filed in this action and affidavit provided at the hearing meet the

requirements of N.C. Gen. Stat. §1-440.11.

13. Plaintiffs have established through the verified pleadings and affidavit for purposes of

this motion only that Plaintiffs are claimants or creditors of PCCS.

14. Plaintiffs have established through the verified pleadings and affidavit for purposes of this motion only that Defendants Stone Bay Tactical, LLC and SRS Supply, LLC are domestic limited liability companies.

15. Plaintiffs have established through the verified pleadings and affidavit for purposes of this motion only that the PCCS bank accounts currently have insufficient funds.

16. This Court finds and concludes that the TRO currently in place is sufficient to protect the interests of the Plaintiffs with respect to Defendants PCCS and Sharpe.

17. This Court has not found that Stone Bay Tactical, LLC or SRS Supply, LLC in fact possess any assets of PCCS.

18. Based on the verified pleading and affidavit of the Plaintiffs, which Defendants Stone Bay Tactical, LLC, and SRS Supply, LLC have not yet appeared to rebut and the time for doing so has not expired, and this Court's authority to enter an *ex parte* order of attachment, the Court concludes that such Order should issue to prevent disbursement of property belonging to PCCS that is in the custody of Stone Bay Tactical, LLC and SRC Supply, LLC, if any.

19. This Court has considered the necessity of a bond pursuant to N.C. Gen. Stat. § 1-440.10 and finds that the $500.00 bond that was filed with the New Hanover Clerk of Court on or about May 6, 2022 will be sufficient to protect Defendants Stone Bay, LLC and SRS, LLC.

BASED ON THE FINDINGS OF FACT AND CONCLUSIONS OF LAW, the COURT hereby Grants in Part and Denies in Part Plaintiffs' Motion and ORDERS as follows:

20. The Motion is Denied as to Defendants PCCS and Sharpe.

21. All funds that originated from a PCCS account presently existing in any bank accounts in the name of Stone Bay Tactical, LLC, if any, shall be frozen until the conclusion of this action or further order of this Court;

4

22. All funds originating from a PCCS account presently existing in any bank accounts in the name of SRS Supply, LLC, if any, shall be frozen until the conclusion of this action or further order of this Court;

23. All inventory or other assets in the custody of Stone Bay Tactical, LLC that originated or were transferred from PCCS, if any, shall be frozen and not disposed of in any fashion or for any reason until the conclusion of this action or further order of this Court;

24. All inventory or other assets in the custody of Stone Bay Tactical, LLC that originated or were transferred from PCCS, if any, shall be frozen and not disposed of in any fashion or for any reason until the conclusion of this action or further order of this Court;

25. Within ten (10) days of this Order, Stone Bay Tactical, LLC and SRS, LLC shall provide the identity of any banking or financial account, including the account number, in the name of Stone Bay Tactical, LLC or SRS Supply, LLC presently containing any funds that originated from PCCS to counsel for Plaintiffs, including the amount of such funds that are to be attached;

26. Within ten (10) days of this Order, Stone Bay Tactical, LLC and SRS Supply, LLC shall provide the identity and location of any and all inventory and assets owned or held in their name that originated or were transferred from PCCS.

SO ORDERED, this the _2ᶜ_ day of July 2022.

R. Kent Harrell
Superior Court Judge Presiding

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO: 21-CVS-003497
22-CVS-1507

MARK EASTHAM
And PETER SPARK,

        Plaintiffs,

vs.

PORT CITY CONTRACTING
SERVICES, INC., ROBERT P.
SHARPE, STONE BAY TACTICAL,
LLC, and SRS SUPPLY, LLC,

        Defendants.

ORDER

THIS CAUSE, appearing to the undersigned as Defendants PORT CITY

CONTRACTING SERVICES, INC., ROBERT P. SHARPE, STONE BAY TACTICAL,

LLC, and SRS SUPPLY, LLC's  Motion for Extension of Time to serve an answer or

responsive pleading to the Complaint is made for good cause:

      IT IS, THEREFORE, ORDERED that the time within which Defendants may

serve their responses to the Complaint is hereby extended to and includes the 21st of

August 2022

      This the ___19___ day of ___July___, 2022.

_____
Deputy/Assistant Clerk of Court



STATE OF NORTH CAROLINA    FILED    IN THE GENERAL COURT OF JUSTICE
                                               SUPERIOR COURT DIVISION

COUNTY OF NEW HANOVER              FILE NO.: 22-CVS-001507

2022 SEP 19 P 1: 52

NEW HANOVER COUNTY C.S.C.

BY _____

|  |  |  |
|---|---|---|
| MARK EASTHAM<br>And PETER SPARK, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| PORT CITY CONTRACTING SERVICES,<br>INC., ROBERT P. SHARPE, STONE BAY<br>TACTICAL, LLC, and SRS SUPPLY, LLC, | ) | |
| Defendants. | ) | |
| | ) | |

THIS CAUSE came before the undersigned judge at the September 8, 2022, non-jury civil session of New Hanover County Superior Court on the Defendants' Motion to Compel compliance with Subpoenas issued pursuant to Rule 45 of the North Carolina Rules of Civil Procedure to the following non-parties to this action: The DaVinci Company, LLC; DaVinci Aerospace, LLC, and Carruthers & Roth, PA (collectively the "Respondents"). The Plaintiffs were represented by their attorney, W. Cory Reiss, and the Respondents were represented by their attorney, Kevin A. Rust.

AND THE COURT, having considered the written Objections to the subpoenas by The DaVinci Company, LLC and Carruthers & Roth, PA, the written response of DaVinci Aerospace, LLC to its subpoena, the arguments of counsel, relevant pleadings of which the Court takes judicial notice, and other materials submitted, makes the following Findings of Fact:

       1.      The Defendants issued Subpoenas to the Respondents on August 12, 2022;

       2.      Each of the Respondents was properly served with a subpoena referenced in the Amended Motion to Compel;

-2-

3.     The Subpoenas seek materials relevant to this action;

4.     Counsel for the Defendants limited the scope of the Subpoenas to responsive materials in existence prior to August 5, 2022, which is the date they first raised the relevant issues by filing their Amended Answer and Counterclaims;

5.     The Subpoenas, which seek substantially the same categories of information from the Respondents, are narrowly tailored temporally and do not pose an undue burden or expense;

6.     The Subpoenas do not seek material that is protected by any privilege, confidentiality, or other doctrine raised by the Respondents; and

7.     The Objections should be overruled on all stated grounds, pursuant to Rule 45.

NOW THEREFORE, the Court concludes that the Defendants are entitled to the Respondents' full compliance with the Subpoenas and, in its discretion, ORDERS that The DaVinci Company, LLC; DaVinci Aerospace, LLC; and Carruthers & Roth, PA shall fully comply with them by producing all responsive materials in existence prior to August 5, 2022, within fourteen (14) days of entry of this Order.

