UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

ROBERT PAUL SHARPE                          CASE NO.: 23-00607-5-DMW

    DEBTOR                                  CHAPTER 13

MARK EASTHAM AND PETER SPARK,

                Plaintiffs,           ADVERSARY PROCEEDING NO.:

v.
                                            23-00089-5-DMW
PORT CITY CONTRACTING SERVICES,
INC., ROBERT PAUL SHARPE, STONE
BAY TACTICAL, LLC AND SRS SUPPLY,
LLC.

                Defendants.


## EMERGENCY MOTION FOR SHOW CAUSE AND REQUEST FOR IMMEDIATE RELIEF

NOW COMES Mark Eastham and Peter Spark ("Movants"), through counsel, pursuant to this Court's 11 U.S.C. § 105 powers, and requests an Order for the Debtor to appear and Show Cause why he should not be sanctioned the Debtor for continually violating a court order requiring the Debtor to cease activities defaming Movants.  In support of this motion, Movants state as follows:

1.    Robert Paul Sharpe filed a voluntary Petition under Chapter 13 on March 3, 2023, and Joseph A. Bledsoe, III is the duly appointed and serving Trustee. The case remains unconfirmed.

2.    The debtor and the Movants were engaged in pre-petition litigation in New Hanover County, which was stayed upon the filing of the Debtor's petition. Movants filed proofs of claim in the Sharpe matter as well as the related corporate chapter 7 debtor, Port City Contracting Services, bearing case number 22-02917-5-DMW.

3.     The pre-petition litigation sought, among other things, specific relief from the debtor Sharpe's continuing defamatory acts against both Eastham and Spark.  As a result, the court entered a Preliminary Restraining Order, attached as *Exhibit A*.

4.     Movants sought and received a Preliminary Restraining Order on September 26, 2022, entered by the Honorable Phyllis M. Gorham which ordered, among other things, that "Sharpe is prohibited from publishing defamatory statements about Eastham or Spark".  Paragraph 134 of *Exhibit A*.

5.     Subsequent to the Preliminary Restraining Order, state court counsel for Movants was notified by Movants that Mr. Sharpe had again violated the terms of this order, and despite requests for Mr. Sharpe to comply, counsel was forced to file a Motion to Show Cause why Sharpe should not be held in civil contempt of the Preliminary Restraining Order.  The Show Cause Order is attached as *Exhibit B*.

6.     The Motion for Show Cause was heard at the Oct 6, 2022 calendar, wherein Judge Gorham denied the motion, because Mr. Sharpe had taken down the defamatory postings ahead of the hearing, purging himself of the certain and inevitable contempt order.  Upon information and belief, because Sharpe removed the postings before the hearing, Judge Gorham was powerless to sanction Sharpe.

7.     Judge Gorham, however, retained jurisdiction over the Preliminary Restraining Order, and specifically stated that she would hear any future violations of the Preliminary Restraining Order.

8.     On or about September 13, 2023, after this Court entered an order granting relief from the automatic stay to allow Movants to seek redress before Judge Gorham, counsel for the Movants reached out to the Trial Court Administrator concerning Judge Gorham's availability to hear yet another motion to show cause against the Debtor.

9.     After discussing a hearing date with counsel for the Debtor, Movant's counsel was informed that the matter was going to be removed to the bankruptcy court, and on September 22, it was removed, bearing adversary proceeding case number 23-00089-5-DMW.

10.    This Court has jurisdiction over the Debtor concerning the pre-petition Preliminary Restraining Order entered and enforced by Judge Gorham, and Movants seek immediate relief in the form of sanctions against the Debtor for continued violations of that Preliminary Restraining Order.

## REPEATED VIOLATIONS OF COURT ORDER

11.     On September 1, 2023, in direct violation of the Preliminary Restraining Order entered by Judge Gorham, the debtor directly defamed both Eastham and Spark on his Facebook account, publishing baseless and false allegations, including embezzlement, stealing, destroying work, and "stealing hundreds of thousands of dollars" among other defamatory and false allegations.  See *Exhibit C*.

12.     On Tuesday September 5, bankruptcy counsel for Movants contacted Richard Cook, Sharpe's Chapter 13 counsel, and requested that Cook instruct his client to remove the defamatory posts that were clear violations of the Gorham Order, and refrain from posting about Eastham and Spark in the future.

13.     Upon information and belief, after he spoke with his attorney about our requests on September 5, Sharpe posted that "Mark Eastham and Peter Spark have again filed legal papers to silence me about their abuse, exploitation and retaliation…"  These statements are also untrue and defamatory.  See *Exhibit D*.

14.     Despite instruction from his counsel, it became clear on Friday September 8 that Sharpe had refused to take down the defamatory posts, and doubled down by posting that he was not willing to "take down statements where I discuss abuse and exploitation".  See *Exhibit* E.

