UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

ROBERT PAUL SHARPE  CASE NO.: 23-00607-5-DMW

  DEBTOR  CHAPTER 13

MARK EASTHAM AND PETER SPARK,

                Plaintiffs,  ADVERSARY PROCEEDING NO.:

v.  23-00089-5-DMW

PORT CITY CONTRACTING SERVICES,
INC., ROBERT PAUL SHARPE, STONE
BAY TACTICAL, LLC AND SRS
SUPPLY, LLC.

                Defendants.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### *Summary*

The False Claims Act, 31 U.S. C. § 3729, *et seq.*, is the federal government's most important and most effective tool for fighting fraud. Defendant, Robert Paul Sharpe, discovered fraud, including fraudulent submission of invoices to United States Government by Plaintiffs Mark Eastham and Peter Spark. These illegal submissions are a violation of the False Claims Act (FCA). As CEO and employee of Port City Contracting Services, Mr. Sharpe took proper actions after discovering fraud against the United States. Mr. Sharpe is a whistleblower under 31 U.S.C. § 3730(h) and 41 U.S.C. § 4712 after engaging in protected activities.

Mr. Sharpe has been subjected to illegal harassment, abuse, and whistleblower retaliation by Plaintiffs Eastham, Spark, and through counsel. Retaliatory acts include a derivative action, on behalf of PCCS, at the time a federally certified Service-Disabled Veteran Owned Small Business (SDVOSB). The derivative action was initiated with an ulterior motive and abusive intent. Plaintiffs have sought to deprive Mr. Sharpe of his employment and civil rights, abusing the legal system, to hide illegal activities and as punishment for protected whistleblower disclosures.

Properly addressing all adversarial issues first requires recognition of rights and responsibilities between parties. Every action by Plaintiffs has a direct or prima facie nexus to protected activities and are retaliatory.

## TABLE OF CONTENTS

- FACTS……………………………………………………………………………...2
- TABLE OF AUTHORITIES……………………………………………………….5
- WHISTLEBLOWER STATUTES
  - 31 U.S.C. § 3730(h)……………………………………………………...5
  - 41 U.S.C. § 4712………………………………………………………….6
- KEY POINT……………………………………………..………………………….7
- POINTS & PRECEDENTS
  - I - Purpose Of 31 U.S.C. § 3730(h)……………………………………...7
  - II - Scope of Protection Under 31 U.S.C. § 3730(h)……………………..7
  - III - Protected Activity Standard 31 U.S.C. § 3730(h)…………..……….8
  - IV – Protected Activity Under 41 U.S.C. § 4712…………………….…..8
  - V - Prima Facie Retaliation and Burden Shift………………………...…8
  - VI - Individual § 4712 Liability After Retaliatory Derivative Action……..8
  - VII - Free Speech Restrictions………………………………………...…9
  - VIII - Chapter 13 And Debtor's Ownership of Civil Rights Claim………..11

## FACTS

1.      31 U.S.C. § 3730(h) protects lawful acts in furtherance of an FCA action, or efforts to investigate and stop violations of the FCA.

2.      On December 10th, 2021, debtor, Robert Sharpe, had cause to begin an investigation of Mark Eastham and Peter Spark after discovery of False Claims Act (FCA) violations.

3.      In 2020, the Center for Verification and Evaluation (**CVE**) warned Mr. Sharpe about compensation and control concerns; specifically, Mr. Eastham joining PCCS and SDVOSB status. The important of compensation, control, and following procurement law was made clear to both Plaintiffs and Defendant Sharpe by CVE.

4.      On December 10th, 2021, Mr. Sharpe had a reasonable belief Mr. Eastham and Mr. Spark had previously operated, and would continue to operate, as a pass-through entity and in direct violation of the FCA; a formal investigation began. At this moment, whistleblower protection begins under § 3730(h).

5. Further investigation confirmed suspected fraudulent activities and Plaintiffs were terminated, stopping further violations of the FCA.

