STATE OF NORTH CAROLINA   IN THE GENERAL COURT OF JUSTICE
           FILED SUPERIOR COURT DIVISION
COUNTY OF NEW HANOVER    FILE NO.: 22-CVS-001507

2022 AUG -5 P 4: 15

MARK EASTHAM      )
And PETER SPARK,   NEW HANOVER CTY., C.S.C.
          )
   Plaintiffs,  BY_____)_____
          )
          )
vs.          )
          )  AMENDED ANSWER AND
PORT CITY CONTRACTING   )  COUNTERCLAIMS
SERVICES, INC., ROBERT P. SHARPE, )
STONE BAY TACTICAL, LLC, and SRS )
SUPPLY, LLC,      )
          )
   Defendants.   )
          )

**NOW COME** Defendants Port City Contracting Services, Inc. and Robert P. Sharpe, by and through undersigned counsel, and Answer the Complaint as follows:

### FIRST AFFIRMATIVE DEFENSE
(Failure to State a Claim—Rule (12)(b)(6))

The Plaintiffs' claims should be dismissed on the grounds that they fail to state claims for which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
(Failure to Mitigate Damages)

The Plaintiffs' contract-based claims are barred on the grounds that they failed to mitigate their damages.

A TRUE COPY
CLERK OF SUPERIOR COURT
NEW HANOVER COUNTY
BY: *Patricia M. Cherigo*
Deputy Clerk of Superior Court

-2-

### THIRD AFFIRMATIVE DEFENSE
(Breach of Contract)

The Plaintiffs' contract-based claims are barred because the Plaintiffs first breached their contractual obligations, relieving the Defendants of any obligation to perform.

### FOURTH AFFIRMATIVE DEFENSE
(Unclean Hands)

The Plaintiffs' claims for equitable relief are barred by to their own inequitable conduct.

### FIFTH AFFIRMATIVE DEFENSE
(Not Employees/Exemptions)

The Plaintiffs' Wage and Hour Act claims are barred on the grounds that the Plaintiffs were not employees and/or were exempt from the Act at all relevant times.

### SIXTH AFFIRMATIVE DEFENSE
(Good Faith)

The Plaintiffs' Wage and Hour Act claims are barred in part on the grounds that the Defendants had a good faith belief that the Plaintiffs were exempt from the Act.

### SEVENTH AFFIRMATIVE DEFENSE
(Exempt Employees)

The Plaintiffs' claims are barred by the applicable statutes of limitations for each claim.

-3-

### EIGHTH AFFIRMATIVE DEFENSE
(Truth)

The Plaintiff's defamation claim is barred on the grounds that the statements alleged to be defamatory were truthful.

### NINTH AFFIRMATIVE DEFENSE
(Waiver, Estoppel, and/or Accord and Satisfaction)

The Plaintiffs' claims arising from alleged failure to pay "back pay" are barred by the doctrines of waiver and estoppel in that they offered their services in exchange for equity in the company at a later date and received that equity.

### TENTH AFFIRMATIVE DEFENSE
(Indemnification)

Sharpe is entitled to indemnification by the company for defense of this action and any monetary award that might result.

### ELEVENTH AFFIRMATIVE DEFENSE
(Setoff)

To the extent that the Plaintiffs are awarded payment for unpaid services, said amounts must be offset by the value of shares in PCCS that they received as compensation for those services.

### TWELFTH AFFIRMATIVE DEFENSE
(Business Judgment Rule)

The Plaintiffs' claims are barred in whole or part by the business judgment rule.

-4-

## PARTIES

1.  Admitted.

2.  Admitted that Peter Spark is a resident of New Hanover County, North Carolina. It is denied that Spark is a citizen of New Hanover County, North Carolina.

3.  Admitted.

4.  Admitted.

5.  Admitted as to Stone Bay Tactical, LLC.

6.  Admitted as to SRS Supply, LLC.

7.  Admitted.

## JURISDICTION AND VENUE

8.  Admitted.

9.  Admitted.

10.  Admitted.

## FACTS

11.  Admitted that one of the business activities conducted by Defendant PCCS is supplying diabetes testing strips, for which its primary customer is the U.S. Department of Veterans Affairs. Except as expressly admitted, denied.

12.  Admitted.

13.  Admitted.

14.  The allegations in Paragraph 14 reference a written document and legal instrument, which is the best evidence of its contents and therefore no response is

-5-

required. To the extent the allegations in Paragraph 14 are inconsistent with the referenced instrument, they are denied.

15.     Admitted that Sharpe is the largest shareholder of Class B stock in PCCS and is the majority shareholder of Class A stock. Admitted that PCCS shareholders include the Plaintiffs and that they are minority shareholders. The remainder of the allegations in Paragraph 15 are legal conclusions to which no response is required; however, to the extent a response is required, they are denied.

