IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:24-MC-3-D

| | |
|---|---|
| MARK EASTHAM and PETER SPARK, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>PORT CITY CONTRACTING )<br>SERVICES, INC., et al., )<br>)<br>Defendants. ) | **ORDER** |

On May 4, 2022, Mark Eastham ("Eastham") and Peter Spark ("Spark") (collectively, "plaintiffs") filed a complaint against Port City Contracting Services, Inc. ("Port City") and Robert P. Sharpe ("Sharpe") (collectively, "defendants") in New Hanover County Superior Court. See Eastham v. Port City Contracting Servs., Inc., No. 5:23-AP-89, [D.E. 1-1] (Bankr. E.D.N.C. Sept. 22, 2023). On December 16, 2022, Port City filed a voluntary petition for relief under chapter 7 ("chapter 7") of Title 11 of the United States Code ("the Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of North Carolina ("the bankruptcy court"). See In re Port City Contracting Servs., 5:22-BK-2917, [D.E. 1] (Bankr. E.D.N.C. Dec. 16, 2022). Algernon L. Butler, III ("Butler") serves as Port City's chapter 7 trustee. See Port City Contracting Servs., 5:22-BK-2917, [D.E. 8] (Bankr. E.D.N.C. Dec. 20, 2022). On March 3, 2023, Sharpe filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code ("chapter 13") in the bankruptcy court. See In re Sharpe, 5:23-BK-607, [D.E. 1] (Bankr. E.D.N.C. Mar. 3, 2023). Joseph A. Bledsoe, III ("Bledsoe") served as Sharpe's chapter 13 trustee. See Sharpe, 5:23-BK-607, [D.E. 9] (Bankr. E.D.N.C. Mar. 7, 2023).

On September 22, 2023, Port City and Sharpe removed Eastham and Spark's action to the bankruptcy court. See Eastham, No. 5:23-AP-89, [D.E. 1] (Bankr. E.D.N.C. Sept. 22, 2023). On March 4, 2024, Eastham and Spark filed a second amended complaint in the bankruptcy court against Butler, Port City, Sharpe, Stone Bay Tactical, LLC, and SRS Supply, LLC, alleging breach of fiduciary duty, constructive fraud, production of corporate records, breach of contract, breach of the North Carolina Wage and Hour Act ("NCWHA"), defamation, breach of the Stock Redemption and Release Agreement ("Release Agreement"), violations of N.C. Gen. Stat. § 55-7-42, fraudulent transfer, abuse of process, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"). See Eastham, No. 5:23-AP-89, [D.E. 57] (Bankr. E.D.N.C. Mar. 4, 2024).

On March 5, 2024, Sharpe moved in the bankruptcy court to withdraw reference, and the bankruptcy court forwarded the motion to this court [D.E. 1]. On March 29, 2024, Eastham and Spark responded in opposition [D.E. 3]. On April 11, 2024, Sharpe replied [D.E. 4]. On June 20, 2024, the bankruptcy court approved a settlement agreement among the parties. See Eastham, No. 5:23-AP-89, [D.E. 130] (Bankr. E.D.N.C. June 20, 2024). In the settlement agreement, Eastham and Spark agreed to dismiss without prejudice their breach of fiduciary duty, constructive fraud, production of corporate records, breach of contract, NCWHA, Release Agreement, N.C. Gen. Stat. § 55-7-42, and fraudulent transfer claims. See id. at 4. As explained below, the court denies Sharpe's motion to withdraw reference.

2

I.

On February 5, 2019, Port City was founded. See Compl. ¶ 19.[1] Port City supplies diabetes testing strips to the United States Department of Veterans Administration. See id. at ¶ 14. Eastham and Spark were officers and minority Class B shareholders of Port City. See id. at ¶¶ 15, 21–22, 28–30. Eastham and Spark also sat on Port City's board of directors. See id. at ¶ 38. Sharpe owns 100% of Port City's Class A shares. See id. at ¶ 16. Only Class A shareholders may vote at Port City's shareholder meetings. See id. at ¶ 17. Thus, Sharpe "exercises complete control" over Port City. Id. at ¶ 67. Eastham and Spark allege that Sharpe uses Port City's assets, and the assets of other companies Sharpe owns, "as if they were his own." Id. at ¶ 71; see id. at ¶¶ 67–93.