This the 15 day of September 2022.

Hon. Phyllis M. Gorham
Senior Resident Superior Court Judge

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
                                           SUPERIOR COURT DIVISION
COUNTY OF NEW HANOVER   AUG 30   P 1: 15     FILE NO.: 22-CVS-001507

MARK EASTHAM     NEW HANOVER CO.. C.S.C.
and PETER SPARK            )
         Plaintiffs         )
                          )
                          )    CONSENT ORDER FOR EXTENSION OF
         v.                  )    TIME TO REPLY TO AMENDED
                          )    COUNTERCLAIM
PORT CITY CONTRACTING       )
SERVICES, INC., ROBERT P.      )
SHARPE, STONE BAY TACTICAL,   )
LLC, and SRS SUPPLY, LLC,      )
         Defendants.       )

THIS CAUSE, being heard by the undersigned Clerk of Superior Court for New Hanover County on Plaintiffs' Motion for Extension of Time to respond to Defendants' Amended Counterclaim, it appearing to the Court that good cause exists for allowing the Motion and that said Motion should be allowed.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Extension of Time to Reply to Counterclaim is allowed and Plaintiffs are granted up to and including October 4, 2022, to answer and otherwise respond to Defendants' Counterclaim in the above-captioned matter

SO ORDERED, this the **30** day of August 2022.

                        Clerk of Superior Court

no copies provided



STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE

**FILED**

                       SUPERIOR COURT DIVISION

COUNTY OF NEW HANOVER   CLERK OF SUPERIOR COURT   FILE NO.: 22-CVS-001507

NEW HANOVER COUNTY

MARK EASTHAM           AUG – 3 2022      )
And PETER SPARK,                          )

                 at _12:46_ )  am/pm

       Plaintiffs,    By _____ ) Dep/Asst CSC

                                )

vs.                                   )

                                  )      ORDER

PORT CITY CONTRACTING            )
SERVICES, INC., ROBERT P. SHARPE,   )
STONE BAY TACTICAL, LLC, and SRS   )
SUPPLY, LLC,                    )

                                  )

       Defendants.                 )

                                  )

        THIS CAUSE came on for hearing on the Plaintiffs' Motion to Continue the hearing set on their Motion for Preliminary Injunction until August 17, 2022. That hearing is currently scheduled for August 4, 2022; however, counsel for the Defendants tested positive for Covid 19 and therefore an in-person hearing, which counsel for the Plaintiffs requested, was precluded. The Court enters this Order with consent of counsel for the parties without extending the Temporary Restraining Order currently in effect.

        NOW THEREFORE it is Ordered that the hearing on the Plaintiffs' Motion for Preliminary Injunction is continued until August 17, 2022.

                            _____

                              Superior Court Judge



STATE OF NORTH CAROLINA      IN THE GENERAL COURT OF JUSTICE
                                   SUPERIOR COURT DIVISION
COUNTY OF NEW HANOVER      FILE NO.: 22-CVS-001507

|  |  |  |
|---|---|---|
| MARK EASTHAM<br>And PETER SPARK, | ) |  |
|  | ) |  |
|        Plaintiffs, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) | **ORDER** |
| PORT CITY CONTRACTING<br>SERVICES, INC., ROBERT P. SHARPE,<br>STONE BAY TACTICAL, LLC, and SRS<br>SUPPLY, LLC, | )<br>)<br>)<br>) |  |
|  | ) |  |
|        Defendants. | ) |  |

THIS CAUSE came on to be heard by the undersigned Superior Court judge upon a request by the parties to resolve a dispute on July 19, 2022, about the scope of depositions to be taken of Port City Contracting Services, Inc. and Robert P. Sharpe pursuant to the terms of a Temporary Restraining Order entered on May 4, 2022. The Court heard arguments of counsel in chambers via telephone, in which counsel for both parties informed the Court that the depositions had been postponed to this date by consent and that a hearing on the Plaintiffs' request for a Preliminary Injunction had likewise been continued until August 4, 2022. Counsel for the Plaintiffs contended that the questions were within the scope of expedited discovery granted in the TRO. Counsel for the Defendants contended that the Plaintiffs were exceeding the scope of the testimony the TRO ordered them to provide. Counsel for the Plaintiffs contended that because the Preliminary Injunction hearing in this matter had been continued until August 4, and consequently the relevant facts

related to the TRO and Preliminary Injunction had changed in scope, Plaintiffs had the right to examine the Defendants on issues outside the original limitations set forth in the TRO. Counsel for the Defendants contended the deponents were not prepared to answer questions beyond the scope of the expedited discovery order to address the case generally.

AND THE COURT, having heard the arguments of counsel, in its discretion instructed counsel to identify a mutually agreeable date prior to the Preliminary Injunction hearing to hold depositions of Port City Contracting Services, Inc. and Sharpe and ordered counsel for those Defendants to prepare them for all relevant issues pursuant to Rule 30 of the North Carolina Rules of Civil Procedure.

NOW, THEREFORE, it is Ordered that the Depositions of Port City Contracting Services, Inc. and Sharpe are postponed until 10 a.m. on July 26, 2022, at which time the Plaintiffs will depose them for purposes of the Motion for Preliminary Injunction and the hearing on such Motion on any substantive issues in the case, subject to the timely identification of issues for corporate designation purposes under Rule 30(b)(6). Notwithstanding the foregoing, Defendants' right to file a motion for protective order to limit or prevent an additional deposition of Port City Contracting Services, Inc. and/or Sharpe is hereby preserved.

This the 20 day of July 2022.

_____

Hon. G. Frank Jones



STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

FILED

2022 SEP 26  A 9 22

NEW HANOVER CTY.. C.S.C.

BY _____

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.: 22-CVS-001507

MARK EASTHAM
and PETER SPARK

Plaintiffs

v.