15.     Counsel for Movants again reached out to Cook, and Cook was not able to convince his client to take down the postings.  As of the filing of this motion, almost 27 days later, the original September 1 posting remains "pinned" at the top of the Debtor's Facebook page, where he "tagged" over 95 other Facebook accounts.  A recent search did not reveal the September 5th or the September 8th postings identified as Exhibits D and E.

16.     Eastham and Spark have been defamed and libeled through social media posts, directly impugning their character, their professional reputation, and possibly affecting Mr. Spark's green card status as a UK National.  After repeated attempts to have Sharpe remove the postings, Sharpe not only refused, but he continued to flout the court order directing him to "not publish defamatory statements" about Movants.

17.     Further evidence of Mr. Sharpe's abuse of process and lack of concern for this court's jurisdiction is shown by his recent federal court filing (which was received in the U.S. Mail delivery by the undersigned this afternoon, September 27, 2023), where Sharpe further defames Eastham and Spark, and attempts to sidestep the Chapter 7 Trustee's jurisdiction over the assets and claims held by PCCS by filing

a Declaratory Judgment action in the Eastern District, case number 7:23-CV-1348-M, captioned *Robert Paul Sharpe v. Peter Spark, Mark Eastham and Daniel Shoaf.*

18.     It is unclear what Mr. Sharpe's goal in filing this action is, however, there are defamatory statements concerning the Movants contained in the pleadings, establishing that Sharpe will not stop his defamatory acts without meaningful sanctions.

19.     Movants have determined, after more than a year of involvement in litigation with the Debtor, that the Debtor does not intend to comply with court orders concerning defamation of the Movants, and requests that the court order the Debtor to remove defamatory posts from all social media accounts, and that the Debtor be sanction for continued and repeated violations of the court order.

20.     Movants believe that if Debtor temporarily complies by removing the posts, that Debtor will once again violate the court order in the future, based on past experience with this Debtor, again causing harm and potentially damaging the reputations of both Movants, and possibly negatively affecting the immigration status of Mr. Spark.

21.     The Movants seek sanctions against the Debtor in an amount set by the court, but at least in the amount of $2,500 per Movant, and Movants further request that the attorneys' fees and costs associated with the filing of this action be taxed against the Debtor, an accounting of which will be provided upon request by the Court.

WHEREFORE, Movant moves the Court for the following relief:

1.     The Court enter an Order directing the Debtor to Show Cause why he should not be held in contempt, and that Debtor be directed to immediately remove any and all social media posts referencing the Movants in any capacity except as set forth below.

2.     That the Debtor be required to issue an apology and a retraction to the Movants that must be pinned to his Facebook page for a number of days equal to the number of days that his defamatory posts have been pinned, beginning September 1, 2023, as of this filing, a total of 26 days and counting.

3.     That the Debtor be ordered to cease future defamatory posts or face future additional monetary or other court-ordered sanctions.

4.     That the costs of this motion be taxed against the Debtor for failing to comply with the Preliminary Restraining Order, despite being given opportunity to

remove the posts and comply with the Order on numerous occasions prior to the filing of this Motion.

5.     That the court sanction the Debtor, in addition to the costs and fees associated with the filing of the motion, an amount not less than $2,500 for each Movant, for a total of at least $5,000.00 for the violations;

6.     Movants have such other and further relief the Court deems just and proper.

Dated: 9/27/2023          s/John C. Bircher III
                          John C. Bircher III
                          N.C. State Bar No. 24119
                          DAVIS HARTMAN WRIGHT LLP
                          209 Pollock Street
                          New Bern, NC 28560
                          Telephone/Facsimile 252-262-7055
                          Email: jcb@dhwlegal.com

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

FILED

2022 SEP 26  A 9: 22

NEW HANOVER CTY.. C.S.C.

Plaintiff BY _____

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.: 22-CVS-001507

MARK EASTHAM
and PETER SPARK

Plaintiffs

v.

PORT CITY CONTRACTING
SERVICES, INC., ROBERT P.
SHARPE, STONE BAY TACTICAL,
LLC, and SRS SUPPLY, LLC,
                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

# EXHIBIT A

PRELIMINARY RESTRAINING ORDER

THIS MATTER came before this Court on September 8, 2022, on Plaintiffs' Motion for

Preliminary Restraining Order. Based on the Verified Amended Complaint, the Affidavits,

Deposition transcripts, the Court's record, and other materials provided to the Court, and the

arguments of counsel, the Court FINDS AND ORDERS THE FOLLOWING:

## FINDINGS OF FACT

1. Mark Eastham is an adult individual and citizen and resident of Minnesota.

2. Peter Spark is an individual and is a citizen and resident of New Hanover County,

North Carolina.

3. Defendant Port City Contracting Services, Inc. ("PCCS") is a North Carolina

corporation with its registered agent and principal offices in New Hanover County, North

Carolina.

4. Defendant Robert P. Sharpe ("Sharpe") was the Chief Executive Officer ("CEO")

of Defendant PCCS and is a citizen and resident of New Hanover County, North Carolina.

5. Defendant PCCS is in the business of supplying diabetes testing strips and whose primary customer is the United States Department of Veterans Association.