6. Further, Mr. Sharpe discovered information he reasonably believes is evidence of gross mismanagement of a federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a federal contract or grant, and a violation of law, rule, or regulation related to a federal contract.

7. Accordingly, on 12/20/2021, Mr. Sharpe reported these violations to local law enforcement, a protected activity covered 41 U.S.C. § 4712 and 31 U.S.C. 3730(h).

8. Proper disclosure was given to the VA OIG as required under § 4712.

9. Plaintiffs Eastham and Spark have admitted in court filings, knowledge of protected disclosures.

10. Plaintiffs have retaliated in novel ways, including a derivative lawsuit, taking control of Mr. Sharpe's employment in the name of PCCS, affecting his condition of employment.

11. Plaintiffs have illegally silenced Mr. Sharpe, mislabeling truthful statements as perjury and defamation, to further retaliate and avoid accountability for violations of the False Claims Act. Plaintiffs have attempted to have a "gatekeeper" order put in place, without any explanation.

12. Plaintiffs, through counsel, directly retaliated after a protected disclosure by seeking sanctions.

13. Mr. Sharpe has continued to suffer extreme distress and denial of civil rights due to the perjury, misconduct, and retaliation by Mark Eastham, Peter Spark.

14. In disregard for NC Bar ethics, Mr. Bircher has refused to correct perjury of material facts, has directly committed whistleblower retaliation, and sought to illegally deny civil rights.

15. The Chapter 13 trustee has ignored repeated requests for a disability accommodation meeting. Without a reasonable accommodation, Debtor and the estate are being denied rights, access to bankruptcy protections, and proper relief.

16. The trustee took adverse action after a request for disability rights. A proper complaint was filed, as required to exhaust administrative remedies under Title II and Sec. 504.

17. Mental distress, caused by silencing and failures to accommodate Debtor's service-connected disability, has been immense.

18. The conflict created between the Chapter 13 trustee and special counsel rises from misconduct after a protected request under Title II of the ADA and Sec. 504. Prima Facie retaliation warrants the withdrawal of Mr. Bledsoe, not further harms to Debtor.

*Personal Statement*

19. Every minute of every day, I worry. It is part of my service-connected disability. I am OCD, at a level most people can't understand. With the SDVOSB program, I was able to channel my disability into productive work.

20. Today, I am broken. Even in bankruptcy, harassment and retaliation will not stop. If I ask for help, it is denied. If I complain, retaliation.

21. The VA OIG had a duty to stop the retaliation long ago. Special counsel has direct evidence to support these claims and associated misconduct.

22. I almost lost my battle with depression. I have been suffering illegal treatment and retaliation for three years. I had just been silenced by the people I reported for fraud. It is hard to believe one has self-worth after being ignored, requesting help, and then silenced.

23. My company was my disability program. It has become the worst thing in my life *after* I made protected disclosures reporting violations of the FCA. I am worse off than before I started my program.

24. I am a whistleblower, due legal rights and protections, after engaging in protected activity under 31 U.S.C. § 3730(h) and 41 U.S.C. § 4712.

25. Recently before Congress, January 28th, 2020, DOJ Inspector General Michael E. Horowitz stated:

> As DOJ inspector general and as chair of the Council of the Inspectors General on Integrity and Efficiency, or CIGIE, one of my highest priorities has been to educate Federal employees about the importance of whistleblowing and to ensure that those who blow the whistle are protected from retaliation or <u>even the threat of retaliation</u>…
>
> <u>Whistleblowers perform an essential public service</u> in ensuring accountability in government, and no one should be retaliated against or threatened with retaliation for bringing

forward information that they reasonably believe evidences waste, fraud, abuse, or misconduct.

<u>This is not just a principle that IGs agree with, it's a principle enshrined in the law</u>.