16.     Admitted.

17.     Admitted.

18.     Admitted.

19.     Admitted.

20.     Admitted.

21.     Admitted.

22.     The allegations in Paragraph 22 reference a written document and legal instrument, which is the best evidence of its contents and therefore no response is required. To the extent the allegations in Paragraph 22 are inconsistent with the referenced instrument, they are denied.

23.     Admitted that Sharpe agreed in September of 2021 that PCCS should make a 50% payment of the Stock Redemption and Release Agreement to Spark but that Spark failed to conduct that transaction in the course of his job responsibilities and authority as Chief Financial Officer, and that Eastham made no effort to compel that transaction. Except as expressly admitted, denied.

-6-

24.     It is admitted that Eastham was terminated on or about December 14,
2021. Except as expressly admitted, denied.

25.     Admitted.

26.     Admitted.

27.     Admitted.

28.     Denied.

29.     Denied.

30.     Denied.

31.     Admitted that the Plaintiffs added deferred compensation to PCCS's
financial records in late 2020 for the purpose of valuation and later to be converted
to equity, but the Plaintiffs maintained those amounts on the books without
authorization of the Defendants after issuance of new shares.  Except as expressly
admitted, denied.

32.     Admitted.

33.     Admitted.

34.     Admitted.

35.     It is admitted that Sharpe proposed a bonus of $100,000 pursuant to his
and PCCS's existing policy of paying a commission on employee-generated revenues
and, in fact, was less than the amount the commission other employees would expect
to receive from the amount of revenues generated by Sharpe.  It is admitted that
commissions encourage employees to generate revenues for PCCS and therefore
benefit them and the company.  Except as expressly admitted, denied.

-7-

36.    It is admitted that PCCS leased a car for Sharpe's use as an officer and employee. Except as expressly admitted, denied.

37.    Denied.

38.    It is admitted that the Plaintiffs initially objected to the commission but that Eastham later agreed to its appropriateness. It is denied that deferred compensation was owed or promised to be paid from revenues. Except as expressly admitted, denied.

39.    Denied.

40.    It is admitted that the Plaintiffs requested payment of purported deferred compensation. It is expressly denied that deferred compensation was promised to be paid from operating revenues of PCCS. Except as expressly admitted, denied.

41.    Admitted that an email was sent on the referenced date. This paragraph references a written document that is the best evidence of its contents. To the extent the allegations in Paragraph 41 are inconsistent with the referenced document, they are denied.

42.    Admitted.

43.    Denied.

44.    Denied that Sharpe made any threats. Admitted that Sharpe reasonably believes that Eastham violated federal law. Except as expressly admitted, denied.

-8-

45.   Denied that Sharpe made any threats. Admitted that embezzlement or theft could be grounds for deportation. Except as expressly admitted, denied.

46.   Admitted that Sharpe lodged a criminal complaint against Spark for embezzlement from PCCS. Except as expressly admitted, denied.

47.   Admitted that the Plaintiffs were not owed deferred compensation from PCCS's operating revenues and therefore were not paid such compensation. Except as expressly admitted, denied.

48.   Admitted the referenced correspondence was sent to the Defendants on or about the referenced date. Except as expressly admitted, denied.

49.   Admitted that the Plaintiffs were not owed deferred compensation from PCCS's operating revenues and therefore were not paid such compensation. Admitted that the Defendants did not respond to Exhibit C. Except as expressly admitted, denied.

50.   Admitted.

51.   Denied.

52.   It is admitted that Sharpe is the only voting shareholder. It is denied that he exercises complete control over PCCS.

53.   Denied.

54.   Denied.

55.   Denied.

56.   Denied.

57.   Denied.

-9-

58.   Denied.

59.   Admitted that Sharpe traveled to Las Vegas for an industry show as a representative of PCCS d/b/a Stone Bay Tactical.  Except as expressly admitted, denied.

60.   Admitted that "Stone Bay Tactical" is an assumed name for PCCS and therefore all use of the warehouse to store inventory and other materials of "Stone Bay Tactical" was in fact use by PCCS.  Similarly admitted, and for the same reasons, all work by PCCS employees for "Stone Bay Tactical" was for PCCS.  Except as expressly admitted, denied.

61.   Denied.

62.   Denied as to Stone Bay Tactical, LLC.  Except as expressly admitted, denied.

63.   Admitted that prior to January of 2022, SRS Supply, LLC used the warehouse to store inventory, the sale of which generated income for PCCS.  Except as expressly admitted, denied.

64.   Admitted that PCCS employees were paid by SRS for their work for SRS.  Admitted that some SRS employees also were employed and paid by PCCS.

65.   Denied.

66.   Denied.

67.   Denied.

68.   Admitted.

-10-

69.    Admitted that Sharpe traveled to Ukraine for business purposes on behalf of PCCS, including the potential sale of military supplies. Except as expressly admitted, denied.