Eastham and Spark entered various agreements that governed the terms of their employment and compensation with Port City. See id. at ¶¶ 25–27, 31–34. Eastham and Spark allege that Sharpe and Port City promised to pay them and other key employees deferred compensation once Port City's revenues grew. See id. at ¶¶ 32, 35, 41–42, 44. Port City "experienced significant revenue and profit growth in 2020 and 2021." Id. at ¶ 36.

On December 10, 2021, Sharpe "unilaterally [gave] himself a significant increase in salary and an annual $100,000.00 bonus" and "used [Port City] funds to lease a car for his own personal use." Id. at ¶¶ 39–40. Eastham and Spark objected and demanded that Port City pay its deferred compensation first. See id. at ¶¶ 41–42, 44–45. On December 14, 2021, Sharpe terminated Eastham and Spark's employment and removed them as officers and directors of Port City. See id. at ¶ 46. Sharpe told Spark to "decide what equipment owned by [Port City] [Sharpe] wish[ed] to keep," and the parties would agree to a deal to help make Spark whole. Id. at ¶¶ 48–49. On

---

[1] All citations to the complaint are to Eastham and Spark's second amended complaint in the bankruptcy court. See Eastham, No. 5:23-AP-89, [D.E. 57] (Bankr. E.D.N.C. Mar. 4, 2024).

3

December 20, 2021, "Sharpe filed a criminal complaint against Spark related to theft of the same equipment that he offered to sell Spark, and that Spark had agreed to purchase." Id. at ¶ 56. The "local authorities decided that there was no support for any criminal actions against Spark and dropped the matter." Id. Port City never paid Eastham or Spark deferred compensation. See id. at ¶ 57.

On February 28, 2022, Eastham made a written demand on Port City under N.C. Gen. Stat. § 55-16-02 to inspect Port City's corporate records. See id. at ¶ 65. Port City did not respond. See id. at ¶ 66. On March 20, 2022, Sharpe sent an email to several people to tell them Eastham and Spark had "defrauded the company," and Sharpe said "one or both were guilty of 'embezzlement.'" Id. at ¶ 94. On May 4, 2022, Eastham and Spark sent Port City a demand letter under N.C. Gen. Stat. § 55-7-42 to demand Port City investigate and bring claims against Sharpe. See id. at ¶ 104. On May 17, 2022, Port City refused. See id. at ¶ 105.

On September 16, 2022, Sharpe filed another criminal complaint against Spark alleging Spark embezzled money from Port City. See id. at ¶ 112. Sharpe posted Eastham and Spark's counsel's contact information on LinkedIn and wrote that "this is the attorney representing the men that abused and exploited a disabled veteran." Id. at ¶ 116 (quotation and alteration omitted). On October 1, 2022, Eastham and Spark's counsel demanded Sharpe remove his LinkedIn posts. See id. at ¶ 118. On October 3, 2022, Sharpe posted on LinkedIn that he would not remove his posts. See id. at ¶ 120. On October 4, 2022, Sharpe posted that he fired Eastham and Spark for "embezzlement and fraud." Id. at ¶ 121 (quotation omitted).