PORT CITY CONTRACTING
SERVICES, INC., ROBERT P.
SHARPE, STONE BAY TACTICAL,
LLC, and SRS SUPPLY, LLC,
                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

PRELIMINARY RESTRAINING ORDER

THIS MATTER came before this Court on September 8, 2022, on Plaintiffs' Motion for

Preliminary Restraining Order. Based on the Verified Amended Complaint, the Affidavits,

Deposition transcripts, the Court's record, and other materials provided to the Court, and the

arguments of counsel, the Court FINDS AND ORDERS THE FOLLOWING:

**FINDINGS OF FACT**

1.    Mark Eastham is an adult individual and citizen and resident of Minnesota.

2.    Peter Spark is an individual and is a citizen and resident of New Hanover County,

North Carolina.

3.    Defendant Port City Contracting Services, Inc. ("PCCS") is a North Carolina

corporation with its registered agent and principal offices in New Hanover County, North

Carolina.

4.    Defendant Robert P. Sharpe ("Sharpe") was the Chief Executive Officer ("CEO")

of Defendant PCCS and is a citizen and resident of New Hanover County, North Carolina.

5.      Defendant PCCS is in the business of supplying diabetes testing strips and whose primary customer is the United States Department of Veterans Association.

6.      Defendant PCCS is a service-disabled veteran owned business.

7.      Plaintiffs are shareholders and former officers of Defendant PCCS. Together, the Plaintiffs are the owners of 40% of Class B shares of Defendant PCCS.  Eastham owns 25% of Class B shares and Spark owns 15% of Class B shares of Defendant PCCS.

8.      Sharpe is a shareholder of Defendant PCCS and is the owner of 100% of Class A shares of Defendant PCCS, and the owner of approximately 40% of Class B shares of Defendant PCCS.

9.      Pursuant to the Statement of Shareholder of Defendant PCCS only Class A shareholders have the right to vote during shareholder meetings, and effectively hold all of the power to run Defendant PCCS.

10.     Sharpe is the majority owner of shares of Defendant PCCS, and as such owes a fiduciary duty to the minority shareholders of Defendant PCCS, which includes Plaintiffs.

11.     PCCS was originally formed as a North Carolina limited liability company.

12.     Eastham was an owner of membership interest in PCCS when it was a limited liability company.

13.     On June 30, 2020, PCCS was converted from a North Carolina limited liability company to a North Carolina corporation.

14.     As a former owner of membership interests in PCCS, Eastham recognized personal income, which was recognized on a K-1 issued by the company.

15.     In December 2021, PCCS paid the tax liability for the income recognized by Eastham when PCCS converted from a limited liability company to a corporation.

16.   At the same time, Defendant Sharpe's similar tax liability was also paid by PCCS.

17.   Throughout Eastham's employment with Defendant PCCS, Eastham served as Chief Operating Office and President.

18.   Throughout Spark's employment with Defendant PCCS, Spark served as Chief Financial Officer and Secretary of the Board of Directors.

19.   Because Defendant PCCS was a startup company, it could not afford to pay the agreed upon salaries of key employees until its revenues grew.

20.   As a result, certain key employees, including Plaintiffs Eastham and Spark, agreed to defer receipt of their full wages until Defendant PCCS had sufficient financial means to pay their deferred compensation.

21.   Plaintiffs Eastham's and Spark's accrued deferred compensation was tracked and recorded on the books and records of PCCS starting in August 2020.

22.   Sharpe was aware of PCCS' obligation to pay deferred compensation to Plaintiffs Eastham and Spark has been on the books and records of PCCS since August 2020.

23.   In January 2021, Eastham left the employ of PCCS.  At the time, Eastham owned 3,194 shares of PCCS.

24.   On June 7, 2021, PCCS and Eastham entered into a Stock Redemption and Release Agreement ("Release Agreement") wherein PCCS agreed to purchase and redeem 1,916 of Eastham shares in PCCS in exchange for $60,000.00.

25.   The payments under the Release Agreement were triggered by the sale of diabetic test strips.  As of September 16, 2021, PCCS had sold sufficient diabetic test strips to pay Eastham $23,830.00 under the Release Agreement.  PCCS failed to pay Eastham.

26.   As of December 2021, PCCS had approximately $600,000.00 in its bank accounts.  At this time, PCCS had sufficient funds to pay Eastham under the Release Agreement but failed to make any payment under the Release Agreement.

27.   PCCS had sufficient funds from January 2022-April 2022, to pay Eastham under the Release Agreement but failed to make any payment.

28.   Later in 2021, Eastham returned to PCCS as an employee to serve as the COO.

29.   Defendant PCCS experienced significant revenue and profit growth in 2020 and 2021.

30.   On or about December 10, 2021, Plaintiff Eastham, Defendant Sharpe, Jay Graves, Ryan Albert, and Adrianne George, who was the president of PCCS, held a meeting to discuss compensation ("December Meeting").

31.   At the time of the December Meeting, Eastham, Spark, and Sharpe were three Directors for Defendant PCCS and members of its compensation committee.

32.   At the December Meeting, Sharpe announced that he was unilaterally giving himself a significant increase in salary and an annual $100,000.00 bonus.  Sharpe admitted that the bonus was based on the fact that he was owed deferred compensation in the amount of $170,000.00 from PCCS.

33.   Sharpe also used Defendant PCCS funds to lease a car for his own personal use over the objection of the other key employees and members of the compensation committee.

34.   Eastham objected to Sharpe's plan to dramatically increase his pay and to issue himself a bonus, given that Defendant PCCS had promised to pay the deferred compensation to key employees when it was financially able.

35.     At the time of the December 10, 2021, PCCS owed $357,500.00 in deferred compensation to it key employees.

36.     Eastham informed Sharpe that Defendant PCCS needed to pay the deferred compensation as it had promised its key employees.  Sharpe did not object to Eastham's position but stated that he didn't know that PCCS had such a large amount of deferred compensation on its books and records.

37.     Following the December Meeting, Eastham, on behalf of the other minority shareholders, sent an email to Sharpe stating that the deferred compensation should be paid before Defendant PCCS paid additional salary and bonuses to Sharpe.

38.     After the December Meeting, and after the email from Eastham, Defendant Sharpe held a telephone call with Plaintiffs Eastham and Spark, and Adrianne George.  During this call, the deferred compensation was discussed, and Sharpe admitted that maybe he was wrong as to the deferred compensation issue.

39.     At no time during the December Meeting, or after, did Sharpe state that Plaintiffs Eastham or Spark were not owed deferred compensation because they were issued equity in PCCS equal to the amount of deferred compensation that was reflected on the books and records of PCCS.

40.     On or about December 14, 2021, Sharpe informed both Eastham and Spark that they were being terminated from employment and removed as officers and directors of Defendant PCCS.

41.     Following Eastham's termination, Sharpe threatened that, if Eastham took action against Defendant PCCS, then Sharpe would "file a criminal complaint" that "will be federal" against Eastham.