6. Defendant PCCS is a service-disabled veteran owned business.

7. Plaintiffs are shareholders and former officers of Defendant PCCS. Together, the Plaintiffs are the owners of 40% of Class B shares of Defendant PCCS. Eastham owns 25% of Class B shares and Spark owns 15% of Class B shares of Defendant PCCS.

8. Sharpe is a shareholder of Defendant PCCS and is the owner of 100% of Class A shares of Defendant PCCS, and the owner of approximately 40% of Class B shares of Defendant PCCS.

9. Pursuant to the Statement of Shareholder of Defendant PCCS only Class A shareholders have the right to vote during shareholder meetings, and effectively hold all of the power to run Defendant PCCS.

10. Sharpe is the majority owner of shares of Defendant PCCS, and as such owes a fiduciary duty to the minority shareholders of Defendant PCCS, which includes Plaintiffs.

11. PCCS was originally formed as a North Carolina limited liability company.

12. Eastham was an owner of membership interest in PCCS when it was a limited liability company.

13. On June 30, 2020, PCCS was converted from a North Carolina limited liability company to a North Carolina corporation.

14. As a former owner of membership interests in PCCS, Eastham recognized personal income, which was recognized on a K-1 issued by the company.

15. In December 2021, PCCS paid the tax liability for the income recognized by Eastham when PCCS converted from a limited liability company to a corporation.

16.   At the same time, Defendant Sharpe's similar tax liability was also paid by PCCS.

17.   Throughout Eastham's employment with Defendant PCCS, Eastham served as Chief Operating Office and President.

18.   Throughout Spark's employment with Defendant PCCS, Spark served as Chief Financial Officer and Secretary of the Board of Directors.

19.   Because Defendant PCCS was a startup company, it could not afford to pay the agreed upon salaries of key employees until its revenues grew.

20.   As a result, certain key employees, including Plaintiffs Eastham and Spark, agreed to defer receipt of their full wages until Defendant PCCS had sufficient financial means to pay their deferred compensation.

21.   Plaintiffs Eastham's and Spark's accrued deferred compensation was tracked and recorded on the books and records of PCCS starting in August 2020.

22.   Sharpe was aware of PCCS' obligation to pay deferred compensation to Plaintiffs Eastham and Spark has been on the books and records of PCCS since August 2020.

23.   In January 2021, Eastham left the employ of PCCS.  At the time, Eastham owned 3,194 shares of PCCS.

24.   On June 7, 2021, PCCS and Eastham entered into a Stock Redemption and Release Agreement ("Release Agreement") wherein PCCS agreed to purchase and redeem 1,916 of Eastham shares in PCCS in exchange for $60,000.00.

25.   The payments under the Release Agreement were triggered by the sale of diabetic test strips.  As of September 16, 2021, PCCS had sold sufficient diabetic test strips to pay Eastham $23,830.00 under the Release Agreement.  PCCS failed to pay Eastham.

26.  As of December 2021, PCCS had approximately $600,000.00 in its bank accounts.  At this time, PCCS had sufficient funds to pay Eastham under the Release Agreement but failed to make any payment under the Release Agreement.

27.  PCCS had sufficient funds from January 2022-April 2022, to pay Eastham under the Release Agreement but failed to make any payment.

28.  Later in 2021, Eastham returned to PCCS as an employee to serve as the COO.

29.  Defendant PCCS experienced significant revenue and profit growth in 2020 and 2021.

30.  On or about December 10, 2021, Plaintiff Eastham, Defendant Sharpe, Jay Graves, Ryan Albert, and Adrianne George, who was the president of PCCS, held a meeting to discuss compensation ("December Meeting").

31.  At the time of the December Meeting, Eastham, Spark, and Sharpe were three Directors for Defendant PCCS and members of its compensation committee.

32.  At the December Meeting, Sharpe announced that he was unilaterally giving himself a significant increase in salary and an annual $100,000.00 bonus.  Sharpe admitted that the bonus was based on the fact that he was owed deferred compensation in the amount of $170,000.00 from PCCS.

33.  Sharpe also used Defendant PCCS funds to lease a car for his own personal use over the objection of the other key employees and members of the compensation committee.

34.  Eastham objected to Sharpe's plan to dramatically increase his pay and to issue himself a bonus, given that Defendant PCCS had promised to pay the deferred compensation to key employees when it was financially able.

35. At the time of the December 10, 2021, PCCS owed $357,500.00 in deferred compensation to it key employees.

36. Eastham informed Sharpe that Defendant PCCS needed to pay the deferred compensation as it had promised its key employees. Sharpe did not object to Eastham's position but stated that he didn't know that PCCS had such a large amount of deferred compensation on its books and records.

37. Following the December Meeting, Eastham, on behalf of the other minority shareholders, sent an email to Sharpe stating that the deferred compensation should be paid before Defendant PCCS paid additional salary and bonuses to Sharpe.