## TABLE OF AUTHORITIES

*Mann v. Heckler Koch Defense*, 630 F.3d 338, 343 (4th Cir. 2010)…………………………I   (p.7)
*O'Hara v. Nika Techs., Inc*., 878 F.3d 470 (4th Cir. 2017)……………………….…........…II  (p.7)
*Waag v. Sotera Def. Sol., Inc*.,857 F.3d 179, 192 (4th Cir. 2017)…………………………..V  (p.8)
*Roberts v. Glenn Indus.* , 998 F.3d 111, 122 (4th Cir. 2021)..………………………………...V  (p.8)
*Bittle-Lindsey v. Seegars Fence Co*., (E.D.N.C. Dec. 9, 2020)……………………………….VI (p.8)
*Channning v. Equifax, Inc*., (E.D.N.C. Feb. 15, 2013)……………………....……………VI (p.8)
*Campbell v. Pearl River Techs*., (D. Md. July 10, 2023)…………………...…………...VI (p.8)
*Martin v. Duffy*, 977 F.3d 294, 306 (4th Cir. 2020)……………………...…………..VI (p.8)
*Darveau v. Detecon*, Inc., 515 F.3d 334, 340-341 (4th Cir. 2008)…………....…………VI (p.8)
*In re Murphy-Brown*, LLC, 907 F.3d 788 (4th Cir. 2018)……………….…………VII (p.8)
*Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 343 (4th Cir. 2013)………….......………..VIII (p.11)

41 U.S.C. § 4712…..............................................................................................………III (p.8)

## WHISTLEBLOWER STATUTES

### 31 U.S.C. § 3730(h)

***Relief From Retaliatory Actions***

(1) In general. <u>Any employee</u>, <u>contractor</u>, or agent shall be entitled to all relief necessary to make that <u>employee, contractor</u>, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, <u>or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee</u>, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

(2) Relief. Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

**41 U.S.C. § 4712**

*Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information*

(a) Prohibition of Reprisals.
(1) In general.-An employee of a contractor, subcontractor, grantee, subgrantee, or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.
(2) Persons and bodies covered. - The persons and bodies described in this paragraph are the persons and bodies as follows:
(A) A Member of Congress or a representative of a committee of Congress.
(B) An Inspector General.
(C) The Government Accountability Office.
(D) A Federal employee responsible for contract or grant oversight or management at the relevant agency.
(E) An authorized official of the Department of Justice or other law enforcement agency.
(F) **A court or grand jury**.
(G) A management official or other employee of the contractor, subcontractor, grantee, subgrantee, or personal services contractor who has the responsibility to investigate, discover, or address misconduct.

(3) Rules of construction. - For the purposes of paragraph (1) -
(A) an employee who initiates or provides evidence of contractor, subcontractor, grantee, subgrantee, or personal services contractor misconduct in any judicial or administrative proceeding relating to waste, fraud, or abuse on a Federal contract or grant shall be deemed to have made a disclosure covered by such paragraph; and
(B) a reprisal described in paragraph (1) is prohibited even if it is undertaken at the request of an executive branch official, unless the request takes the form of a non-discretionary directive and is within the authority of the executive branch official making the request.

## KEY POINT

Debtor, Robert Sharpe, is a federal whistleblower and due protections. Mr. Sharpe has a right to be free from harassment and retaliation after protected disclosures. Mr. Sharpe has a right to speak out about fraud, abuse, and financial exploitation. The courts must be a place where whistleblowers can come for protection, without fear.

- Establishing whistleblower rights is required to view any of the motions and proceedings in a proper context.
- Mark Eastham and Peter Spark have directly admitted a nexus between protected activity and claims brought forward in bankruptcy.
- Rights and responsibilities between parties must be established.
- Unique issues rise with individual liability (§ 4712) against Plaintiffs and opposing counsel bringing a derivative suit, with hidden and corrupt intent, and with control on the terms and condition of employment.

Once whistleblower rights are properly recognized, Plaintiffs' own claims, filings, and motions show a direct nexus to Defendant's protected activities, proving retaliation and abuse of process.