70.    Admitted.

71.    Admitted that PCCS paid business-related expenses and that Sharpe paid expenses associated with his personal mission in Ukraine. Except as expressly admitted, denied.

72.    Denied.

73.    Denied.

74.    Admitted that weapons owned by PCCS are stored in the warehouse leased by PCCS consistent with PCCS d/b/a Stone Bay Tactical's Federal Firearms Licenses ("FFLs").

75.    Denied.

76.    Denied.

77.    Denied.

78.    Admitted that Sharpe sent a draft email to a confidante, whom he trusted not to disclose said email. The allegations in Paragraph 78 reference a written document, which is the best evidence of its contents. Except as expressly admitted, denied.

79.    Denied.

80.    Denied.

-11-

81.    The allegations in Paragraph 81 reference a written document, which is the best evidence of its contents. To the extent that the allegations are inconsistent with the document, they are denied.

82.    Admitted that Sharpe remained a signatory on the bank accounts of PCCS and continued to control debits and withdraw from the company bank account for business purposes. Except as expressly admitted, denied.

83.    Admitted that PCCS has terminated employees for cause. Except as expressly admitted, denied.

84.    Admitted that the conduct of the Plaintiffs caused Sharpe significant emotional distress which exacerbated his PTSD while he was fighting a war. Except as expressly admitted, denied.

85.    Admitted that Sharpe has returned from Ukraine. Except as expressly admitted, denied.

86.    Denied.

87.    Admitted that Exhibit F was sent and that it is the best evidence of its contents. To the extent that the allegations in Paragraph 87 are inconsistent with the referenced document, they are denied.

88.    Admitted.

89.    Denied.

90.    The Defendants lack information sufficient to admit or deny the allegations in Paragraph 90 and therefore denies them.

-12-

## FIRST CLAIM FOR RELIEF
(Breach of Fiduciary Duty—Sharpe)

91.     The Defendant reasserts and incorporates by reference his answers in the previous paragraphs as if fully set forth.

92.     Admitted that Sharpe is the largest shareholder of Class B stock and is the sole shareholder of Class A stock in PCCS.

93.     Admitted.

94.     Admitted.

95.     Admitted that Sharpe is not an attorney. The allegations in Paragraph 95 consist of legal conclusions to which no response is required. To the extent a response is required, denied.

96.     Admitted that Sharpe is not an attorney. The allegations in Paragraph 96 consist of legal conclusions to which no response is required. To the extent a response is required, denied.

97.     Denied.

98.     Denied.

## SECOND CLAIM FOR RELIEF
(Constructive Fraud—Sharpe)

99.     The Defendant reasserts and incorporates by reference his answers in the previous paragraphs as if fully set forth.

100.    Admitted that Sharpe is not an attorney. The allegations in Paragraph 100 consist of legal conclusions to which no response is required. To the extent a response is required, denied.

-13-

101.   Denied.

102.   Denied.

103.   Denied.

### THIRD CLAIM FOR RELIEF
(Production of Corporate Records—PCCS)

104.   The Defendant reasserts and incorporates by reference his answers in the previous paragraphs as if fully set forth.

105.   Admitted.

106.   Admitted.

107.   Denied upon information and belief that as of the date of the Complaint Defendant PCCS had not responded.  Admitted that since the filing of the Complaint, PCCS again responded by providing the requested records and therefore this claim is moot.

108.   Denied.

### FOURTH CLAIM FOR RELIEF
(Dissolution and Appointment of Receiver—PCCS)

109.   The Defendant reasserts and incorporates by reference his answers in the previous paragraphs as if fully set forth.

110.   Admitted.

111.   Denied.

112.   Denied.

113.   Admitted that in accordance with federal regulations, a service-disabled veteran-owned business ("SDVOB") must be controlled by a service-disabled veteran

-14-

to do business under the government's SDVOB program, and that neither Plaintiff is a service-disabled veteran. Admitted that the Plaintiffs do not have control over PCCS or Sharpe. Except as expressly admitted, denied.

      114. Denied.

      115. Denied.

      116. Denied.

      117. Denied.

## FIFTH CLAIM FOR RELIEF
(Preliminary Restraining Order—Defendants)

      118. The Defendants reassert and incorporate by reference the answers in the previous paragraphs as if fully set forth.

      119. Admitted that some PCCS assets have been used by Defendants for the benefit of PCCS and/or for compensation to PCCS. Except as expressly admitted, denied.

      120. Denied.

      121. Denied.

      122. Admitted that Sharpe struggles with PTSD and depression because of his service. Admitted that the SDVOB program is specifically designed to prefer government contracting with veterans disabled by service to their country and it is only because of that service, and Sharpe's resulting PTSD, that PCCS has been able to do business benefiting its shareholders, including the Plaintiffs. Except as expressly admitted, denied.

      123. Denied.

-15-

124.  Denied.

125.  Denied.

126.  Denied.

## SIXTH CLAIM FOR RELIEF
(Breach of Contract—Sharpe)

127.  The Defendant reasserts and incorporates by reference the answers in the previous paragraphs as if fully set forth.