On December 16, 2022, Port City filed a voluntary petition for relief under chapter 7. See Port City Contracting Servs., 5:22-BK-2917, [D.E. 1] (Bankr. E.D.N.C. Dec. 16, 2022). On March 3, 2023, Sharpe filed a voluntary petition for relief under chapter 13. See Sharpe, 5:23-BK-607,

[D.E. 1] (Bankr. E.D.N.C. Mar. 3, 2023). On April 27, 2023, Butler and Bledsoe jointly applied for the bankruptcy court to appoint a special counsel to "investigate and prosecute certain claims that Port City Contracting Services, Inc. and/or Robert P. Sharpe may have against third parties." Sharpe, 5:23-BK-607, [D.E. 29] 3 (Bankr. E.D.N.C. Apr. 27, 2023). On July 25, 2023, the bankruptcy court granted the application and entered a consent order in which "Sharpe . . . irrevocably withdr[e]w . . . personal claims Sharpe may have against third parties" including Eastham and Spark. Sharpe, No. 5:23-BK-607, [D.E. 79] ¶ 6(i) (Bankr. E.D.N.C. July 25, 2023). Moreover, Sharpe agreed that if the bankruptcy court dismissed his chapter 13 case, Sharpe assigned "his individual interest in any claims and/or litigation within the scope of special counsel's representation to" Port City's bankruptcy estate. Id. at ¶ 6(k). The scope of special counsel's representation included investigating "Sharpe's potential claims against third parties []including Eastham [and] Spark." Id. at ¶ 2(a). On January 5, 2024, the bankruptcy court dismissed Sharpe's chapter 13 case. See Sharpe, No. 5:23-BK-607, [D.E. 129] (Bankr. E.D.N.C. Jan. 5, 2024).

## II.

United States District Courts have original, but not exclusive, jurisdiction over all civil proceedings arising under, arising in, or related to a case under the Bankruptcy Code. See 28 U.S.C. § 1334(b); Conway v. Smith Dev., Inc., 64 F.4th 540, 544 (4th Cir. 2023). District courts may refer bankruptcy cases to non-Article III bankruptcy judges. See 28 U.S.C. § 157(a); Kiviti v. Bhatt, 80 F.4th 520, 533 (4th Cir. 2023). Once a district court refers a case to a bankruptcy court, the "district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] under this section, . . . for cause shown." 28 U.S.C. § 157(d); see Houck v. Substitute Tr. Servs., Inc., 791 F.3d 473, 481 (4th Cir. 2015). Courts call this "permissive

withdrawal." See, e.g., Harlow v. Wells Fargo & Co., No. 7:20-MC-30, 2022 WL 2231602, at *2 (W.D. Va. June 21, 2022) (unpublished); Mooring Cap. Fund, LLC v. Sullivan, No. 3:16-CV-74, 2016 WL 4628572, at *4 (N.D.W. Va. Sept. 6, 2016) (unpublished). In contrast, a district court must withdraw reference ("mandatory withdrawal") when, "on timely motion of a party, . . . the [district] court determines that resolution of the proceeding requires consideration of both [the Bankruptcy Code] and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d); see In re Leckie Smokeless Coal Co., 99 F.3d 573, 578 (4th Cir. 1996); Mooring Cap. Fund, LLC, 2016 WL 4628572, at *4; In re U.S. Airways Grp., Inc., 296 B.R. 673, 677 (E.D. Va. 2003).

As for mandatory withdrawal, courts use the "substantial and material" approach to determine whether section 157(d) mandates withdrawal of reference. See, e.g., In re Dozier Fin., Inc., No. 4:18-CV-1888, 2018 WL 4599860, at *3 (D.S.C. Sept. 6, 2018) (unpublished), report and recommendation adopted by 2019 WL 1075072 (D.S.C. Mar. 7, 2019) (unpublished); In re Health Diagnostic Lab'y, Inc., No. 3:17-CV-413, 2017 WL 3084626, at *2 (E.D. Va. July 19, 2017) (unpublished); Mooring Cap. Fund, LLC, 2016 WL 4628572, at *4; In re First Nat'l Bancshares, Inc., No. 7:12-3441, 2014 WL 108372, at *2 (D.S.C. Jan. 10, 2014) (unpublished); Vieira v. AGM, II, LLC, 366 B.R. 532, 535 (D.S.C. 2007); Snodgrass v. New Century Mortg. Corp., 358 B.R. 675, 678–79 (S.D.W. Va. 2006); In re Carolina Produce Distribs., Inc., 110 B.R. 207, 209–10 (W.D.N.C. 1990). Under this approach, district courts withdraw reference from bankruptcy courts "when a substantial and material consideration of a non-Title 11 federal statute will be necessary to the resolution of the dispute." Mooring Cap. Fund, LLC, 2016 WL 4628572, at *4 (quotation omitted); see Snodgrass, 358 B.R. at 678. Moreover, "a court must need to make a significant interpretation of a federal statute as opposed to making an insignificant interpretation