42. Following Spark's, who is a UK national, termination, Sharpe threatened to have him deported.

43. Sharpe also attempted to have Spark arrested for stealing Defendant PCCS property. After investigating the complaint, the local authorities decided that there was no support for any criminal actions against Spark and dropped the matter.

44. Sharpe exercises complete control over Defendant PCCS as its only voting shareholder.

45. In the fall of 2021, Sharpe unilaterally decided that he wanted to start a new company to sell weapons to military veterans. The stated business of selling weapons was different than PCCS' business.

46. Initially, this company was called Stone Bay Tactical and was a DBA of PCCS. A Federal Firearms License was issued to PCCS but listed the business name of Stone Bay Tactical.

47. Ultimately, Stone Bay Tactical, LLC was formed with all of the membership interests being owned by Sharpe.

48. Stone Bay Tactical, LLC's principal place of business is the same address of PCCS.

49. Sharpe used funds of Defendant PCCS to capitalize and purchase inventory for Stone Bay Tactical, LLC.

50. This included a cache of weapons with a stated value of $120,400.00 ("Stone Bay Weapons"). A list of the Stone Bay weapons is attached hereto as Exhibit A.

51.   Sharpe also used the warehouse owned by Defendant PCCS to store the Stone Bay Weapons, inventory, and other materials of Stone Bay Tactical, LLC and used the employees of Defendant PCCS to do work for Stone Bay Tactical, LLC.

52.   For instance, Sharpe hired David Danel to be the president of Stone Bay Tactical, LLC. However, David Danel's salary was paid by PCCS.

53.   As part of his responsibilities, David Danel was to open a bank account in the name of Stone Bay Tactical, LLC and to obtain a federal firearms license. Mr. Danel was unable to do either because of the poor financial condition of Sharpe, who was the owner of Stone Bay Tactical, LLC.

54.   Sharpe traveled to Las Vegas on behalf of Stone Bay Tactical, LLC to attend a military trade show. Sharpe used PCCS funds to pay for the trip and for other expenses during the show.

55.   The military show had nothing to do with the business of PCCS.

56.   The PCCS funds used by Stone Bay Tactical, LLC were never paid back to PCCS and there is no intercompany agreement between the entities recognizing that Stone Bay Tactical, LLC owes a debt to PCCS.

57.   Sharpe also used PCCS funds to purchase inventory for SRS Supply, LLC.

58.   SRS Supply, LLC was a company formed by Sharpe and which he owned all of the membership interests.

59.   SRS Supply, LLC's principal place of business is the same address as PCCS.

60.   SRS Supply, LLC was formed in order to sell PPE materials on Ebay.

61.   Sharpe used PCCS funds to purchase inventory for SRS Supply, LLC.

62.   Sharpe used PCCS employees to do work for SRS Supply, LLC.

63.     Sharpe also used Defendant PCCS' warehouse to store inventory and other materials of SRS Supply, LLC.

64.     The PCCS funds used by SRS Supply, LLC were never paid back to PCCS and there is no intercompany agreement between the entities recognizing that SRS Supply, LLC owes a debt to PCCS.

65.     Sharpe, Stone Bay Tactical, LLC or SRS Supply, LLC have converted the assets of Defendant PCCS.

66.     Sometime in March 2022, Sharpe left the United States and traveled to the Ukraine.

67.     Initially, Sharpe represented that he was going to the Ukraine to sell body armor to the Ukraine government, which had nothing to do with the business of PCCS.

68.     However, while in the Ukraine, Sharpe represented to various military officers at the U.S. Embassy in Poland that he was resigning his position as CEO of PCCS and was going to work as a foreign agent.

69.     Sharpe also represented to the General Court of Justice, Superior Court Division, Guilford County, North Carolina that he traveled to the Ukraine to provide humanitarian aid to the refugees fleeing Ukraine due to the military advancements of the Russian army.

70.     Ultimately, on March 20, 2022, Sharpe, in email, which was published to a number of third-parties, resigned his position as the CEO of PCCS and represented that he was going to fight for the Ukrainian military in their defense of the invasion by Russia.

71.     In the March 20, 2022 email, Sharpe published to third-parties that Plaintiffs Eastham and Sharpe had defrauded PCCS, intended to "steal company business", and had embezzled from the company.

72.    On April 3, 2022, Sharpe sent a text to Mark Eastham wherein Sharpe apologized to Mr. Eastham for "anything I did to hurt you" and further stated that he was "serving in Ukraine. I am going to enlist and try and find some peace through service."

73.    Sharpe used the funds of Defendant PCCS to pay for his travel and other costs while in the Ukraine.

74.    Sharpe has not reimbursed PCCS for the funds he used while in the Ukraine and there is no agreement with PCCS for the repayment of these amounts.

75.    When Sharpe was in the Ukraine, he also used funds of Defendant PCCS to purchase weapons and other military supplies that he intended to sell or give to the Ukrainian military.

76.    The weapons that Sharpe purchased with Defendant PCCS funds are currently being stored in a warehouse owned or leased by Defendant PCCS.

77.    The weapons purchased by Sharpe with Defendant PCCS funds have no relationship to the business of Defendant PCCS.

78.    Despite his written recognition as the CEO of Defendant PCCS, Sharpe continued to be a signatory on the bank accounts for the company and continued to control debits and withdraws from the company bank account.

79.    In addition, Sharpe, while still in the Ukraine, and after he resigned as CEO, terminated the employment of the president of PCCS, Adrianne George.  Sharpe did not provide any justification for the termination.

80.    As a result, on March 25, 2022, Ryan Albert, who is a license pharmacist, and was the pharmacist for PCCS, resigned from PCCS.

81.   In March 2022, there were few individuals that worked at Defendant PCCS, and, consequently, there was little to no supervision of Sharpe's activities as they relate to Defendant PCCS.

82.   Currently, there are only two officers of PCCS, Holly Grange, CEO, and Michael Rudner, President.

83.   On February 4, 2022, Plaintiffs, through counsel, made demand on PCCS for payment of their deferred compensation, payment under the Release Agreement, and for PCCS to investigate the actions of Sharpe.

84.   PCCS never responded to the February 4, 2022, letter.

85.   Defendants have failed to pay Plaintiffs the deferred compensation.

86.   On February 28, 2022, by and through counsel, Eastham made a written demand on Defendant PCCS pursuant to N.C. Gen. Stat. §55-16-02 for the inspection of corporate books and records.