38. After the December Meeting, and after the email from Eastham, Defendant Sharpe held a telephone call with Plaintiffs Eastham and Spark, and Adrianne George. During this call, the deferred compensation was discussed, and Sharpe admitted that maybe he was wrong as to the deferred compensation issue.

39. At no time during the December Meeting, or after, did Sharpe state that Plaintiffs Eastham or Spark were not owed deferred compensation because they were issued equity in PCCS equal to the amount of deferred compensation that was reflected on the books and records of PCCS.

40. On or about December 14, 2021, Sharpe informed both Eastham and Spark that they were being terminated from employment and removed as officers and directors of Defendant PCCS.

41. Following Eastham's termination, Sharpe threatened that, if Eastham took action against Defendant PCCS, then Sharpe would "file a criminal complaint" that "will be federal" against Eastham.

42.   Following Spark's, who is a UK national, termination, Sharpe threatened to have him deported.

43.   Sharpe also attempted to have Spark arrested for stealing Defendant PCCS property.  After investigating the complaint, the local authorities decided that there was no support for any criminal actions against Spark and dropped the matter.

44.   Sharpe exercises complete control over Defendant PCCS as its only voting shareholder.

45.   In the fall of 2021, Sharpe unilaterally decided that he wanted to start a new company to sell weapons to military veterans.  The stated business of selling weapons was different than PCCS' business.

46.   Initially, this company was called Stone Bay Tactical and was a DBA of PCCS. A Federal Firearms License was issued to PCCS but listed the business name of Stone Bay Tactical.

47.   Ultimately, Stone Bay Tactical, LLC was formed with all of the membership interests being owned by Sharpe.

48.   Stone Bay Tactical, LLC's principal place of business is the same address of PCCS.

49.   Sharpe used funds of Defendant PCCS to capitalize and purchase inventory for Stone Bay Tactical, LLC.

50.   This included a cache of weapons with a stated value of $120,400.00 ("Stone Bay Weapons").  A list of the Stone Bay weapons is attached hereto as Exhibit A.

51.    Sharpe also used the warehouse owned by Defendant PCCS to store the Stone

Bay Weapons, inventory, and other materials of Stone Bay Tactical, LLC and used the

employees of Defendant PCCS to do work for Stone Bay Tactical, LLC.

52.    For instance, Sharpe hired David Danel to be the president of Stone Bay Tactical,

LLC.  However, David Danel's salary was paid by PCCS.

53.    As part of his responsibilities, David Danel was to open a bank account in the

name of Stone Bay Tactical, LLC and to obtain a federal firearms license.  Mr. Danel was unable

to do either because of the poor financial condition of Sharpe, who was the owner of Stone Bay

Tactical, LLC.

54.    Sharpe traveled to Las Vegas on behalf of Stone Bay Tactical, LLC to attend a

military trade show.  Sharpe used PCCS funds to pay for the trip and for other expenses during

the show.

55.    The military show had nothing to do with the business of PCCS.

56.    The PCCS funds used by Stone Bay Tactical, LLC were never paid back to PCCS

and there is no intercompany agreement between the entities recognizing that Stone Bay

Tactical, LLC owes a debt to PCCS.

57.    Sharpe also used PCCS funds to purchase inventory for SRS Supply, LLC.

58.    SRS Supply, LLC was a company formed by Sharpe and which he owned all of

the membership interests.

59.    SRS Supply, LLC's principal place of business is the same address as PCCS.

60.    SRS Supply, LLC was formed in order to sell PPE materials on Ebay.

61.    Sharpe used PCCS funds to purchase inventory for SRS Supply, LLC.

62.    Sharpe used PCCS employees to do work for SRS Supply, LLC.

63. Sharpe also used Defendant PCCS' warehouse to store inventory and other materials of SRS Supply, LLC.

64. The PCCS funds used by SRS Supply, LLC were never paid back to PCCS and there is no intercompany agreement between the entities recognizing that SRS Supply, LLC owes a debt to PCCS.

65. Sharpe, Stone Bay Tactical, LLC or SRS Supply, LLC have converted the assets of Defendant PCCS.

66. Sometime in March 2022, Sharpe left the United States and traveled to the Ukraine.

67. Initially, Sharpe represented that he was going to the Ukraine to sell body armor to the Ukraine government, which had nothing to do with the business of PCCS.

68. However, while in the Ukraine, Sharpe represented to various military officers at the U.S. Embassy in Poland that he was resigning his position as CEO of PCCS and was going to work as a foreign agent.

69. Sharpe also represented to the General Court of Justice, Superior Court Division, Guilford County, North Carolina that he traveled to the Ukraine to provide humanitarian aid to the refugees fleeing Ukraine due to the military advancements of the Russian army.

70. Ultimately, on March 20, 2022, Sharpe, in email, which was published to a number of third-parties, resigned his position as the CEO of PCCS and represented that he was going to fight for the Ukrainian military in their defense of the invasion by Russia.

71. In the March 20, 2022 email, Sharpe published to third-parties that Plaintiffs Eastham and Sharpe had defrauded PCCS, intended to "steal company business", and had embezzled from the company.