## POINTS & PRECEDENT

### I - Purpose of 31 U.S.C. § 3730(h)

The purpose of § 3730(h) is to promote enforcement of the FCA by "assur[ing] those who may be considering exposing fraud that they are legally protected from retaliatory acts." S.Rep. No. 99-345, at 34, 1986 U.S.C.C.A.N. 5266, 5299* Congress amended § 3730(h) in 2009 to include contractors and agents within its scope of protection" *Mann v. Heckler Koch Defense*, 630 F.3d 338, 343 (4th Cir. 2010)

### II - Scope of protection under 31 U.S.C. § 3730(h)

The Fourth Circuit has directly addressed the scope of FCA whistleblower protection:

**The plain language of § 3730(h) reveals that the statute does not condition protection on the employment relationship between a whistleblower and the subject of his disclosures**. Section 3730(h) protects a whistleblower from retaliation for "lawful acts done ... in furtherance of an action under this section." The phrase "an action under this section" refers to a lawsuit under § 3730(b), which in turn states that "[a] person may bring a civil action for a violation of [the FCA]." *Id.* § 3730(b)(1). Therefore, § 3730(h) protects lawful acts in furtherance of an FCA action. This language indicates that protection under the statute depends on the type of conduct

that the whistleblower discloses—*i.e.*, a violation of the FCA—rather than the whistleblower's relationship to the subject of his disclosures. *O'Hara v. Nika Techs., Inc.*, 878 F.3d 470, 475 (4th Cir. 2017)

"We hold that the district court's conclusion that § 3730(h) only protects whistleblowing activity directed at the whistleblower's employer was erroneous, because the plain language of § 3730(h) protects disclosures in furtherance of a viable FCA action against any person or company." *O'Hara v. Nika Techs*., Inc., 878 F.3d 470, 475 (4th Cir. 2017)

### III – Protected Activity Standard 31 U.S.C. § 3730(h)

Under this standard, an act constitutes protected activity where it is motivated by an objectively reasonable belief that the employer is violating, or soon will violate, the FCA. A belief is objectively reasonable when the plaintiff alleges facts sufficient to show that he believed his employer was violating the FCA, that this belief was reasonable, that he took action based on that belief, and that his actions were designed to stop one or more violations of the FCA. *United States ex rel. Grant v. United Airlines Inc*., 912 F.3d 190, 201-02 (4th Cir. 2018)

### IV – Protected Activity Under 41 U.S.C. § 4712

"(A) **an employee who initiates or provides evidence** of contractor, subcontractor, grantee, subgrantee, or personal services contractor misconduct **in any judicial or administrative proceeding** relating to waste, fraud, or abuse on a Federal contract or grant shall be deemed to have made a disclosure covered by such paragraph; and

(B) a reprisal described in paragraph (1) is prohibited even if it is undertaken at the request of an executive branch official, unless the request takes the form of a non-discretionary directive and is within the authority of the executive branch official making the request." 41 U.S.C. 4712

### V - Prima Facie Retaliation and Burden Shift

The United States Court of Appeals for the Fourth Circuit has explained that "for purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation." *Waag v. Sotera Def. Sol.*, Inc.,857 F.3d 179, 192 (4th Cir. 2017)

"After a *prima facie* case is made, the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason." *Roberts v. Glenn Indus.* , 998 F.3d 111, 122 (4th Cir. 2021)

### VI – Individual § 4712 Liability After Retaliatory Derivative Action

**Individual liability for Eastham and Spark under 41 U.S.C. § 4712**

- Eastham and Spark retaliated against my employment through a derivative action

- - <u>Having power to control employment, as related to individual liability, is established with derivative TRO</u>
  - <u>This power is required for individual liability under § 4712</u>
- The TRO was retaliation, wrapped in a derivative lawsuit, giving rise to individual liability
  - **Changed terms and conditions of my employment**
  - Took control
    - <u>After being accused of illegal control</u>
- Hidden agenda with Dan Shoaf & Davinci Aerospace, LLC
  - Teamed up to steal, hide fraud, and commit retaliation

To pierce the corporate veil, a plaintiff must show: (1) "control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice . . . so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that defendant used such control "to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights;" and (3) that the control and breach of duty proximately caused the injury or unjust loss complained of. *Bittle-Lindsey v. Seegars Fence Co.*, (E.D.N.C. Dec. 9, 2020)