128.  Admitted.

129.  Admitted.

130.  Admitted that the Plaintiffs and other executives, including Sharpe, agreed not to receive compensation during PCCS's formative period until they could be issued equity shares. Admitted that following the initial formative period, when revenues stabilized, the Plaintiffs and others were hired as employees and paid wages. Admitted that as agreed, the Plaintiffs received equity shares, which they accepted. Except as expressly admitted, denied.

131.  Admitted.

132.  Denied.

133.  Denied.

134.  Denied.

135.  Denied.

136.  Denied.

-16-

## SEVENTH CLAIM FOR RELIEF
(Breach of Wage and Hour Act—Defendants)

137.  The Defendants reassert and incorporate by reference the answers in the previous paragraphs as if fully set forth.

138.  Admitted the Plaintiffs were salaried employees beginning in or about June of 2020.  Except as expressly admitted, denied.

139.  Denied.

140.  Admitted that Eastham was not employed by or paid a salary during the referenced period as an investment in PCCS from October 2019 until May of 2020 and was then a 20% interest holder.  Except as expressly admitted, denied.

141.  Admitted that Spark was not employed by or paid during the referenced period as an investment in PCCS from October 2019 until May of 2020.  Except as expressly admitted, denied.

142.  The allegations set forth in Paragraph 142 reference a written document that is the best evidence of its contents.  To the extent the allegations in Paragraph 142 are inconsistent with the referenced document, they are denied.

143.  Admitted that PCCS did not owe deferred compensation from operating revenues.  Except as expressly admitted, denied.

144.  Denied.

145.  Admitted that PCCS declined a second demand for cash payments that was contrary to prior agreement of the parties.  Except as expressly admitted, denied.

146.  Admitted that Sharpe in consultation with other PCCS officers rendered PCCS's decision not to make cash payment of purported deferred compensation and:

-17-

    a. Denied;

    b. Admitted the Plaintiffs were terminated for reasons unrelated to the deferred payment requests. Except as expressly admitted, denied;

    c. Admitted that Sharpe proposed an earned commission, which the Plaintiffs agreed he deserved. Except as expressly admitted, denied.

147. Admitted that the Plaintiffs received equity shares in 2020 as compensation for their invested time and effort from 2019 until June of 2020. Except as expressly admitted, denied.

148. Denied.

### EIGHTH CLAIM FOR RELIEF
(Defamation—Sharpe)

149. The Defendant reasserts and incorporates by reference the answers in the previous paragraphs as if fully set forth.

150. Admitted that Eastham is a private citizen of the United States. Admitted that Spark is a private citizen of a foreign country. Except as expressly admitted, denied.

151. Denied.

152. Admitted that the referenced draft correspondence was sent to the person referenced on the document and was not for distribution. To the extent the question calls for privileged matters, Sharpe invokes that privilege. Except as expressly admitted, denied.

153. The allegations in Paragraph 153 constitute legal conclusions to which no response is required. To the extent a response is required, denied.

-18-

154. The allegations in Paragraph 154 constitute legal conclusions to which no response is required. To the extent a response is required, denied.

155. Denied.

156. Denied.

## NINTH CLAIM FOR RELIEF
(Breach of Stock Redemption and Release Agreement—PCCS)

157. The Defendant reasserts and incorporates by reference the answers in the previous paragraphs as if fully set forth.

158. Admitted.

159. Denied.

160. Admitted that payment was offered by Spark, approved by Sharpe, and refused by Eastham. Except as expressly admitted, denied.

161. Denied.

## TENTH CLAIM FOR RELIEF
(N.C. Gen. Stat. §§ 55-7-42—Sharpe)

162. The Defendant reasserts and incorporates by reference the answers in the previous paragraphs as if fully set forth.

163. Admitted.

164. The allegations set forth in Paragraph 164 reference a written document that is the best evidence of its contents. To the extent the allegations in Paragraph 164 are inconsistent with the referenced document, they are denied.

165. Admitted.

-19-

166.   The factual allegations contained in Paragraph 166 are denied.  The allegations in Paragraph 166 contain legal conclusions to which no response is required.  To the extent a response to legal conclusions is required, denied.

167.   Denied.

168.   Denied.

169.   Denied.

### ELEVENTH CLAIM FOR RELIEF
(Fraudulent Transfer—Defendants)

170.   The Defendants reassert and incorporate by reference the answers in the previous paragraphs as if fully set forth.

171.   Admitted that the Plaintiffs are investors in PCCS.  Except as expressly admitted, denied.

172.   Denied.

173.   Denied.

174.   Denied.

175.   Denied.

176.   Denied.

177.   Denied.

178.   Denied.

179.   Denied.

-20-

## TWELFTH CLAIM FOR RELIEF
(Pre-Judgment Attachment—Defendants)

180.   The Defendants reassert and incorporate by reference the answers in
the previous paragraphs as if fully set forth.