6

or merely applying the law to the facts." Carolina Produce Distribs., Inc., 110 B.R. at 210; see Mooring Cap. Fund, LLC, 2016 WL 4628572, at *4; Snodgrass, 358 B.R. at 679.

Sharpe argues he "intends to assert counter claims, including claims under 41 U.S.C. § 4712 and 31 U.S.C. [§] 3730(h)." [D.E. 1] ¶ 3. Eastham and Spark argue that Sharpe has waived any claims against them, Sharpe failed to timely file counterclaims, Sharpe has not exhausted administrative remedies for his alleged counterclaims, Sharpe cannot bring his alleged counterclaims against them, and one of Sharpe's alleged counterclaims is a scheduled asset of Port City that Sharpe "has no authority or control over." [D.E. 3] 14–15.

On July 25, 2023, in Sharpe's chapter 13 case, the bankruptcy court entered a consent order in which "Sharpe . . . irrevocably withdr[e]w . . . personal claims Sharpe may have against third parties" including Eastham and Spark. Sharpe, No. 5:23-BK-607, [D.E. 79] ¶ 6(i) (Bankr. E.D.N.C. July 25, 2023). Moreover, Sharpe agreed that in the event his individual bankruptcy case was dismissed, he assigned "his individual interest in any claims and/or litigation within the scope of special counsel's representation to" Port City's bankruptcy estate. Id. at ¶ 6(k). The scope of special counsel's representation included investigating "Sharpe's potential claims against third parties []including Eastham [and] Spark." Id. at ¶ 2(a). On January 5, 2024, the bankruptcy court dismissed Sharpe's chapter 13 case. See Sharpe, No. 5:23-BK-607, [D.E. 129] (Bankr. E.D.N.C. Jan. 5, 2024). Thus, Sharpe cannot assert his alleged counterclaims against Eastham and Spark. See, e.g., Addax Energy SA v. M/V Yasa H. Mulla, 987 F.3d 80, 92 (4th Cir. 2021) (Agee, J., dissenting) (citing "the generally accepted proposition that . . . an unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor" (cleaned up)); duPont de-Bie v. Vredenburgh, 490 F.2d 1057, 1061 (4th Cir. 1974).

Alternatively, in the bankruptcy court's pretrial scheduling order, the bankruptcy court, inter alia, ordered Sharpe "to file an Answer or other responsive pleadings . . . [by] March 22, 2024." Eastham, No. 5:23-AP-89, [D.E. 54] 2 (Bankr. E.D.N.C. Mar. 1, 2024). Sharpe did not answer the amended complaint or file any counterclaims within the prescribed time. Instead, Sharpe filed a motion for withdrawal of reference, a motion for access to discovery, two motions to quash, and a motion to recuse. See Eastham, No. 5:23-AP-89, [D.E. 59, 65, 70, 78, 95] (Bankr. E.D.N.C.). On May 6, 2024, Sharpe moved to dismiss Eastham and Spark's defamation claim. See Eastham, No. 5:23-AP-89, [D.E. 107] (Bankr. E.D.N.C. May 6, 2024). Thus, Sharpe's assertion that he belatedly "intends to assert counter claims" under other federal statutes does not warrant withdrawal of reference. [D.E. 1] ¶ 3; cf. Fed. R. Civ. P. 13(a)–(b), 55(a).