87.   Defendant PCCS did not respond to the February 28, 2022, demand for inspection of the corporate records.

88.   On July 13, 2022, after the filing of this action, PCCS responded to the February 28, 2022, demand but failed to provide all of the requested and required information.

89.   Sharpe, as the majority shareholder, and while he was the CEO of PCCS, failed to follow the By-Laws and other corporate governing documents for the corporation.

90.   On May 4, 2022, the Plaintiffs filed a Verified Complaint bringing claims against PCCS and Sharpe.

91.   On May 4, 2022, the Court entered a Temporary Restraining Order and ordered expedited discovery.

92.    As part of the expedited discovery order, PCCS was to provide the location of any and all bank accounts in the name of PCCS, to produce corresponding bank statements from December 10, 2021, to the present, and to identify and provide the location of all assets of PCCS.

93.    After the filing of this action, Sharpe sent a text message to David Danel wherein Sharpe accused David Danel of trying to harm Sharpe and PCCS. Sharpe further stated that he "was planning to let your betrayals go and move on. Not anymore." During the deposition of Sharpe, he stated that part of the alleged betrayals referenced in the text message was that he alleged that David Danel was trying to steal certain business from PCCS. Sharpe later admitted that he had offered to sell David Danel the same business he accused Mr. Danel of trying to steal, and that he also intended to offer to sell the business to the Plaintiffs, if Mr. Danel would not purchase the business.

94.    On May 4, 2022, Plaintiffs, through counsel, sent a demand letter to PCCS pursuant to N.C. Gen. Stat. §55-7-42 and demanded that the company investigate the claims against Sharpe.

95.    On May 17, 2022, PCCS responded to the May 4, 2022, demand letter and refused to bring claims against Sharpe.

96.    On May 17, 2022, PCCS produced certain records in response of the expedited discovery order. The records produced included bank statements from First National Bank.

97.    The First National Bank statements showed that in December 2021, PCCS had approximately $600,000.00 in its bank accounts but by May 2022 the bank accounts had zero or deficient amounts.

98.    On May 31, 2022, a mediation was conducted in this action. The mediation was requested by Defendants.

99.   The mediation quickly ended in an impasse and no settlement offers were made by Defendants despite their request to conduct the early mediation.

100.   On June 7, 2022, Sharpe formed G2G, LLC, a North Carolina limited liability company.

101.   Defendants did not disclose the formation of G2G, LLC to Plaintiffs.

102.   Sharpe has not identified or provided any evidence of what type of business G2G, LLC will conduct.

103.   On June 13, 2022, PCCS responds to a New Hanover County Demand Upon Corporate Officer or Agent, which was issued in another action brought against PCCS and Sharpe and wherein a judgment was entered against PCCS for breach of contract, tortious interference with contract, fraud, and unfair and deceptive trade practices.

104.   In response, PCCS disclosed that it had opened a new bank account at First Citizen's Bank and that the U.S. Government owed PCCS $172,608.00 for the supply of diabetic test strips.  PCCS did not disclose any other physical assets of the corporation.

105.   PCCS and Sharpe failed to disclose the new bank account or the account payable asset to Plaintiffs.

106.   On June 22, 2022, Plaintiffs filed a Verified Amended Complaint in this action bringing additional derivative claims against Sharpe and added Stone Bay Tactical, LLC and SRS Supply, LLC as party defendants.

107.   Plaintiffs brought fraudulent transfer claims against Stone Bay Tactical, LLC and SRS Supply, LLC and sought prejudgment attachment.

108. On July 27, 2022, the Court entered an order of prejudgment attachment against Stone Bay Tactical, LLC and SRS Supply, LLC. As part of the Order, the Court found that Plaintiffs are creditors of Defendants and that there are insufficient funds to satisfy their debt.

109. On July 20, 2022, Defendants produced additional documents to Plaintiffs. As part of this production, it was disclosed that the $172,608.00 payment from the U.S. Government was deposited on June 23, 2022, into an account in the name of Grange Council, LLC.

110. July 26, 2022, PCCS and Sharpe were deposed.

111. During the deposition, Defendants disclosed that Sharpe directed the U.S. Government to deposit the $172,608.00 into the account of Grange Council, LLC, that there was no relationship between PCCS and Grange Council, LLC, and there was no agreement related to the PCCS funds between PCCS and Grange Council, LLC.

112. During the deposition, and based on additional records produced, it was disclosed that the PCCS account at First Citizen's Bank as of July 2022 had a negative balance.

113. As of July 2022, all of the bank accounts in the name of PCCS had either a zero balance or a negative balance.

114. Sharpe has ignored the corporate formalities of PCCS, has conducted PCCS as if he is the sole owner, and has used PCCS assets as if they were his own personal property.

115. During the deposition, Defendants further testified that PCCS was still in business and that it was making bids and receiving awards from the U.S. Government.

116. In August 2022, PCCS was paid approximately $500,000.00 from the U.S. Government. PCCS was not able to account for these funds.

117. Sharpe has represented to third-parties that neither he nor PCCS will ever pay Plaintiffs Eastham or Spark any amount owed to them for their deferred compensation, the Release Agreement, or as shareholders of PCCS.

## CONCLUSION OF LAW

118. This Court has subject matter jurisdiction over this action pursuant to N.C. Gen. Stat. §7A-243 and other applicable bases for jurisdiction.

119. This Court has personal jurisdiction over the Defendants pursuant to N.C. Gen. Stat. §1-75.4 and other applicable bases for jurisdiction.

120. Venue is proper in this Court pursuant to N.C. Gen. Stat. §§1-79, 1-82, and N.C. Gen. Stat. §55-14-31, and other applicable bases for venue.

121. Preliminary relief may be issued by the Court: "(1) if a plaintiff is able to show likelihood of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation." *Redlee/SCS, Inc. v. Pieper*, 153 N.C. App. 421, 423, 571 S.E.2d 8, 11 (2002) (quoting *A.E.P. Industries v. McClure*, 308 N.C. 393, 401, 302 S.E.2d 754, 759-60 (1983); *SED Holdings, LLC v. 3 Star Properties, LLC*, 246 N.C. App. 632 (2016); *see also* Rule 65(b) of the North Carolina Rules of Civil Procedure.

122. Plaintiffs have established through the verified pleadings, and attached and incorporated exhibits, the affidavits, the deposition transcripts, the Court's record, and other materials provided during the hearing, that they have a likelihood of success on the merits of its claims brought against Defendants.