72.    On April 3, 2022, Sharpe sent a text to Mark Eastham wherein Sharpe apologized to Mr. Eastham for "anything I did to hurt you" and further stated that he was "serving in Ukraine. I am going to enlist and try and find some peace through service."

73.    Sharpe used the funds of Defendant PCCS to pay for his travel and other costs while in the Ukraine.

74.    Sharpe has not reimbursed PCCS for the funds he used while in the Ukraine and there is no agreement with PCCS for the repayment of these amounts.

75.    When Sharpe was in the Ukraine, he also used funds of Defendant PCCS to purchase weapons and other military supplies that he intended to sell or give to the Ukrainian military.

76.    The weapons that Sharpe purchased with Defendant PCCS funds are currently being stored in a warehouse owned or leased by Defendant PCCS.

77.    The weapons purchased by Sharpe with Defendant PCCS funds have no relationship to the business of Defendant PCCS.

78.    Despite his written recognition as the CEO of Defendant PCCS, Sharpe continued to be a signatory on the bank accounts for the company and continued to control debits and withdraws from the company bank account.

79.    In addition, Sharpe, while still in the Ukraine, and after he resigned as CEO, terminated the employment of the president of PCCS, Adrianne George. Sharpe did not provide any justification for the termination.

80.    As a result, on March 25, 2022, Ryan Albert, who is a license pharmacist, and was the pharmacist for PCCS, resigned from PCCS.

81.    In March 2022, there were few individuals that worked at Defendant PCCS, and, consequently, there was little to no supervision of Sharpe's activities as they relate to Defendant PCCS.

82.    Currently, there are only two officers of PCCS, Holly Grange, CEO, and Michael Rudner, President.

83.    On February 4, 2022, Plaintiffs, through counsel, made demand on PCCS for payment of their deferred compensation, payment under the Release Agreement, and for PCCS to investigate the actions of Sharpe.

84.    PCCS never responded to the February 4, 2022, letter.

85.    Defendants have failed to pay Plaintiffs the deferred compensation.

86.    On February 28, 2022, by and through counsel, Eastham made a written demand on Defendant PCCS pursuant to N.C. Gen. Stat. §55-16-02 for the inspection of corporate books and records.

87.    Defendant PCCS did not respond to the February 28, 2022, demand for inspection of the corporate records.

88.    On July 13, 2022, after the filing of this action, PCCS responded to the February 28, 2022, demand but failed to provide all of the requested and required information.

89.    Sharpe, as the majority shareholder, and while he was the CEO of PCCS, failed to follow the By-Laws and other corporate governing documents for the corporation.

90.    On May 4, 2022, the Plaintiffs filed a Verified Complaint bringing claims against PCCS and Sharpe.

91.    On May 4, 2022, the Court entered a Temporary Restraining Order and ordered expedited discovery.

92. As part of the expedited discovery order, PCCS was to provide the location of any and all bank accounts in the name of PCCS, to produce corresponding bank statements from December 10, 2021, to the present, and to identify and provide the location of all assets of PCCS.

93. After the filing of this action, Sharpe sent a text message to David Danel wherein Sharpe accused David Danel of trying to harm Sharpe and PCCS. Sharpe further stated that he "was planning to let your betrayals go and move on. Not anymore." During the deposition of Sharpe, he stated that part of the alleged betrayals referenced in the text message was that he alleged that David Danel was trying to steal certain business from PCCS. Sharpe later admitted that he had offered to sell David Danel the same business he accused Mr. Danel of trying to steal, and that he also intended to offer to sell the business to the Plaintiffs, if Mr. Danel would not purchase the business.

94. On May 4, 2022, Plaintiffs, through counsel, sent a demand letter to PCCS pursuant to N.C. Gen. Stat. §55-7-42 and demanded that the company investigate the claims against Sharpe.

95. On May 17, 2022, PCCS responded to the May 4, 2022, demand letter and refused to bring claims against Sharpe.

96. On May 17, 2022, PCCS produced certain records in response of the expedited discovery order. The records produced included bank statements from First National Bank.

97. The First National Bank statements showed that in December 2021, PCCS had approximately $600,000.00 in its bank accounts but by May 2022 the bank accounts had zero or deficient amounts.

98. On May 31, 2022, a mediation was conducted in this action. The mediation was requested by Defendants.

99.  The mediation quickly ended in an impasse and no settlement offers were made by Defendants despite their request to conduct the early mediation.

100.  On June 7, 2022, Sharpe formed G2G, LLC, a North Carolina limited liability company.

101.  Defendants did not disclose the formation of G2G, LLC to Plaintiffs.

102.  Sharpe has not identified or provided any evidence of what type of business G2G, LLC will conduct.

103.  On June 13, 2022, PCCS responds to a New Hanover County Demand Upon Corporate Officer or Agent, which was issued in another action brought against PCCS and Sharpe and wherein a judgment was entered against PCCS for breach of contract, tortious interference with contract, fraud, and unfair and deceptive trade practices.