"[U]nder federal common law a court may pierce the corporate veil where "(1) the shareholder dominates and controls the organization and (2) imposing such liability is needed to avoid injustice." <u>Mayes v. Moore</u>, 419 F. Supp. 2d 775, 781 (M.D.N.C. 2006)" *Channing v. Equifax, Inc.*, (E.D.N.C. Feb. 15, 2013)

Normally, a shareholder is not liable for the corporate liability. If the shareholder controlled and used the corporate form inequitably, then the controlling shareholder is, in equity, the party that should pay the liability. *Campbell v. Pearl River Techs.*, (D. Md. July 10, 2023)

"We nonetheless take this opportunity to reemphasize the well-settled principle that "[a]n action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Martin v. Duffy*, 977 F.3d 294, 306 (4th Cir. 2020)

Filing a lawsuit without a sufficient factual basis to dissuade a whistleblower or discrimination plaintiff from engaging in protected conduct can constitute actionable retaliation. *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340-341 (4th Cir. 2008)

## VII - Free Speech Restrictions

<u>In re *Murphy-Brown*, LLC</u>, 907 F.3d 788 (4th Cir. 2018)

"petitioner's "loss of First Amendment freedoms ... unquestionably constitutes irreparable injury.""

"Even among First Amendment claims, gag orders warrant a most rigorous form of review because they rest at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based restrictions. Like all "court orders that actually forbid speech activities,"

"gag orders are prior restraints. Prior restraints bear "a heavy presumption against [their] constitutional validity.""

"Prior restraints upend core First Amendment principles because "a free society prefers to punish the few who abuse rights of speech after they break the law [rather] than to throttle them and all others beforehand."

"Gag orders inherently target speech relating to pending litigation, a topic right at the core of public and community life. But the "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."

"In light of these twin presumptions, <u>gag orders must survive strict scrutiny</u>."

"We review orders limiting First Amendment rights de novo. *Charlotte Observer*, 882 F.2d at 852. And we require trial courts to support them with reasoning "specific enough to enable the reviewing court to determine" whether the order survives rigorous scrutiny."

"Strict scrutiny first requires that a gag order serve a "compelling" public interest."

"Ensuring fair trial rights is a compelling interest, however, only when there is a <u>"reasonable likelihood" that a party would be denied a fair trial</u> without the order under challenge."

"Specifically, a gag order may issue only if there is a likelihood that "publicity, unchecked, would so <u>distort the views of potential jurors</u> that [enough] could not be found who would, under proper instructions, fulfill their sworn duty to render a just verdict exclusively on the evidence presented in open court.""

"Even when a gag order furthers a compelling interest, it must be the "least restrictive means" of furthering that interest"

"The law empowers trial courts to ensure fair jury trials using a number of tools short of gag orders. These tools include enlarged jury pools, voir dire, changes to a trial's location or schedule, cautionary jury instructions, and, in more unusual circumstances, sequestration."

"Gag orders should be a last resort, not a first impulse. The skimpy findings supporting the gag order here frustrate the sort of fulsome, substantive appellate review that shields First Amendment freedoms from unjustifiable restraints. The lack of narrow tailoring and the availability of less-restrictive alternatives are among the further defects that accompanied the imposition of the challenged order in this case."

## VIII - Chapter 13 And Debtor's Ownership of Civil Rights Claim

"We find the authority of our sister circuits persuasive and conclude that, unlike a Chapter 7 debtor, a Chapter 13 debtor possesses standing—concurrent with that of the trustee—to maintain a non-bankruptcy cause of action on behalf of the estate. The nature of Chapter 13 bankruptcy when compared to Chapter 7 supports this conclusion." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 343 (4th Cir. 2013)

Respectfully submitted this ___ day of December 2023,

Robert Paul Sharpe
245 Royal Fern Rd., Wilmington NC 28412
p. (910) 540-8157
wilmingtondiver@gmail.com