181.   Denied.

182.   Denied.

183.   Admitted to the extent that assets of PCCS have been delivered.

184.   Denied.

185.   Denied.

## COUNTERCLAIMS

**NOW COME** Defendants/Counterclaim Plaintiffs Port City Contracting
Services, Inc., and Robert P. Sharpe, complaining of the Plaintiffs/Counterclaim
Defendants as follows:

## FACTS

1.   As of the filing of the Complaint, PCCS was a Service-Disabled Veteran
Owned Business ("SDVOB") within the meaning of a program offered by the United
States.   As a SDVOB, PCCS received preferential treatment in government
contracting and procurement processes.

2.   Sharpe is a service-disabled veteran by reason of post-traumatic stress
disorder ("PTSD") caused by his military service.

3.   To qualify as a SDVOB, a business must be majority owned and
controlled by one or more service-disabled veterans.

-21-

4. As Chief Financial Officer, Spark was responsible for keeping the books of PCCS, ensuring that payments to creditors were timely made, ensuring payroll was properly administered, and ensuring that officers and employees were compensated as agreed by the officers of PCCS. Spark is not a service-disabled veteran.

5. As Chief Operating Officer and President of PCCS, Eastham was responsible for day-to-day operations, including tasks he specifically agreed to oversee or handle directly. Eastham is not a service-disabled veteran.

6. In December of 2020, Eastham, Spark, and Sharpe agreed to recognize the taxable value of new equity shares issued to them that month. For accounting and tax purposes, Spark recorded those equity values as "Manual Check" entries in the company's ledgers for amounts corresponding to those assigned as values to each shareholder's newly issued stock as follows:

    a. Sharpe, no new shares issued;

    b. Eastham, 1,204 shares issued at a value per share of $15.19 for a total book value of $18,280.04;

    c. Spark, 1,916 shares issued at a value per share of $15.19 for a total book value of $29,100;

    d. Jay Graves, 1,405 shares issued at a value per share of $15.19 for a total book value of $21,340;

    e. Ryan Albert, 1,150 shares issued at a value per share of $15.19 for a total book value of $17,460.

-22-

7. The shareholders had agreed that issued stock would compensate them for any invested work they had performed during the company's formative period, when it was unable to hire employees.

8. On December 31, 2020, Spark made manual check entries in all the above-cited amounts but also made an actual payment to Eastham in the amount of $21,940.17, which he categorized as "Misc. pay."

9. The Plaintiffs knew at all times that a threshold requirement for a business to qualify as a SDVOB by the United States Department of Veterans Affairs is that a service-disabled veteran must maintain not only equitable majority ownership but control over the company.

10. The Plaintiffs knew at all times that one measure of "control" used by the United States is whether a service-disabled veteran owner is the highest compensated employee in the company.

11. By Spark giving, and Eastham receiving, a payment of $21,940.17 without Sharpe's knowledge, they increased Eastham's income for 2020 above Sharpe's income in violation of SDVOB regulations.

12. PCCS, therefore, was presumptively disqualified to do business as a SDVOB, which is its predominant business function. The surreptitious payment opens PCCS to liability to the United States and may disqualify it from receiving contracts as a SDVOB.

-23-

13.     Whether or not the payment was legitimate, Spark and Eastham had a duty to inform the company that Sharpe's compensation for 2020 must be increased to ensure compliance with SDVOB regulations, but they did not do so.

14.     The Defendants are informed and believe, and therefore allege, that the Plaintiffs conspired to use their positions of trust and confidence as officers of PCCS to cause it to issue unauthorized payment to Eastham and damage PCCS.

15.     Their misapplication of PCCS funds on December 31, 2020, and omission to PCCS also was designed to ensure Sharpe would not easily discover the payment because, as the Plaintiffs well knew, PCCS would use a different payroll processing company beginning January 1, 2021.  PCCS's pre-2021 payroll records would become inaccessible to Sharpe without elevated efforts he would only take if provoked by suspicion that his trusted partners in charge of the books, records, and operations of the company had misapplied company funds and/or failed to disclose the federal regulatory violation it caused.

16.     Sharpe did not have reason to suspect wrongdoing on the part of the Plaintiffs until winter of 2021.

17.     Sharpe, who had delegated the routine financial and taxation aspects of PCCS to Spark, did not inspect financial records pertaining to individual employee payments unless prompted by Spark or some other circumstance requiring his attention as CEO.

18.     In or about December of 2021, Sharpe reviewed internal corporate communications and discovered Eastham and Spark had been operating against him

-24-

in many respects, and against the interests of PCCS. He made it clear to both of them that their conduct was unacceptable and then terminated them as employees on December 14, 2021.

19.    Spark contacted PCCS's telecommunications service provider, Verizon, and transferred business lines and payment plans for company property to himself on the day of his termination.