In any event, even if Sharpe could assert counterclaims under the federal statutes he cites, the bankruptcy court's resolution of those claims would not require a "significant interpretation" of those statutes. Carolina Produce Distribs., Inc., 110 B.R. at 210. To state a claim under either of the statutes Sharpe cites, Sharpe must plausibly allege, inter alia, that Eastham and Spark were his employers. See, e.g., Delebreau v. Danforth, 743 F. App'x 43, 44 (7th Cir. 2018) (per curiam) (unpublished) ("[Section 4712] prohibits reprisals by an employer—those who can discharge, demote, or otherwise discriminate—against employees who disclose an employer's misconduct." (cleaned up)); Zahodnick v. Int'l Bus. Machs. Corp., 135 F.3d 911, 914 (4th Cir. 1997) ("[Section 3730(h)] prevents the harassment, retaliation, or threatening of employees who assist in or bring qui tam actions."); Brach v. Conflict Kinetics Corp., 221 F. Supp. 3d 743, 747–50 (E.D. Va. 2016); Nifong v. SOC, LLC, 190 F. Supp. 3d 549, 555–56 (E.D. Va. 2016); United States ex rel. Ackley v. Int'l Bus. Machs. Corp., 110 F. Supp. 2d 395, 399 (D. Md. 2000).

Eastham and Spark were officers and minority Class B shareholders of Port City. See Compl. ¶¶ 15, 21–22, 28–30. Sharpe owned 100% of Port City's Class A shares, which gave Sharpe "all the power to run" Port City because only Class A shareholders had the right to vote during shareholder meetings. Id. at ¶¶ 16–17. Accordingly, Sharpe's purported counterclaims against Eastham and Spark would fail because he could not plausibly allege Eastham and Spark were his employers. See, e.g., Brach, 221 F. Supp. 3d at 747–50; Nifong, 190 F. Supp. 3d at 555–56; cf. [D.E. 3] 14. The bankruptcy court could conclude that Sharpe's purported counterclaims fail without a significant interpretation of the relevant federal statutes. Thus, Sharpe's alleged counterclaims do not warrant mandatory withdrawal of reference.

Alternatively, Sharpe argues that his counterclaims are "personal injury tort claims." [D.E. 1] ¶ 3. "Under the Bankruptcy Code, a district court, and not the bankruptcy judge, must try personal injury tort and wrongful death claims." In re Beard, 811 F.2d 818, 832 (4th Cir. 1987); see 28 U.S.C. § 157(b)(5); Stern v. Marshall, 564 U.S. 462, 487 (2011); McCorkle v. Herold, No. 3:18-MC-4, 2018 WL 2470731, at *1 & n.1 (W.D. Va. May 31, 2018) (unpublished). Bankruptcy courts, however, have "authority to preside over [a personal injury tort claim] and adjudicate motions, including dispositive motions, until [the claim] is ready for trial." In re Freeway Foods of Greensboro, Inc., 466 B.R. 750, 777–78 (Bankr. M.D.N.C. 2012); see 28 U.S.C. § 157(b)(5) ("The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court . . . ." (emphasis added)); Collum v. City of Chicago, No. 23 C 2835, 2023 WL 6127158, at *2 (N.D. Ill. Sept. 19, 2023) (unpublished) (collecting cases).

Sharpe's alleged counterclaims are federal statutory claims, not personal injury tort claims. See [D.E. 1] ¶ 3. Accordingly, Sharpe's purported counterclaims do not mandate withdrawal.