123. Plaintiffs have established through the verified pleadings, and the attached and incorporated exhibits, the affidavits, the deposition transcripts, the Court's record, and the other

materials provided during the hearing, that they will suffer irreparable harm if the temporary injunction is not granted by this Court.

124. Plaintiffs have established through the verified pleadings, and the attached and incorporated exhibits, the affidavits, the deposition transcripts, the Court's record, and other materials provided during the hearing, that a temporary injunction in this action is necessary for the protection of Plaintiffs' rights and to maintain the status quo until the conclusion of this action.

125. This Court concludes that "findings of fact made during a preliminary injunction proceeding are not binding upon a court at a trial on the merits." *Lohrmann v. Iredell Mem'l Hosp., Inc.*, 174 N.C. App. 63, 75, 620 S.E.2d 258, 265 (2005).

126. This Court has considered the necessity of a bond under Rule 65 of the North Carolina Rules of Civil Procedure and finds, as further set forth below, that a nominal bond will suffice to protect Defendants.

BASED ON THE FINDINGS OF FACT AND CONCLUSIONS OF LAW, the arguments of counsel, the Court hereby grants Plaintiffs' Motion and ORDERS as follows:

127. Other than for business reasons, the bank accounts of Defendant PCCS will be frozen, and Sharpe will not have access to any account of Defendant PCCS;

128. Defendants shall disclose to Plaintiffs within ten (10) days from opening, the identity, with account number, of any new bank account opened in the name of PCCS, Stone Bay Tactical, LLC, or SRS Supply, LLC;

129. The other physical assets of Defendant PCCS will be frozen and will not be disposed of, other than for ordinary business reasons;

130. Any funds generated by the operation of PCCS or by the sale of any assets of PCCS shall be deposited only in a bank or other financial account in the name of PCCS;

131. Sharpe will not have access or control over any asset of Defendant PCCS;

132. The Stone Bay Weapons will be held at the PCCS warehouse;

133. PCCS can only sell or dispose the Stone Bay Weapons for U.S. currency with the proceeds of any sale or disposition to be deposited into a trust account or escrow account identified by Plaintiffs. PCCS shall not donate or exchange the Stone Bay Weapons for any other type of consideration, in kind or otherwise, and also may not gift the Stone Bay Weapons. Both Plaintiffs and Defendants shall have access to the account only to monitor deposits and the current balance. The cost of the escrow agent or any costs related to maintaining the trust or escrow account may be withdrawn from the proceeds held in the account. Any costs of the escrow agent or by maintaining the trust account not covered by the proceeds shall by paid by Defendants. The proceeds will not be released from said trust or escrow account until so ordered by the Court and shall serve as additional bond pursuant to Rule 65 of the North Carolina Rules of Civil Procedure;

134. Sharpe is prohibited from publishing defamatory statements about Eastham or Spark;

135. The Five Hundred and No/100 Dollars ($500.00) Plaintiffs deposited with the New Hanover County Clerk of Court as part of the Temporary Restraining Order shall serve as an additional bond and held by the Clerk of Court until further order of this Court;

136.     This Preliminary Injunction Order may be shared with any financial institution or

other third-party necessary to effectuate the restrictions set forth herein; and

SO ORDERED, this the 21 day of September 2022.

The Honorable Phyllis M. Gorham
Superior Court Judge Presiding

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO: 22-CVS-001507

)
MARK EASTHAM
And PETER SPARK,

      Plaintiffs,

)
)
)
)
)

vs.

)
)

ORDER FOR EXTENSION OF TIME

)
PORT CITY CONTRACTING
SERVICES, INC., ROBERT P.
SHARPE, STONE BAY TACTICAL,
LLC, and SRS SUPPLY, LLC,

      Defendants.

)
)
)
)
)
)
)

---

THIS CAUSE, appearing to the undersigned as Defendants PORT CITY CONTRACTING SERVICES, INC., ROBERT P. SHARPE, STONE BAY TACTICAL, LLC, and SRS SUPPLY, LLC's Motion for Extension of Time to respond to the Second set of Discovery Requests is made for good cause:

IT IS, THEREFORE, ORDERED that the time within which Defendants may respond to the Discovery Requests is hereby extended to and includes the 18th of December 2022

This the ___9___ day of __November__, 2022.

_____

Deputy/Assistant Clerk of Court

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO: 22-CVS-001507

MARK EASTHAM
And PETER SPARK,

     Plaintiffs,

vs.

PORT CITY CONTRACTING
SERVICES, INC., ROBERT P.
SHARPE, STONE BAY TACTICAL,
LLC, and SRS SUPPLY, LLC,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER FOR EXTENSION OF TIME

     THIS CAUSE, appearing to the undersigned as Defendants PORT CITY CONTRACTING SERVICES, INC., ROBERT P. SHARPE, STONE BAY TACTICAL, LLC, and SRS SUPPLY, LLC's Motion for Extension of Time to respond to the Plaintiff's First Request for Admissions is made for good cause:

     IT IS, THEREFORE, ORDERED that the time within which Defendants may respond to the Plaintiff's First Request for Admissions is hereby extended to and includes the 18th of December 2022

     This the 9 day of November, 2022.

_____
Deputy/Assistant Clerk of Court



STATE OF NORTH CAROLINA **FILED** IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF NEW HANOVER            FILE NO.: 22-CVS-001507

2022 OCT 11 P 4 07

NEW HANOVER COUNTY C.S.C.

BY _____

MARK EASTHAM
And PETER SPARK,                )
                                )
        Plaintiffs,             )
                                )
vs.                             )
                                )
                                )   **ORDER ON MOTION FOR ORDER**
PORT CITY CONTRACTING           )         **TO SHOW CAUSE**
SERVICES, INC., ROBERT P. SHARPE,)
STONE BAY TACTICAL, LLC, and SRS )
SUPPLY, LLC,                    )
                                )
        Defendants.             )
                                )

THIS CAUSE came before the undersigned judge at the October 6, 2022, non-jury civil session of New Hanover County Superior Court on the Plaintiffs' Motion for Order to Show Cause why Defendant Robert Sharpe should not be held in civil contempt. The Plaintiffs were represented by their attorney, Samuel Potter, and the Defendant was represented by his attorney, W. Cory Reiss.

AND THE COURT, having considered the motion, affidavit, and exhibits filed by the Plaintiffs, arguments of counsel, and other materials submitted concludes in its discretion that the Motion should be denied.

FURTHER, per the stipulation of the Parties, and the undersigned's acceptance, any future claimed violations of the Preliminary Injunction, signed by the undersigned and entered by the Court on September 21, 2022, shall be heard by the undersigned.