104.  In response, PCCS disclosed that it had opened a new bank account at First Citizen's Bank and that the U.S. Government owed PCCS $172,608.00 for the supply of diabetic test strips.  PCCS did not disclose any other physical assets of the corporation.

105.  PCCS and Sharpe failed to disclose the new bank account or the account payable asset to Plaintiffs.

106.  On June 22, 2022, Plaintiffs filed a Verified Amended Complaint in this action bringing additional derivative claims against Sharpe and added Stone Bay Tactical, LLC and SRS Supply, LLC as party defendants.

107.  Plaintiffs brought fraudulent transfer claims against Stone Bay Tactical, LLC and SRS Supply, LLC and sought prejudgment attachment.

108.  On July 27, 2022, the Court entered an order of prejudgment attachment against Stone Bay Tactical, LLC and SRS Supply, LLC.  As part of the Order, the Court found that Plaintiffs are creditors of Defendants and that there are insufficient funds to satisfy their debt.

109.  On July 20, 2022, Defendants produced additional documents to Plaintiffs.  As part of this production, it was disclosed that the $172,608.00 payment from the U.S. Government was deposited on June 23, 2022, into an account in the name of Grange Council, LLC.

110.  July 26, 2022, PCCS and Sharpe were deposed.

111.  During the deposition, Defendants disclosed that Sharpe directed the U.S. Government to deposit the $172,608.00 into the account of Grange Council, LLC, that there was no relationship between PCCS and Grange Council, LLC, and there was no agreement related to the PCCS funds between PCCS and Grange Council, LLC.

112.  During the deposition, and based on additional records produced, it was disclosed that the PCCS account at First Citizen's Bank as of July 2022 had a negative balance.

113.  As of July 2022, all of the bank accounts in the name of PCCS had either a zero balance or a negative balance.

114.  Sharpe has ignored the corporate formalities of PCCS, has conducted PCCS as if he is the sole owner, and has used PCCS assets as if they were his own personal property.

115.  During the deposition, Defendants further testified that PCCS was still in business and that it was making bids and receiving awards from the U.S. Government.

116.  In August 2022, PCCS was paid approximately $500,000.00 from the U.S. Government.  PCCS was not able to account for these funds.

117. Sharpe has represented to third-parties that neither he nor PCCS will ever pay Plaintiffs Eastham or Spark any amount owed to them for their deferred compensation, the Release Agreement, or as shareholders of PCCS.

## CONCLUSION OF LAW

118. This Court has subject matter jurisdiction over this action pursuant to N.C. Gen. Stat. §7A-243 and other applicable bases for jurisdiction.

119. This Court has personal jurisdiction over the Defendants pursuant to N.C. Gen. Stat. §1-75.4 and other applicable bases for jurisdiction.

120. Venue is proper in this Court pursuant to N.C. Gen. Stat. §§1-79, 1-82, and N.C. Gen. Stat. §55-14-31, and other applicable bases for venue.

121. Preliminary relief may be issued by the Court: "(1) if a plaintiff is able to show likelihood of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation." *Redlee/SCS, Inc. v. Pieper*, 153 N.C. App. 421, 423, 571 S.E.2d 8, 11 (2002) (quoting *A.E.P. Industries v. McClure*, 308 N.C. 393, 401, 302 S.E.2d 754, 759-60 (1983); *SED Holdings, LLC v. 3 Star Properties, LLC*, 246 N.C. App. 632 (2016); *see also* Rule 65(b) of the North Carolina Rules of Civil Procedure.

122. Plaintiffs have established through the verified pleadings, and attached and incorporated exhibits, the affidavits, the deposition transcripts, the Court's record, and other materials provided during the hearing, that they have a likelihood of success on the merits of its claims brought against Defendants.

123. Plaintiffs have established through the verified pleadings, and the attached and incorporated exhibits, the affidavits, the deposition transcripts, the Court's record, and the other

materials provided during the hearing, that they will suffer irreparable harm if the temporary injunction is not granted by this Court.

124.  Plaintiffs have established through the verified pleadings, and the attached and incorporated exhibits, the affidavits, the deposition transcripts, the Court's record, and other materials provided during the hearing, that a temporary injunction in this action is necessary for the protection of Plaintiffs' rights and to maintain the status quo until the conclusion of this action.

125.  This Court concludes that "findings of fact made during a preliminary injunction proceeding are not binding upon a court at a trial on the merits." *Lohrmann v. Iredell Mem'l Hosp., Inc.*, 174 N.C. App. 63, 75, 620 S.E.2d 258, 265 (2005).

126.  This Court has considered the necessity of a bond under Rule 65 of the North Carolina Rules of Civil Procedure and finds, as further set forth below, that a nominal bond will suffice to protect Defendants.