20.    Spark had been issued two phones, two iPad tablets, and a laptop, all of which were owned by PCCS under payment plans with Verizon. After his termination, Spark kept the company's property.

21.    Data constituting business opportunities, plans, and contacts developed by Eastham, Spark, and Sharpe concerning PCCS's entry into pharmaceutical distribution was stored on those devices. The data did not exist on any other PCCS-owned devices or storage services under its control once Spark converted PCCS's equipment.

22.    Spark's conversion of the devices to his own use, and to the exclusion of PCCS's ownership rights, thus also constituted misappropriation of PCCS's proprietary information.

23.    A SDVOB must periodically apply for re-certification of its status, which PCCS was required to do in May of 2022.

24.    A threshold requirement for recertification is the execution of a form by each owner of the SDVOB affirming his or her ownership interest and status as a

-25-

service-disabled veteran or not. The SDVOB cannot submit an application to the United States for recertification without the required signatures.

25.    The United States' requirement that each equity owner in a business that intends to operate as a SDVOB execute an affirmation of the type required by the United States creates a special relationship of trust and confidence between all shareholders and between each shareholder and the company. Where any owner could cripple the company's ability to function as intended by all shareholders by refusing to execute a statement accurately reflecting his or her ownership interest in that company, the shareholders and the company have entrusted each other with exercising duties of good faith, fair dealing, and loyalty, and thus created fiduciary relationships among them.

26.    Additionally, consistent with the principle that fiduciary relationships may be created by contract, the relationships between shareholders and the company are contractual in nature. A party to a contract has a duty to exercise any discretion in performance of that contract with good faith.

27.    The Defendants asked Spark and Eastham to execute accurate affirmations of their ownership interests in PCCS in the form required by the United States in May and June of 2022, but acting in concert they refused.

28.    By refusing to execute VA Form 877 accurately showing the existing shareholder interests in PCCS, the Plaintiffs breached their fiduciary obligations to other shareholders and PCCS.

-26-

29.    The Plaintiffs' refusal to execute VA Form 877 accurately showing the existing shareholder interests in PCCS was in bad faith and therefore breached their contractual duties.

30.    As a result of the Plaintiffs' breaches of duty, PCCS lost its certification as a SDVOB, which was a lucrative line of business for the company.

31.    Although the December 31, 2021, payment to Eastham created a presumption that PCCS was disqualified from recertification, the United States provides grounds for qualification even when the service-disabled veteran is not the highest compensated employee. The Plaintiffs' refusal to execute VA Form 877 prevented PCCS from obtaining recertification under an exception despite the effect of the payment to Eastham.

32.    The Defendants are informed and believe, and therefore allege, that evidence of breach of fiduciary and contractual duties on the part of employees and officers in making and accepting the payment would permit PCCS to qualify as a SDVOB.

33.    The Plaintiffs' refusal to execute Form 877, however, constitutes a willful and intentional breach of their duties to other shareholders and PCCS.

34.    As set forth herein, the Plaintiffs agreed to do unlawful acts or to perform lawful acts unlawfully, which caused injury to PCCS and Sharpe; therefore, by virtue of their civil conspiracy, the Plaintiffs are jointly and severally liable.

-27-

## FIRST COUNTERCLAIM
(Breach of Fiduciary Duties)

35.    The Defendants reassert and incorporate by reference the allegations in the previous paragraphs as if fully set forth.

36.    As corporate officers, Eastham and Spark were *de jure* fiduciaries of PCCS.

37.    Additionally, Eastham and Spark owed fiduciary duties to PCCS and the other shareholders due to their special relationship of trust and confidence.

38.    Because of the unique requirements established by the United States for SDVOBs, such a company, here PCCS, and its shareholders necessarily trusted each other to take the steps necessary to ensure the company's continued qualification to do business as a SDVOB. Without such a special relationship, the promise of continued operation as a SDVOB would be illusory; therefore, the shareholders and PCCS were in a *de facto* fiduciary relationship.

39.    The December 31, 2020, payment to Eastham caused PCCS to violate the terms of the SDVOB Program and therefore was at the time taken known or should have been known or believed by the Plaintiffs to be clearly in conflict with the best interests of the corporation.

40.    Making and accepting that payment breached the Plaintiffs' fiduciary duties to PCCS.

41.    The Plaintiffs also were asked to execute a truthful statement of their ownership interests in PCCS, which they refused to do, knowing that refusal was contrary to the interests of PCCS.

-28-

42. Filing that statement, VA Form 877, was a prerequisite for PCCS to be re-certified as a SDVOB and was a required element of its application.

43. Without a fully executed Form 877, PCCS could not apply to continue doing business as a SDVOB.

44. Were PCCS able to apply, it would have sought, and likely received, certification despite the misapplication of funds that presumptively disqualified it.