9

Sharpe also argues that Eastham and Spark have alleged personal injury tort claims against him. See id. at ¶ 1. Eastham and Spark's remaining claims against Sharpe are: (1) defamation, (2) abuse of process, (3) IIED, and (4) NIED. See Eastham, No. 5:23-AP-89, [D.E. 57] ¶¶ 176–83, 208–20 (Bankr. E.D.N.C. Mar. 4, 2024). "Personal injury torts" include "a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages, and includes damage to an individual's person and any invasion of personal rights, such as libel, slander[,] and mental suffering" but excludes claims that have "earmarks of a financial, business or property tort claim, or a contract claim." In re Arnold, 407 B.R. 849, 852 (Bankr. M.D.N.C. 2009) (quotations omitted); see Moore v. Idealease of Wilmington, 358 B.R. 248, 250–52 (E.D.N.C. 2006). Thus, Eastham and Sparks's IIED, NIED, and defamation claims are "personal injury torts." See, e.g., Arnold, 407 B.R at 853; In re Thomas, 211 B.R. 838, 841–42 (Bankr. D.S.C. 1997). The bankruptcy court, however, has authority to preside over these claims until they are ready for trial, including ruling on Sharpe's pending motion to dismiss Eastham and Spark's defamation claim. See Collum, 2023 WL 6127158, at *2; Freeway Foods of Greensboro, Inc., 466 B.R. at 777–78. Thus, Eastham and Spark's claims do not mandate withdrawal.

As for permissive withdrawal, courts determine whether a party has shown cause for withdrawal of reference by considering factors including: "(1) whether the proceeding is core or non-core, (2) uniformity in the administration of bankruptcy proceedings, (3) expediting the bankruptcy process and promoting judicial economy, (4) efficient use of the resources of the debtor and creditors, (5) reduction of forum shopping, and (6) the preservation of the right to a trial by a jury." Nehme v. El Khoury, 610 B.R. 247, 251–52 (E.D.N.C. 2019); see Sec. Farms v. Int'l Brotherhood of Teamsters, 124 F.3d 999, 1008 (9th Cir. 1997); In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993); In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990); Holland Am. Ins. Co.

v. Succession of Roy, 777 F.2d 992, 999 (5th Cir. 1985); In re Dozier Fin., Inc., No. CV 4:18-1888, 2019 WL 1075072, at *4 (D.S.C. Mar. 7, 2019) (unpublished); ACC Retail Prop. Dev. & Acquisition Fund, LLC v. Bank of Am., N.A., No. 5:12-CV-361, 2012 WL 8667572, at *2 (E.D.N.C. Sept. 28, 2012) (unpublished). Sharpe bears the burden of demonstrating cause for the court to grant withdrawal. See, e.g., In re Albertson, 535 B.R. 662, 667 (S.D.W. Va. 2015); Blue Cross & Blue Shield of N.C. v. Jemsek Clinic, P.A., 506 B.R. 694, 697 (W.D.N.C. 2014); Albert v. Site Mgmt., Inc., 506 B.R. 453, 455 (D. Md. 2014); In re Millenium Studios, Inc., 286 B.R. 300, 303–04 (D. Md. 2002).

Sharpe asks this court to withdraw reference because he requests a jury trial. See [D.E. 1] ¶ 1. Sharpe may be entitled to a jury on any issue so triable, but that "does not mean that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of the jury selection and trial." In re Stansbury Poplar Place, Inc., 13 F.3d 122, 128 (4th Cir. 1993); see Albertson, 535 B.R. at 670–71; In re QSM, LLC, 453 B.R. 807, 810–11 (E.D. Va. 2011); In re O'Brien, 414 B.R. 92, 103 (S.D.W. Va. 2009). Accordingly, the court declines to withdraw reference on this basis. See, e.g., In re Dain, No. 1:12-CV-1251, 2013 WL 428458, at *4 (E.D. Va. Jan. 31, 2013) (unpublished); In re Angelucci, Civ. No. 09-70, 2009 WL 798805, at *4–5 (E.D. Ky. Mar. 23, 2009) (unpublished).

III.

In sum, the court DENIES defendant's motion to withdraw reference [D.E. 1].

SO ORDERED. This 24 day of June, 2024.

JAMES C. DEVER III
United States District Judge