-2-

NOW THEREFORE, it is ORDERED that the Motion is DENIED, provided however, that any future claimed violations of the Preliminary Injunction shall be heard and decided by the undersigned.

This the 10 day of October 2022.

Hon. Phyllis M. Gorham
Senior Resident Superior Court Judge

STATE OF NORTH CAROLINA    IN THE GENERAL COURT OF JUSTICE
COUNTY OF NEW HANOVER  FILED SUPERIOR COURT DIVISION
              22-CVS-001507

         2022 NOV 17 P 2: 53
MARK EASTHAM and PETER SPARK,  )

         NEW HANOVER CO., C.S.C.
 Plaintiffs,        )
         BY_____
          )
v.          )   **STIPULATION**
          )
PORT CITY CONTRACTING SERVICES, )
INC., ROBERT P. SHARPE, STONE BAY )
TACTICAL, LLC, and SRS SUPPLY, LLC, )
          )
 Defendants.       )
          )
          )
          )
          )

NOW COME Defendants PORT CITY CONTRACTING SERVICES, INC., ROBERT P. SHARPE, STONE BAY TACTICAL, LLC, AND SRS SUPPLY, LLC and Plaintiffs by and through undersigned counsel and hereby stipulate as follows:

1. That counsel for Defendants be substituted in that the law firm of Howard, Stallings, From, Atkins, Angell & Davis will commence representation of Defendants and the law firm of Reiss & Nutt, PLLC will withdraw from representation of Defendants effective November 10, 2022, at 5:00 p.m.

This the 10th day of November 2022.

         **HOWARD, STALLINGS, FROM,**
         **ATKINS, ANGELL & DAVIS, P.A.**

         _____
         Robert H. Jessup, (State Bar No.: 42945)

---

**HOWARD, STALLINGS, FROM, ATKINS, ANGELL & DAVIS, P.A.**
**Attorneys at Law**
**Raleigh, North Carolina**

Ryan A. McCollum, (State Bar No.: 59392)
Post Office Box 12347
Raleigh, North Carolina 27605
Email: rjessup@hsfh.com; rmccollum@hsfh.com
Telephone: (919) 821-7700


**REISS & NUTT, PLLC**


W. Cory Reiss
Kyle J. Nutt
1221 Floral Parkway, Suite 104
Wilmington, NC 28403
Email: wcreiss@reissnutt.com
Telephone: (910) 420-4674


**DAVIS HARTMAN WRIGHT, LLP**


Thomas S. Babel
P.O. Box 11320 (28404)
2819 Park Avenue, Suite B
Wilmington, NC 28403
Email: tsb@dhwlegal.com
Telephone: (910) 756-4070

---

**HOWARD, STALLINGS, FROM, ATKINS, ANGELL & DAVIS, P.A.**
**Attorneys at Law**
**Raleigh, North Carolina**



STATE OF NORTH CAROLINA SUPERIOR COURT THE GENERAL COURT OF JUSTICE
NEW HANOVER COUNTY                        SUPERIOR COURT DIVISION
COUNTY OF NEW HANOVER                     FILE NO.: 22-CVS-001507

**FILED**
CLERK OF SUPERIOR COURT
NEW HANOVER COUNTY
NOV 1 0 2022
_10:43_ am/pm
By_____ Dep/Asst CSC

MARK EASTHAM                        )
And PETER SPARK,                    )
            Plaintiffs,             )
                                    )
vs.                                 )
                                    )   **STIPULATED PROTECTIVE ORDER**
PORT CITY CONTRACTING               )
SERVICES, INC., ROBERT P. SHARPE,   )
STONE BAY TACTICAL, LLC, and SRS    )
SUPPLY, LLC,                        )
                                    )
            Defendants.             )
_____)

It appearing that the above-captioned action is likely to involve the disclosure of confidential information, it is ORDERED as follows:

1.      The parties to this litigation stipulate that any communications between them and their respective attorneys on or after January 6, 2022, are presumed to be privileged and need not be identified on their privilege logs.

2.      Any party to this litigation and any third-party shall have the right to designate as "Confidential" and subject to this Protective Order any information, document, or thing, or portion of any document or thing: (a) that contains trade secrets, competitively sensitive technical, marketing, financial, sales or other confidential business information, or (b) that contains private or confidential personal information, or (c) that contains information received in confidence from third parties, or (d) which the producing party otherwise believes in good faith to be entitled to protection under Rule 26(c) of the North Carolina Rules of Civil

1

Procedure. Any party to this litigation or any third party covered by this Order, who produces or discloses any Confidential material, including without limitation any information, document, thing, interrogatory answer, admission, pleading, or testimony, shall mark the same with the foregoing or similar legend: "CONFIDENTIAL" or "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" (hereinafter "Confidential").

3. All Confidential material shall be used by the receiving party solely for purposes of the prosecution or defense of this action, shall not be used by the receiving party for any business, commercial, competitive, personal or other purpose, and shall not be disclosed by the receiving party to anyone other than those set forth in Paragraph 3, unless and until the restrictions herein are removed either by written agreement of counsel for the parties, or by order of the Court.

4. Confidential material and the contents of confidential material may be disclosed only to the following individuals under the following conditions:

a. Outside counsel (herein defined as any attorney at the parties' outside law firms) and relevant in-house counsel for the parties;

b. Outside experts or consultants retained by outside counsel for purposes of this action, provided they have signed a non-disclosure agreement in the form attached hereto as Exhibit A;

c. Secretarial, paralegal, clerical, duplicating and data processing personnel of the foregoing;

d. The Court and court personnel;

e. Any deponent may be shown or examined on any information,

2

document or thing designated Confidential if it appears that the witness authored or received a copy of it, was involved in the subject matter described therein or is employed by the party who produced the information, document or thing, is or was at the relevant time employed by a parent, subsidiary or affiliated corporation of the party who produced the information, or if the producing party consents to such disclosure;

      f.     Vendors retained by or for the parties to assist in preparing for pretrial discovery, trial and/or hearings including, but not limited to, court reporters, litigation support personnel, jury consultants, individuals to prepare demonstrative and audiovisual aids for use in the courtroom or in depositions or mock jury sessions, as well as their staff, stenographic, and clerical employees whose duties and responsibilities require access to such materials;

      g.     The parties. In the case of parties that are corporations or other business entities, "party" shall mean employees who are involved in the prosecution or defense of this action; and

      h.     Others by consent. Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered, provided they have signed a non-disclosure agreement in the form attached hereto as Exhibit A.