BASED ON THE FINDINGS OF FACT AND CONCLUSIONS OF LAW, the arguments of counsel, the Court hereby grants Plaintiffs' Motion and ORDERS as follows:

127.  Other than for business reasons, the bank accounts of Defendant PCCS will be frozen, and Sharpe will not have access to any account of Defendant PCCS;

128.  Defendants shall disclose to Plaintiffs within ten (10) days from opening, the identity, with account number, of any new bank account opened in the name of PCCS, Stone Bay Tactical, LLC, or SRS Supply, LLC;

129.  The other physical assets of Defendant PCCS will be frozen and will not be disposed of, other than for ordinary business reasons;

130.  Any funds generated by the operation of PCCS or by the sale of any assets of PCCS shall be deposited only in a bank or other financial account in the name of PCCS;

131.  Sharpe will not have access or control over any asset of Defendant PCCS;

132.  The Stone Bay Weapons will be held at the PCCS warehouse;

133.  PCCS can only sell or dispose the Stone Bay Weapons for U.S. currency with the proceeds of any sale or disposition to be deposited into a trust account or escrow account identified by Plaintiffs.  PCCS shall not donate or exchange the Stone Bay Weapons for any other type of consideration, in kind or otherwise, and also may not gift the Stone Bay Weapons. Both Plaintiffs and Defendants shall have access to the account only to monitor deposits and the current balance.  The cost of the escrow agent or any costs related to maintaining the trust or escrow account may be withdrawn from the proceeds held in the account.  Any costs of the escrow agent or by maintaining the trust account not covered by the proceeds shall by paid by Defendants.  The proceeds will not be released from said trust or escrow account until so ordered by the Court and shall serve as additional bond pursuant to Rule 65 of the North Carolina Rules of Civil Procedure;

134.  Sharpe is prohibited from publishing defamatory statements about Eastham or Spark;

135.   The Five Hundred and No/100 Dollars ($500.00) Plaintiffs deposited with the New Hanover County Clerk of Court as part of the Temporary Restraining Order shall serve as an additional bond and held by the Clerk of Court until further order of this Court;

136.    This Preliminary Injunction Order may be shared with any financial institution or

other third-party necessary to effectuate the restrictions set forth herein; and


SO ORDERED, this the 21 day of September 2022.


_____
The Honorable Phyllis M. Gorham
Superior Court Judge Presiding



STATE OF NORTH CAROLINA **FILED** IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF NEW HANOVER          FILE NO.: 22-CVS-001507

**2022 OCT 11 P 4: 07**

MARK EASTHAM                    )
And PETER SPARK,                **NEW HANOVER COUNTY, C.S.C.** )
                                )
          Plaintiffs,       BY _____ )
                                )
vs.                             )
                                )    **ORDER ON MOTION FOR ORDER**
PORT CITY CONTRACTING           )      **TO SHOW CAUSE**
SERVICES, INC., ROBERT P. SHARPE, )
STONE BAY TACTICAL, LLC, and SRS )
SUPPLY, LLC,                    )
                                )
          Defendants.           )    <span style="color:red">**EXHIBIT B**</span>
_____ )

THIS CAUSE came before the undersigned judge at the October 6, 2022, non-jury civil session of New Hanover County Superior Court on the Plaintiffs' Motion for Order to Show Cause why Defendant Robert Sharpe should not be held in civil contempt. The Plaintiffs were represented by their attorney, Samuel Potter, and the Defendant was represented by his attorney, W. Cory Reiss.

AND THE COURT, having considered the motion, affidavit, and exhibits filed by the Plaintiffs, arguments of counsel, and other materials submitted concludes in its discretion that the Motion should be denied.

FURTHER, per the stipulation of the Parties, and the undersigned's acceptance, any future claimed violations of the Preliminary Injunction, signed by the undersigned and entered by the Court on September 21, 2022, shall be heard by the undersigned.

-2-

NOW THEREFORE, it is ORDERED that the Motion is DENIED, provided however, that any future claimed violations of the Preliminary Injunction shall be heard and decided by the undersigned.

This the 10 day of October 2022.

_____
Hon. Phyllis M. Gorham
Senior Resident Superior Court Judge

<p style="text-align:center; color:red">EXHIBIT C</p>

**Pinned post**

 **Robert Sharpe** is 😊 feeling determined with **Jason Golden** and **95 others**.

September 1 at 1:13 AM · 🌐

Friends please share this. Veteran suicide needs to be more than a hashtag. Recently, I almost lost my battle. I am struggling, but speaking out is helping.

Tomorrow I meet with the United States Senate General Counsel. After reporting federal fraud, my company was bankrupted and I was repeatedly attacked. I reported my neighbor, Peter Spark for fraud and mental abuse.

He doesn't know it, but at the end I recorded the abuse and meetings. I have their chat messages. Their emails. Everything.

Peter and Mark Eastham, formerly SVP of McKesson both worked together to steal and then destroy me to cover their crimes. Keep in mind I paid them EACH $15,000 a month with benefits to help a disabled veteran. Also, it was part time and mostly from home. I paid them large bonuses. They never finished any of the work I paid them to do. They didn't make the company money.

They just exploited me and took what I earned.

They hid hundreds of thousands of dollars in fraudulent money on the books. They stole our computers and files. I discovered embezzlement, one illegal payment alone was $22,000. They stole the work I built. They stole the work I paid them to do. Anything they couldn't steal, they destroyed so I couldn't afford to fight them.

Part of the reason I went to Ukraine to fight, it was easier than dealing with the abuse. I didn't care if I died. My family suffered. They helped a competitor file lawsuits and hide them from the company, creating defaults and stealing hundreds of thousands of dollars. Local LE said it was a business dispute. I was treated like a

When I asked social services for help, they said I wasn't disabled enough. When I reported DSS for discrimination, they called child protective services on my family as retaliation. They hid the retaliation from the US Office of Civil Right and are attempting to cover things up to this day. I don't believe they realize the meeting is recorded as well. Unfortunately getting help through the Office of Civil Rights is slow and underfunded, thankfully our Senate VA Committee is listening.

When I needed a helping hand, they hurt me. That is when suicide started becoming a serious thought.

I am attaching the restraining order I obtained by myself at trial against Peter Spark and his attorney. Later they lied in legal filing and said it didn't exist, to lock me out of my company, my disability program. When no one helped, I almost killed myself and had to be hospitalized.

I don't understand how people can be this evil. I love to serve. I love to give to my community. I asked for help escaping an abusive situation. People don't understand that being able to fight physically doesn't mean you can't hurt inside.

I need to love myself enough to speak up. I need help getting through this. My wife Lisa Sharpe is my rock. I struggle every day. Please pray for me as I make my disclosure to the Senate tomorrow.

We need to spend less time teaching veterans to speak up, and more time listening.

Also, to all the abusive people in NHC government that covered this up, I recorded you too.

of thousands of dollars. Local LE said it was a business dispute. I was treated like a "crazy" vet. In many ways, my community turning its back on me hurt the most.

The truth is finally coming out. Once, they tried to sue me for talking about this. Now they can't.

The NHC Sheriff's office refused to help. Even ignoring when Peter violated restraining orders. They said the theft wasn't important to them. Required reporting under law passed to protect disabled veterans, they ignored. If I showed them clearly every criminal element met, they just said "civil" and didn't have to help.

Sadly, had I not donated much of my profits to the county and local businesses, locally approx $250,000. I could have afforded to fight these people in court before bankruptcy. If the county had supported a disabled veteran trying to get away from abuse, I wouldn't have to fight at all.

I hired food trucks to feed hospital workers when things were hard. I didn't want profit off misery. I gave away free mask to anyone. All business got free masks by the case. Regardless how people felt about masks, the reality was they were required and I just wanted to help businesses avoid more costs during hard times. Watch the last 20 seconds, my love for my community is deep.

https://www.wwaytv3.com/contractor-donates-70000-masks.../

This made Mark and Peter angry. I earned the money, but they wanted it. I felt blessed and wanted to give to the community I love.

We tell veterans every day to speak up when hurting. I did. Over and over. The people that were supposed to protect, didn't. Then local government retaliated when I filed a civil rights complaint, which the US DHHS Office of Civil Rights validated.



EXHIBIT D



# Robert Sharpe

EXHIBIT E

**Posts**   Photos

 write a comment...

## Other posts

 **Robert Sharpe**
6h · 👥                                    •••

Let me be crystal clear. I am not willing to take down statements where I discuss abuse and exploitation. This is the point of the first amendment. If you are reading this and threatening my attorney, it is further whistleblower retaliation.

 Like       Comment       Message

 **Robert Sharpe** is 😇 feeling blessed.      •••
4d · 👥

Well we flew to Arizona to see Metallica, during the flight the concert was cancelled. But at least we have two days in Glendale.

 8                          1 comment

 Like       Comment       Message

 **Robert Sharpe** is 😋 feeling determined.      •••
5d · 👥

I haven't posted much over the last 2 years. My struggles are about to become very public; this is not by choice. I am not manic. I am acting with purpose and plan.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that he is over eighteen (18) years of age and the foregoing MOTION FOR SHOW CAUSE was this day served upon the below named persons, parties and/or counsel by mailing, postage prepaid, first class mail, a copy of such instruments to such persons, parties and/or counsel at the address shown below or through electronic means as indicated below.

Brian C. Behr, Esquire
Bankruptcy Administrator
(via CM/ECF)

Jason L. Hendren
Attorney for Debtor
PCCS
(via CM/ECF)

Algernon L. Butler, III
*Chapter 7 Trustee* (via CM/ECF)

Richard P. Cook, Esq.
*Attorney for Debtor*
(CM/ECF)

Robert Paul Sharpe
245 Royal Fern Road
Wilmington, NC 28412
*Via Federal Express*

Joseph A. Bledsoe, III
*Chapter 13 Trustee*
(CM/ECF)

Dated: 09/27/2023

s/John C. Bircher III
John C. Bircher III
N.C. State Bar No. 24119
DAVIS HARTMAN WRIGHT LLP
209 Pollock Street
New Bern, NC 28560
Telephone/Facsimile 252-262-7055
Email: jcb@dhwlegal.com