45. The Plaintiffs' breach of fiduciary duties to PCCS and Sharpe, who as a shareholder was owed *de facto* fiduciary duties set forth herein, caused PCCS to lose millions of dollars in government contracts that it would have been awarded as part of its ongoing business relationships with government agencies, and Sharpe lost employment income from the company's resulting failure.

46. As a direct and proximate result of the Plaintiffs' breach of fiduciary duties, PCCS and Sharpe have suffered direct and consequential damages in an amount exceeding twenty-five thousand dollars ($25,000).

47. The Plaintiffs' breach of fiduciary duties was willful and wanton and in reckless disregard of the rights of PCCS and Sharpe, warranting punitive damages in an amount to be determined by the jury.

## SECOND COUNTERCLAIM
(Breach of Contract)

48. The Defendants reassert and incorporate by reference the allegations in the previous paragraphs as if fully set forth.

49. Sharpe, PCCS, and the Plaintiffs were in a contractual relationship.

-29-

50.     The Plaintiffs owed a duty to Sharpe and PCCS as a shareholder to act in good faith when exercising discretion in their performance of the contract.

51.     The Plaintiffs' refusal to execute Form 877 was in bad faith in a willful effort to further injure Sharpe and PCCS.

52.     The Plaintiffs' breach of contract caused PCCS to lose millions of dollars in government contracts that it would have been awarded as part of its ongoing business relationships with government agencies.

53.     The Plaintiffs' breach of contract caused Sharpe to lose his investment in the company and employment income.

54.     Sharpe therefore suffered injury separate and distinct from the injuries sustained by PCCS.

55.     As a direct and proximate result of the Plaintiffs' breach of contract, PCCS and Sharpe have suffered direct and consequential damages in an amount exceeding twenty-five thousand dollars ($25,000).

### THIRD COUNTERCLAIM
(Conversion—Spark)

56.     The Defendants reassert and incorporate by reference the allegations in the previous paragraphs as if fully set forth.

57.     On the day of his termination from PCCS, Spark without authorization changed the account information on hardware owned by PCCS and did not return the property to PCCS.

58.     Spark has exercised ownership of the property belonging to PCCS.

-30-

59. Subject to its payment obligations, PCCS owned the phones, tablets and computer on which its irreplaceable and proprietary data was stored.

60. The Defendants are informed and believe, and therefore allege, that Spark exercised a right of ownership over PCCS's property to deprive PCCS of the data contained therein and to further injure its business.

61. As a direct and proximate result of Spark's conversion, PCCS has suffered direct and consequential damages in an amount exceeding twenty-five thousand dollars ($25,000).

## FOURTH COUNTERCLAIM
### (*In the Alternative*—Unjust Enrichment)

62. The Defendants reassert and incorporate by reference the allegations in the previous paragraphs as if fully set forth.

63. Eastham was enriched by his receipt of funds from PCCS that were not earned or owed.

64. Spark was unjustly enriched by his retention of PCCS property, including its valuable and proprietary data.

65. PCCS did not confer such benefits on the Plaintiffs officiously or without expectation of compensation. Their enrichment was unjust under the circumstances.

66. As a direct and proximate result of the Plaintiffs' breach of fiduciary duties, PCCS has suffered direct and consequential damages in an amount exceeding twenty-five thousand dollars ($25,000).

-31-

### FIFTH COUNTERCLAIM
(Defamation — Eastham)

67.    The Defendants reassert and incorporate by reference the allegations in the previous paragraphs as if fully set forth.

68.    On July 8, 2022, Eastham contacted a business partner of Sharpe's, Mary Puncochar, former senior executive at Ascensia Diabetes Care, the primary client of PCCS and the foundation of its business with the Department of Veterans Affairs.

69.    Eastham wanted to do business with Ascensia, not knowing Puncochar had left that company. He texted her that, among other things, Sharpe had been found "guilty of fraud" and had "lied to the court."

70.    Those are false statements published with the malicious intent to injure Sharpe's reputation and business relations.

71.    Eastham said he "wanted to make sure you have facts when working with Trey."

72.    Sharpe has never been found guilty of fraud or lied to a court. A true and accurate copy of this text message, which Puncochar provided to Sharpe, is attached as Exhibit A.

73.    The July 8 email to Puncochar directly charged Sharpe with crimes of moral turpitude and unauthorized acts, or with improper, unlawful, or unethical acts or practices.

74.    The communication tended to subject Sharpe to ridicule, public hatred, contempt and disgrace.

-32-

75.    The defamatory statements were false.

76.    The defamatory statements require no context, inference, or interpretation using facts not present in the publication itself to understand its meaning and were not made within any qualified or conditional privilege.

77.    Eastham was referencing a separate civil matter in which two other companies, The DaVinci Company, LLC and DaVinci Aerospace, LLC (collectively the "DaVinci Companies"), obtained a default judgment against PCCS Inc. for various claims. Claims against Sharpe were not decided in any manner, and he answered with a complete denial of all allegations.

78.    When he made the defamatory statements to Puncochar, Eastham was working with the owner of the DaVinci Companies, Daniel Shoaf, to force Sharpe to give up his voting stock in PCCS Inc. to Shoaf, which upon information and belief they had agreed would benefit Eastham and Spark.

79.    Eastham knew or should have known with the exercise of reasonable diligence that the default judgment obtained in the DaVinci Companies matter was only against PCCS Inc. and that none of the conduct alleged in the Complaint had been decided on the merits against Sharpe.

80.    Accordingly, Eastham published the defamatory statements with knowledge that they were false, with reckless disregard for the truth, or with a high degree of awareness of their probable falsity. The publication thus was done with actual malice.

-33-

81.     The only purposes of the publication were to injure Sharpe's reputation with an important business associate and to achieve leverage in Eastham's collateral plans to take over PCCS Inc. by potentially alienating an important business associate from PPCS Inc. so long as Sharpe was in charge.

82.     In so doing, Eastham conspired with other parties seeking to remove Sharpe from his position as the controlling owner of PCCS, Inc.  Eastham consulted with those other co-conspirators, Spark and Shoaf, by sharing information meant to apply pressure on Sharpe to step down and thereby also resolve disputes with Shoaf.

83.     Shoaf published similarly defamatory statements to PCCS Inc.'s CEO, Holly Grange with, upon information and belief, the same intent and for the same purpose that Eastham sent his defamatory message to Puncochar.

84.     In furtherance of this common plan, Shoaf followed up his libelous email with a telephone conversation during which he encouraged Grange to convince Sharpe to accede to their demands.

85.     Shoaf's defamatory conduct is the subject of a separate action filed concurrently with this Amended Answer and Counterclaims.

86.     Eastham, Spark, and Shoaf directly communicated with each other about their goal of ousting Sharpe from his voting shares in PCCH and achieving other goals to Sharpe's detriment.

87.     The Defendants are informed and believe, and therefore allege, that an element of their agreement was to communicate defamatory matters to important

-34-

third parties for the purpose of undermining Sharpe's position within his company and with business associates they believed to be of importance to Sharpe.

88.     Shoaf, Eastham, and Spark, therefore, agreed to perform unlawful acts or to perform lawful acts unlawfully. Therefore, they are jointly and severally liable for any damages awarded in either claim.

89.     Sharpe has suffered actual damages to be determined by a jury.

90.     While Sharpe need not have suffered actual damages from the libel per se, the malice with which it was done subjects the Defendant to an award of punitive damages to be awarded in an amount determined by the jury.

91.     The existence of a civil conspiracy involving Eastham, Spark, and Shoaf subjects them both to joint and several liability.

92.     The claim against Shoaf may be consolidated with this action for trial on the claims for libel per se.


WHERFORE, the Defendants pray as follows:

1.     That the Plaintiffs have and recover nothing of these Defendants;

2.     That PCCS Inc. has and recovers compensatory and consequential damages from the Plaintiffs, jointly and severally, in an amount exceeding twenty-five thousand dollars ($25,000);

3.     That Sharpe has and recovers compensatory and consequential damages from the Plaintiffs, jointly and severally, in an amount exceeding twenty-five thousand dollars ($25,000);

-35-

4.      That in the alternative to damages, PCCS receive restitution from the Defendants;

5.      That the Defendants have and recover from the Plaintiffs, jointly and severally, punitive damages in an amount to be determined by the jury;

6.      That the conspirators be held liable, jointly and severally, for all damages awarded due to their defamatory publications.

7.      That the Defendants be awarded attorney's fees, jointly and severally, as provided by law;

8.      That costs be taxed against the Plaintiffs, jointly and severally;

9.      That this matter be consolidated with the concurrent action against Shoaf for trial; and

10.     For trial by jury on all issues so triable.


Respectfully submitted this the 5th day of August 2022.

REISS & NUTT, PLLC
*Attorneys for Defendants*

By:

W. Cory Reiss
N.C. State Bar No. 41549
Email: wcreiss@reissnutt.com
Kyle J. Nutt
N.C. State Bar No. 43469
Email: kjnutt@reissnutt.com
1221 Floral Parkway, Suite 104
Wilmington, NC 28403
Telephone: (910) 420-4674
Facsimile: (910) 420-4637

-36-

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that the foregoing document was duly served on the following persons, pursuant to Rule 5 of the North Carolina Rules of Civil Procedure by depositing the same in a postage-paid, properly addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service:

Thomas Babel
Davis Hartman Wright, LLP
P.O. Box 11320 (28404)
Wilmington, NC 28403
Fax: (910) 756-4080
tsb@dwlegal.com
*Attorneys for Plaintiffs*

This the 5th day of August 2022.

REISS & NUTT, PLLC
*Attorneys for Defendants*

By: _____
W. Cory Reiss