      5.     Confidential material shall be used only by individuals permitted access to it under Paragraph 3. Confidential material, copies thereof, and the information contained therein, shall not be disclosed in any manner to any other

3

individual, until and unless (a) outside counsel for the party asserting confidentiality waives the claim of confidentiality, or (b) the Court orders such disclosure.

6.    With respect to any depositions that involve a disclosure of Confidential material of a party to this action, and subject to any other party's right to produce the deposition in response to a pending motion, such party shall have until thirty (30) days after receipt of the deposition transcript within which to inform all other parties that portions of the transcript are to be designated Confidential, which period may be extended by agreement of the parties. No such deposition transcript shall be disclosed to any individual or entity other than those described in Paragraph 3 above and the deponent during these thirty (30) days, and no individual attending such a deposition shall disclose the contents of the deposition to anyone other than those described in Paragraph 3 above during said thirty (30) days. Upon being informed that certain portions of a deposition are to be designated as Confidential, all parties shall immediately cause each copy of the transcript in its custody or control to be appropriately marked and limit disclosure of that transcript in accordance with Paragraphs 2 and 3.

7.    If counsel for a party receiving documents or information designated as Confidential hereunder objects to such designation of any or all of such items, the following procedure shall apply:

      a.    Counsel for the objecting party shall serve on the designating party or third party a written objection to such designation, which shall describe with particularity the documents or information in question and

4

shall state the grounds for objection. Counsel for the designating party or third party shall respond in writing to such objection within 14 days and shall state with particularity the grounds for asserting that the document or information is Confidential. If no timely written response is made to the objection, the challenged designation will be deemed to be void. If the designating party or nonparty makes a timely response to such objection asserting the propriety of the designation, counsel shall then confer in good faith in an effort to resolve the dispute.

b.      If a dispute as to a Confidential designation of a document or item of information cannot be resolved by agreement, the proponent of the designation being challenged shall present the dispute to the Court in accordance with Rule 26(c) of the North Carolina Rules of Civil Procedure within 14 days of the conference required by Paragraph 6(a) or at a time mutually agreeable to the parties. The document or information that is the subject of the filing shall be treated as originally designated pending resolution of the dispute.

7.      The parties and the Court recognize that each party may wish to present information marked Confidential under this Stipulated Protective Order. Documents (including briefs and pleadings) containing information marked "Confidential" may be filed under seal upon Court order.

8.      To the extent consistent with applicable law, the inadvertent or unintentional disclosure of Confidential material that should have been designated as such, regardless of whether the information, document or thing was so designated

at the time of disclosure, shall not be deemed a waiver in whole or in part of a party's claim of confidentiality, either as to the specific information, document or thing disclosed or as to any other material or information concerning the same or related subject matter. Such inadvertent or unintentional disclosure may be rectified by notifying in writing counsel for all parties to whom the material was disclosed that the material should have been designated Confidential within 14 days after disclosure. Such notice shall constitute a designation of the information, document or thing as Confidential under this Protective Order.

9.    When the inadvertent or mistaken disclosure of any information, document or thing protected by privilege or work-product immunity is discovered by the producing party and brought to the attention of the receiving party, the receiving party's treatment of such material shall be in accordance with Rule 26(b)(5)(B) of the North Carolina Rules of Civil Procedure. Such inadvertent or mistaken disclosure of such information, document or thing shall not by itself constitute a waiver by the producing party of any claims of privilege or work-product immunity in either this litigation or in any other federal or state proceeding. However, nothing herein restricts the right of the receiving party to challenge the producing party's claim of privilege if appropriate within a reasonable time after receiving notice of the inadvertent or mistaken disclosure.

10.    This Protective Order shall not deprive any party of its right to object to discovery by any other party or on any otherwise permitted ground. This Protective Order is being entered without prejudice to the right of any party to move the Court for modification or for relief from any of its terms.

11.    This Protective Order shall survive the termination of this action and shall remain in full force and effect unless modified by an Order of this Court or by the written stipulation of the parties filed with the Court.

12.    Within thirty (30) days after final conclusion of this litigation, including the exhaustion of all appeals, each party or other individual subject to the terms hereof shall be under an obligation to return to the originating source or to destroy and certify the destruction of all originals and unmarked copies of documents and things containing Confidential material. Notwithstanding the above requirements to return or destroy documents, counsel of record for the parties may retain attorney work product, including an index which refers or relates to information designated as Confidential so long as that work product does not duplicate verbatim substantial portions of the text or images of Confidential material and complete copies of all transcripts and pleadings including any exhibits attached thereto for archival purposes, subject to the provisions of this Protective Order. To the extent a party requests the return of Confidential material from the Court after the final conclusion of the litigation, including the exhaustion of all appeals, the party shall file a motion seeking such relief.

SO ORDERED this ___10___ day of _Neuuulsu_, 2022.

_____
SUPERIOR COURT JUDGE PRESIDING

7

We Consent.

W. Cory Reiss

Counsel for the Defendants

Thomas S. Babel

Counsel for the Plaintiffs

**EXHIBIT A**

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
                                                          SUPERIOR COURT DIVISION
COUNTY OF NEW HANOVER              FILE NO.: 22-CVS-001507

| | |
|---|---|
| MARK EASTHAM<br>And PETER SPARK,          )<br>         )<br>      Plaintiffs,     )<br>         )<br>vs.                   )<br>         )<br>PORT CITY CONTRACTING    )<br>SERVICES, INC., ROBERT P. SHARPE, )<br>STONE BAY TACTICAL, LLC, and SRS )<br>SUPPLY, LLC,          )<br>         )<br>      Defendants.    )<br>_____)  | STIPULATED PROTECTIVE ORDER |

I, _____, being duly sworn, state that:

1.    My address is _____.

2.    My present employer is _____ and the address
of my present employment is _____.

3.    My   present   occupation   or   job   description   is
_____.

4.    I have carefully read and understood the provisions of the Protective
Order in this case signed by the Court, and I will comply with all provisions of the
Protective Order.

9

5.    I will hold in confidence and not disclose to anyone not qualified under the Protective Order any Confidential Material or any words, summaries, abstracts, or indices of Confidential Information disclosed to me.

6.    I will limit use of Confidential Material disclosed to me solely for purpose of this action.

7.    No later than the final conclusion of the case, I will certify, in writing, the destruction of or I will return all Confidential Material and summaries, abstracts, and indices thereof which come into my possession, and documents or things which I have prepared relating thereto, to counsel for the party for whom I was employed or retained.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____                    _____
                                             Print Name: